FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

2010 AUG -9  A 11: 45

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

i2, INC., a Delaware corporation, and i2
LIMITED, a British limited company
registered in England and Wales.

Plaintiffs,

v.

PALANTIR TECHNOLOGIES, INC., a
Delaware Corporation, SHYAM
SANKAR, an individual, DR. ASHER
SINENSKY, an individual, SRS
ENTERPRISES, LLC, a Florida limited
liability company and NOCHUR
SANKAR, an individual,

Defendants.

CIVIL ACTION NO. 1:10CV885-LO/JFA

## COMPLAINT

Plaintiffs i2, Inc. and i2 Limited (collectively, "i2") bring this Complaint for damages and injunctive relief against defendants PALANTIR TECHNOLOGIES, INC. ("Palantir"), SHYAM SANKAR, DR. ASHER SINENSKY, SRS ENTERPRISES, LLC ("SRS Enterprises" or "SRS"), and NOCHUR SANKAR (together, the "Defendants") and allege as follows:

### INTRODUCTION

1. This action arises from a multi-year scheme of fraud and industrial espionage (the "Scheme") perpetrated by employees at the intelligence software company Palantir, a company that holds itself out as a provider of products and services directed at national security. The perpetrators of the Scheme include Palantir's Director of Forward Deployed Engineering and others with whom Palantir and the other defendants conspired to deliberately and willfully misappropriate the software, trade secrets and other confidential and proprietary information of

1.

i2, Inc., one of Palantir's chief competitors. After misappropriating the intellectual property of i2 by fraudulent means, defendants Palantir, Shyam Sankar and Dr. Asher Sinensky used their unlawful access to i2's intellectual property to develop new Palantir software products and capabilities designed to enable Palantir to compete unfairly against i2.

2.     The i2 companies, under the umbrella of i2 Group, are leading providers of intelligence and investigation software solutions for defense, national security, law enforcement and commercial security all over the world. Over 4,500 organizations in nearly 150 countries rely on the i2 Intelligence-Led Operations Platform to proactively deter, prevent, predict and disrupt the world's most sophisticated criminal and terrorist threats.

3.     Defendant Palantir is a competitor of i2 that similarly develops analysis software sold to the intelligence, defense, and law enforcement communities. Ironically, Palantir, which promotes its intelligence software as "a child of PayPal, born from the start up's methodology for combating fraud," appears to have built its business in part upon its own fraudulent conduct and the misappropriation of i2's software, confidential information, and trade secrets.

4.     The Scheme included the misappropriation of i2's confidential and proprietary information and trade secrets, including its confidential and proprietary software. It began in early 2006 and continues to this day. In or about March 2006, defendant Shyam Sankar joined the management team of Palantir as Director of Business Development. Within a month after his start date with Palantir, Shyam Sankar contacted i2 both by telephone and through i2's website, purporting to act on behalf of an entity based in Florida which Shyam Sankar identified as SRS Enterprises. In those initial contacts, Shyam Sankar told i2 that he represented SRS Enterprises and that his company wanted to purchase licenses to i2's software. Shyam Sankar stated that he was interested in all i2 products and that he was "ready to purchase for my commercial Fraud

Investigations." i2 has recently learned that SRS Enterprises is a shell company set up by Shyam Sankar's father and mother, Nochur Sankar and Girija Sankar. Shyam Sankar became a managing member of this entity in 2004. Upon information and belief, SRS Enterprises has never had any business or operations of any kind – and certainly none that would involve using i2's intelligence software for commercial fraud investigations or other legitimate purposes.

5.     Shortly after Shyam Sankar made the initial contacts with i2, SRS Enterprises, acting through Shyam Sankar and his father Nochur Sankar, began fraudulently obtaining licenses to i2's proprietary intelligence software. All the while, Shyam Sankar was Palantir's Director of Business Development, concealing his agency through his role with SRS. Initially, SRS Enterprises licensed i2's Analyst's Notebook version 6 software and purchased related technical support. The Analyst's Notebook is part of the i2 Intelligence-Led Operations Platform, and it delivers the richest assisted analysis and visualization capabilities in the world to support analysts in quickly turning large sets of disparate information into high-quality and actionable intelligence to prevent crime and terrorism. With the help of the Analyst's Notebook, an analyst can enter data and create a pictorial representation of people, places, organizations, relationships between entities, and other key facts, and render timelines to create a temporal sequence of events.

6.     A few weeks later, SRS Enterprises licensed i2's Analyst's Notebook Software Development Kit ("Analyst's Notebook SDK" or "SDK"). The Analyst's Notebook SDK is a proprietary software development kit that provides software tools and support materials to enable a licensee to develop new software to enhance and extend the functionality of Analyst's Notebook. As such, the SDK contains and discloses to a licensee a substantial number of i2's core trade secrets and other confidential information.

7.     In connection with its licensing of these products in 2006, SRS Enterprises entered into a license agreement (the "2006 License Agreement") with i2 that contained strong restrictions on the use and disclosure of i2's trade secrets and confidential information disclosed under the agreement.  Among other things, the 2006 License Agreement explicitly stated that **"Under no circumstances may the Receiving Party give any known competitor of the Owning Party access to the Proprietary Information of the Owning Party. . . ."** Knowing full well that i2 would never have licensed its core software to a competitor like Palantir, Shyam Sankar, acting as an agent of Palantir and for the benefit of Palantir, concealed his connection to Palantir and conspired with his father to purchase i2 software licenses through SRS Enterprises. SRS Enterprises and the other defendants entered into the 2006 License Agreement willfully and maliciously, intending from the outset to breach the license agreements with i2, and to misappropriate i2's trade secrets and confidential information through fraudulent and deceptive means.

8.     Over the next several years, the Scheme continued with the Defendants conspiring to obtain licenses to several additional i2 software products through SRS Enterprises.  In 2007 and 2008, the defendants licensed the i2 iBase SSE Designer ("iBase") software as well as updated versions of the Analyst's Notebook software.  The iBase software allows database administrators, software developers and end users to design data ontologies from which iBase database applications are generated.  iBase is an i2 database and software application that allows intelligence analysts to find hidden patterns and connections within data and disseminate their findings.  In addition, as recently as June 2010, Palantir, through Shyam Sankar and members of its engineering group, including Dr. Asher Sinensky, posed as a licensee of i2 and attempted to

4.

participate in a live Webinar, which i2 put on in order to provide updated information about its products to licensees and targeted potential customers.

9.      Upon information and belief, Palantir, through employees such as Shyam Sankar, Ravi Sankar (Shyam Sankar's younger brother and a member of the shell SRS Enterprises) and Dr. Asher Sinensky, used the i2 software, and the additional confidential information and trade secrets that they obtained under false pretenses from i2, to assist them in the development of new Palantir software products, utilities and features that were specifically designed to enable Palantir to unfairly, yet more effectively, compete with i2.  By way of example, i2 is informed and believes that Palantir used the misappropriated software, trade secrets, and confidential information to develop data importing functionality that easily extracts information out of the Analyst's Notebook software and transmits that information into a Palantir database.  i2 has also been informed and believes that Palantir used the misappropriated software, trade secrets, and confidential information to develop an import utility called "iBaseCrawl" that enables Palantir software users to extract data out of iBase databases.   Because i2 technology is so widely used by the customer base that Palantir is attempting to penetrate, the Analyst's Notebook data importer and iBaseCrawl utility greatly enhance Palantir's ability to sell its software to i2 customers.   Both the Analyst's Notebook data importer and iBaseCrawl offer Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services.  i2 contends that this importing functionality was developed at least in part through Palantir's unlawful access to the Analyst's Notebook SDK, iBase, and trade secrets and confidential information contained in those programs and documentation provided with the Analyst's Notebook SDK and other i2 products.

10.     As if the years-long scheme of deception, commercial espionage and willful misappropriation were not enough, it appears that Palantir has been emboldened by its own success in stealing from i2.  This attitude is prominently displayed in Palantir's decision to directly copy many distinctive user interface icons used by i2 in its software to depict items such as people, places, assault weapons, airplanes, and organizations.  In a video published by Palantir from their April 2010 User Conference demonstrating the Palantir application, these icons are virtually identical to the user interface icons in i2's Analyst Notebook application, a clear indication that copying had to have occurred.

11.     By this Complaint, i2 seeks preliminary and permanent injunctive relief ordering the defendants (i) to stop the continued misappropriation of its software, trade secrets, and confidential and proprietary information, (ii) to compel the return of all of the i2 software, trade secrets and other confidential and proprietary information in the possession of the defendants, and (iii) to enjoin any further use of the misappropriated software, confidential information, trade secrets, and licensed i2 property.  In addition, i2 seeks to enjoin all further use, promotion, sale or distribution of any Palantir products, features or functionality developed using the misappropriated i2 trade secrets and confidential information.  Further, i2 seeks to recover damages, including treble damages, and punitive damages, arising from this four year long conspiracy to misappropriate i2's software, trade secrets, and confidential information.

<strong><u>Parties</u></strong>

12.     i2, Inc. is a Delaware Corporation with its principal place of business in McLean, Virginia.  i2 is a leading provider of intelligence and investigation software solutions for defense, national security, law enforcement and commercial security sectors.  Thousands of organizations in nearly 150 countries rely on the i2 Intelligence-Led Operations Platform to proactively deter,

prevent, predict and disrupt the world's most sophisticated criminal and terrorist threats. i2 started in 1990 and continues to lead the industry in innovation with products such as Analyst's Notebook® and iBase which are key components of the i2 Intelligence-Led Operations Platform. These solutions enable public safety officers, analysts, managers, detectives and investigators to uncover hidden connections.

13.     i2 Limited is a limited company registered in England and Wales. i2 Limited is the UK-based arm of software company i2Holdings Limited or i2 Group and produces visual intelligence and investigative analysis software for military, law enforcement, intelligence and commercial agencies.

14.     Defendant Palantir is a Delaware Corporation with its principal place of business in Palo Alto, California. Palantir also has offices in McLean, Virginia. Palantir is a software company that develops and sells data integration and analysis software designed to permit intelligence analysts in government organizations to collaborate and to analyze large quantities of data. Palantir is a competitor of i2 and sells its analysis software to intelligence, defense and law enforcement agencies.

15.     Defendant SRS Enterprises, LLC is a Florida Limited Liability Company with a registered address of 2336 Rye Gross Lane, Oviedo, Florida. According to records from the Florida Secretary of State, this LLC was formed by Nochur Sankar and Girija Sankar, its original managing members. The current managing members of SRS Enterprises are family members Nochur Sankar, Girija Sankar, Shyam Sankar and Ravi Sankar. Upon information and belief, SRS Enterprises conducts no legitimate business or operations. Upon information and belief, as set forth below in more detail, in connection with its fraud on i2, SRS Enterprises employed different names in order to obfuscate its identity and connection to Palantir through its principals,

and in so doing used the alias "SAS Enterprises" in dealings with i2.  Upon information and belief, there is no legitimate legal entity called "SAS Enterprises" that is affiliated with the defendants.  In this Complaint, the terms SRS Enterprises or SRS shall also include this alias and any others used by SRS in connection with activities toward i2.

16.     Defendant Shyam Sankar is an individual who resides in Palo Alto, California. At all times relevant hereto, Shyam Sankar has been an employee and an agent of, and acting on behalf of, Palantir.  Upon information and belief, in or around March 2006, Shyam Sankar joined Palantir with the title of either "Director" or "Vice President of Business Development."  Shyam Sankar currently holds the title "Director of Forward Deployed Engineering" for Palantir.  Since 2004, Shyam Sankar also has been a managing member of SRS Enterprises.  Upon information and belief, Shyam Sankar travels regularly to Virginia as part of his duties for Palantir and directs his business activities at the state of Virginia.

17.     Defendant Nochur Sankar is an individual who resides at 2336 Rye Grass Lane, Oviedo, Florida.  Nochur Sankar is the father of Shyam Sankar and Ravi Sankar.  Ravi Sankar is not only a managing member of SRS Enterprises, but has also been employed by Palantir in both business development and engineering capacities over the last several years.  At all times relevant hereto, Nochur Sankar was a managing member of SRS Enterprises.

18.     Defendant Dr. Asher Sinensky is an individual residing in San Francisco County, California.  At all times relevant hereto, Dr. Asher Sinensky has been employed by Palantir as a Forward Deployed Engineer.

19.     i2 is informed and believes, and on that basis alleges, that defendants Shyam Sankar and Dr. Asher Sinensky were at all relative times the agents, servants, and/or employees of their co-defendant Palantir, and in doing the things hereinafter alleged, were acting in the

scope of their authority as such agents, servants and/or employees, and with the permission and consent of their co-defendant Palantir.

20.     i2 is informed and believes, and on that basis alleges, that Shyam Sankar and Nochur Sankar (the "Sankar Defendants"), and each of them individually, were the alter egos of the shell entity, defendant SRS Enterprises. There exists and, at all times herein mentioned, there existed, a unity of interest and ownership between the Sankar Defendants and defendant SRS Enterprises, such that any individuality and separateness between the individual defendants and SRS Enterprises have ceased, and that SRS Enterprises is the alter ego of the Sankar Defendants. Adherence to the fiction of the separate existence of SRS Enterprises as an entity distinct from the Sankar Defendants would permit an abuse of the limited liability company privilege and would sanction fraud or promote injustice in that this entity has been used for the improper purpose of defrauding i2 into giving access to its most valuable trade secrets and confidential software and information to the Sankar Defendants and Palantir as set forth herein.

## General Allegations

21.     Palantir was founded in or about 2003 in San Francisco, California. Purportedly, Palantir's initial product grew out of a software technology developed at PayPal to detect fraudulent activity. Upon information and belief, in early 2006, Palantir was still developing its software products and, in particular, was seeking to grow its business as a provider of software to intelligence agencies.

22.     In March 2006, Shyam Sankar began his employment at Palantir. Upon information and belief, Shyam Sankar's initial position with Palantir was as either Director or Vice President of Business Development.

23.     Almost immediately after he joined Palantir, on or about March 20, 2006, Shyam Sankar contacted i2's offices in McLean, Virginia representing that he was with SRS Enterprises and asked for information about all of i2's products.  The contact email address that Shyam Sankar provided to i2 was ss298@cornell.edu.   Upon information and belief, this was the personal email address of Shyam Sankar, who had attended Cornell University.  During this initial contact, Shyam Sankar provided an address in California.  As a follow-up, i2 sent Shyam Sankar a package of materials on its software products and services to the address in California that Shyam Sankar provided.

24.     On or about April 12, 2006, Shyam Sankar, again purporting to be from SRS Enterprises, contacted i2 stating that he was, "Ready to purchase for my commercial Fraud Investigations."  In this communication with i2, Shyam Sankar also provided i2 with a new contact address for SRS Enterprises, at 2336 Rye Grass Lane, Oviedo, Florida.  This is the registered address of SRS Enterprises.  At the time of this communication, i2 believed that SRS Enterprises was a real business and a legitimate potential customer that intended to use i2's software for its "commercial fraud investigations" as it had expressly represented to i2.  Since its initial discovery of the fraud Scheme, i2 has learned that the address that was provided for SRS Enterprises is actually the home address of Shyam Sankar's father.

25.     On or about April 12, 2006, in response to Shyam Sankar's internet solicitation and at the direction of Shyam Sankar, i2 called a person it believed to be Nochur Sankar.  i2 has recently determined that the telephone number that was provided by Shyam Sankar was actually a telephone number for Shyam Sankar, not Nochur Sankar.  The address that was provided for Nochur Sankar was 2336 Rye Grass Lane, Oviedo, Florida.  During this call, i2 described the functions of its Analyst's Notebook software.

26.     On April 12, 2006, i2 received a purchase order from Nochur Sankar for the Analyst's Notebook version 6. The purchase order was under the name "SAS Enterprises, Inc.", but it was purportedly placed by Nochur Sankar, who provided a shipping address of 2336 Rye Grass Lane, Oviedo, Florida — which is Nochur Sankar's home address. The contact phone number that was provided was the same number that had been given by Shyam Sankar on behalf of SRS Enterprises, namely, Shyam Sankar's mobile number. Upon information and belief, there is no legitimate entity called SAS Enterprises, Inc. with an address at 2336 Rye Grass Lane, Oviedo, Florida. i2 contends that the defendants used the name "SAS Enterprises, Inc." as a dba for "SRS Enterprises LLC" in order to further deceive i2 as to the true identities of the persons that it was dealing with, and to further conceal the connections between SRS Enterprises and Palantir's agent Shyam Sankar, or as an attempt to undermine the enforceability of the contractual obligations that applied to the i2 software, confidential information, and trade secrets defendants were scheming to obtain.

27.     On April 13, 2006, in response to the order placed by Nochur Sankar and Shyam Sankar, i2 shipped the Analyst's Notebook, version 6, software and related documentation to Nochur Sankar at the address provided by Shyam Sankar, 2336 Rye Grass Lane, Oviedo, Florida. With this shipment, i2 also sent a "dongle," a small USB drive that acts as a key to unlock the i2 software. This initial purchase was paid by means of an American Express credit card held and ostensibly provided by, and with the approval of, Nochur Sankar. Analyst's Notebook, version 6, was licensed to SRS subject to strict terms of confidentiality that prohibit disclosure of the software, as well as restrictions on the uses of the software that were part of i2's standard end user product license agreement.

28.     The pattern of using fake affiliations to gain access to i2's confidential competitive information was repeated almost immediately thereafter by Shyam Sankar, this time by pretending he still worked for a prior employer. i2 is informed and believes that on or about May 31, 2006, Shyam Sankar registered for, and attended, an i2 User Conference (the "Conference"). Although Shyam Sankar had been employed at Palantir for several months and was a member of Palantir's management team at the time of the Conference, he registered and attended the Conference under the company name "Xoom". Notably, when Shyam Sankar registered for the Conference, he provided his home address (2632 Larkin St., San Francisco, California) and his personal mobile number, rather than contact information for Xoom.

29.     Subsequently, in or about late May or early June 2006, Nochur Sankar again contacted i2, this time in order to purchase the i2 Analyst's Notebook Software Development Kit version 6. As indicated above, the Analyst's Notebook SDK provides system integrators and in-house developers with the software tools and support materials needed to enhance and extend the functionality of the Analyst's Notebook.

30.     On June 6, 2006, i2 entered into a license agreement with Nochur Sankar in connection with the sale of the Analyst's Notebook SDK. The contract was entitled "Analyst's Notebook® Development Kit License Agreement". As a further deception and means of perpetrating their fraud, in this instance, Nochur Sankar hand wrote a name that appears to be "SAE Enterprises LLC" on the first page of the contract (providing once again his home address of 2336 Rye Grass Lane, Oviedo, Florida), but then handwrote "SAS" in other parts of the contract (see Exhibit A, pages 1, 13 and 14). i2 did not catch these discrepancies at the time due to the similarities in the names used and the illegibility of the handwriting. Upon information and belief, there is no legitimate entity called SAE Enterprises LLC.

31.     At all times, i2 has taken and continues to take reasonable care to protect the confidentiality of its intellectual property.  For example, the 2006 License Agreement for the Analyst's Notebook SDK included detailed restrictions on the use and distribution of this i2 software development kit and i2's trade secrets and confidential information.  This was done to ensure that i2's confidential software and related trade secrets and confidential information were provided to legitimate licensees only, and were not available to third parties — particularly to i2's competitors.  Key protective terms of the 2006 License Agreement include:

(a)     i2 granted a "non-transferrable" license to the Analyst's Notebook Software Development Kit, the documentation for the product, and a hardware authorization key or "Dongle" that enables an Authorized User to access the Software. (Exhibit A at §2.1.) A dongle is required for the use of the i2 software and helps ensure that the software remains secure.

(b)     The software and documentation can only be used by "Authorized Users" and may be used for "Development Use" only.  Authorized Users are limited to <u>one</u> employee of the Licensee who has a <u>need</u> to use the Product and are bound by the confidentiality obligations of the license agreement.  (*Id.* at §2.1.)

(c)     The Licensee is prohibited from modifying, sublicensing or distributing the software. (*Id.* at § 2.2.1.)

(d)     The Licensee is not authorized to transfer any licenses for use of the Product to any third party without the express permission of i2.  (*Id.* at § 2.2.2.)

(e)     The Licensee may not use the Product to create a software program designed for substantially the same purpose(s) as or otherwise substantially similar to the Product, Analyst's Notebook, or any other i2 Product. (*Id.* at § 2.2.3.)

(f)     The Licensee agreed that "the Product constitutes commercially valuable, proprietary, and confidential products of i2 and its licensors, the design and development of which reflect a considerable effort on the part of skilled computer programming and software development professionals employed by i2 or its licensors and the investment of considerable time and money by i2 and its licensors." (*Id.* at § 7.2.)

(g)     The Licensee further acknowledges that the Product contains substantial trade secrets of i2 "which have been entrusted to Licensee for use only as expressly authorized under this Agreement." (*Id.* at § 7.2.)

(h)     The Licensee agrees that it would "effect and maintain adequate security measures to safeguard the Product and other Trade Secrets from access, use, or copying by any unauthorized person, and shall notify i2 immediately if the Licensee becomes aware of any unauthorized access to, use, or copying of any part of the Product or other Trade Secrets by any person." (*Id.* at § 7.3.)

(i)     The Licensee agrees "not to, and shall require its Authorized Users not to, decompile, disassemble, or reverse engineer its Software, 'API' or Sample Code, and (iv) not to, and shall require Authorized Users not to, deconstruct, reverse engineer, or otherwise attempt to bypass the 'Dongle.'" (*Id.* at § 7.5.)

(j)     The Licensee agrees to the following terms for the Protection of Proprietary Information:

> "Each party acknowledges that in performing under this Agreement, it may gain access to Proprietary information belonging to the other party. Accordingly, when a party (the "Receiving Party") receives Proprietary Information from another party (the "Owning Party") the Receiving Party shall, and shall obligate its employees and agents, both during the term of this Agreement and for a period of five (5) years after the expiration or termination hereof, *(i) to maintain the Proprietary Information*

14.

*received from the Owning Party in strict confidence*, (ii) *not to disclose the Proprietary Information received from the Owning Party to a third party without the Owning Party's prior written approval,* and (iii) *not to, directly or indirectly, use the Proprietary Information received from the Owning Party for any purpose other than for the purposes permitted by this Agreement*." (*Id.* at § 8.1.)

(k)     Finally, Licensee agrees that "[u]nder no circumstances may the Receiving Party give any known competitor of the Owning Party access to the Proprietary Information of the Owning Party. ..." (*Id.* at § 8.1.)

32.     Despite these clear terms limiting the use of and restricting access to i2's software and other confidential information, the defendants fraudulently entered into the 2006 License Agreement with no intention of complying with its terms, and for the purpose of misappropriating i2's confidential information.

33.     In 2007, defendant Nochur Sankar again approached i2 under the auspices of SRS Enterprises and sought to purchase licenses to additional software.  In January 2007, i2 sold Nochur Sankar, acting on behalf of SRS, a license to i2's iBase SSE Designer software and one year of technical support.  The address given for this purchase was 2336 Rye Grass Lane, Oviedo, Florida.  i2's iBase SSE Designer software was licensed to SRS subject to strict terms of confidentiality that prohibit disclosure of the software, as well as restrictions on the uses of the software that were part of i2's standard end user product license agreement.

34.     On or about August 28, 2007, Shyam Sankar sent i2 an email from the email address ssankar@gmail.com, requesting i2 to put all of SRS Enterprises' Analyst's Notebook and iBase SSE Designer software license permits onto a single Dongle.  Although the email was sent from Shyam Sankar's email address, the closing of the email stated "Thanks, Nochur."  i2 is informed and believes that Shyam Sankar used his father Nochur Sankar's name to sign the email to further obfuscate his own connection to Palantir.

35.     Subsequently, in November 2007, the defendants again conspired under the SRS identity to purchase a license for i2's Analyst's Notebook version 7 as well as one year of technical support.

36.     The license agreements for the additional i2 software products purchased in 2007 (collectively, the "2007 License Agreement"), provided that (1) the license was "non-transferrable" and for "non-commercial use"; (2) the software could only be used by Authorized Users; (3) the Licensee was prohibited from reproducing, modifying or creating a derivative works of the Product, in whole or in part; (4) the Licensee was prohibited from distributing, sublicensing, or otherwise transferring the Product directly to or through third parties; (5) the Licensee agreed to limit access to the Product to Authorized Users and *prohibit access to the Product to any third party that is not an Authorized User*, without the prior written consent of i2; (6) the Licensee agreed not to decompile, disassemble, reverse-assemble, analyze, or otherwise examine the Product for reverse engineering of the Product and agreed not to deconstruct, reverse engineer, or otherwise attempt to bypass a License Key; (7) the Licensee agreed to obligate its Authorized Users to keep i2's proprietary information confidential; (8) the Licensee agreed not to disclose i2's confidential information to any third party without i2's prior written approval; and (9) the Licensee agreed to use i2's confidential information only for the purposes of this Agreement.

37.     In this instance, since SRS was a shell entity with no business operations, it is beyond dispute that SRS and the other defendants had no intention of ever complying with the 2007 License Agreement.   Rather, SRS and the defendants entered into the 2007 License Agreement solely for the purpose of misappropriating i2's confidential information for the benefit of Palantir.

38.    In 2008, the defendants conspired to use SRS to purchase additional software from i2.  In March 2008, SAS purchased two licenses for i2's Analyst's Notebook version 7 and one year of technical support.  Again, this was done on behalf of, and for the benefit of, Palantir. Once again, this software was licensed to SRS subject to strict terms of confidentiality that prohibit disclosure of the software, as well as restrictions on the uses of the software that were part of i2's standard end user product license agreement.

39.    Subsequently, in 2009 and again in 2010, the defendants conspired to use SRS to purchase continued technical support for the various software products they had previously licensed from i2.  Once again, this was done on behalf of, and for the benefit of, Palantir.  The purchase of this continued technical support gave Palantir and defendants acting on its behalf and for its benefit continued access to i2 software updates, new software releases and information concerning new software features.  Once again, this software was licensed to SRS subject to strict terms of confidentiality that prohibit disclosure of the software, as well as restrictions on the uses of the software that were part of i2's standard end user product license agreement.   i2 is informed and believes, and thereupon alleges, that the Defendants purchased the additional software updates, releases, information and technical support in order to continue to have access to i2's confidential information about its products, information that was intended to be provided only to i2's legitimate licensees.  For example, because they purchased this support, in 2010, i2 provided SRS with its most updated software -- Analyst's Notebook version 8  -- as an upgrade. All of the software licensed to SRS Enterprises was at all times subject to contractual restrictions and obligations that prohibited, among other things, disclosure or use of the software and related confidential information for the benefit of Palantir.

40.     In June 2010, i2 discovered that Palantir was again using subterfuge to gain access to competitive business information from i2 when Palantir signed up for a June 20, 2010 Webinar (the "Webinar") under the name "SAS Enterprises." Upon review of the online registration requests to participate in the Webinar, i2 discovered that a registration was submitted in the name of SAS Enterprises and Nochur Sankar. However, the requestor had provided a contact email address for the participant that belonged to Dr. Asher Sinensky (asherks@gmail.com), who has been a Forward Deployed Engineer for Palantir since 2005, and a mobile phone number that belonged to defendant Shyam Sankar. Upon discovering that its competitor Palantir was attempting to obtain competitive information by pretending to be SAS Enterprises, i2 immediately commenced an investigation that uncovered this four year long scheme to defraud i2. Among other things, i2 discovered that Shyam Sankar had previously and separately registered for access to restricted content on the i2 website; the i2 Customer Portal, using the SAS name, and again using his own email address, s.sankar@gmail.com.

## Jurisdiction And Venue

41.     Federal jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338 because claims asserted in this action arise under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"). This Court has pendent jurisdiction over i2's state law claims.

42.     Federal jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 18 U.S.C. § 1964 because claims asserted in this action arise under the Racketeering and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et. seq.*

43.     This Court has personal jurisdiction over defendants Shyam Sankar, Dr. Asher Sinensky, SRS Enterprises, LLC, and Nochur Sankar for Claim V under 18 U.S.C. § 1965.

Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to i2's claims occurred in this district and Palantir has offices, agents and transacts substantial business in this district. Venue is therefore also appropriate for the remaining defendants specified in Claim V under 18 U.S.C. § 1965(b).

44.      Venue and personal jurisdiction over SRS Enterprises, Nochur Sankar and Shyam Sankar are appropriate because the license agreements entered into by SRS and its alter ego defendants include provisions that establish that the appropriate jurisdiction for claims relating to the license agreements is Virginia.

45.      Venue and personal jurisdiction are proper in this District under 28 U.S.C. § 1391(b) over Palantir, Shyam Sankar, Nochur Sankar, Dr. Asher Sinensky and SRS Enterprises, because, among other things, (i) the tortious conduct occurred in this District, (ii) the harm was inflicted by defendants in this District, (iii) a substantial part of the events or omissions giving rise to the claims occurred in this District, and (iv) defendants Palantir and Shyam Sankar conduct regular and systematic business in this district.

**Claim I**
**(Fraud and Conspiracy to Commit Fraud)**
**(Against Palantir, Shyam Sankar,**
**SRS Enterprises and Nochur Sankar)**

46.      i2 realleges and incorporates herein paragraphs 1 through 45, inclusive.

47.      i2 is informed and believes and thereon alleges that defendants Palantir, Shyam Sankar, Nochur Sankar and SRS Enterprises conspired with one another to engage in a scheme to defraud i2 into entering into certain license agreements for certain i2 software products and services in order to misappropriate the software, trade secrets and other confidential and proprietary information of i2 that is embodied in its software and other documentation.

48.     In or about 2006, Shyam Sankar contacted i2, and set in motion a plan to fraudulently acquire i2's software through a shell entity established by his father and mother in Florida, SRS Enterprises.  Acting in his capacity as an agent of Palantir, Shyam Sankar made material misrepresentations of fact to i2, including the fact that defendant SRS Enterprises was purchasing i2 software for its "commercial Fraud Investigations."  Upon information and belief, SRS Enterprises, at all relevant times, had no operations of any kind, never performed any "commercial Fraud Investigations," and served as a vehicle used by Palantir and its agents to misappropriate i2's software, confidential information, and trade secrets.  At the time, i2 had no reason to doubt the representations that were made to it by the defendants, and reasonably relied upon them to its detriment.  Had i2 known the true facts,  namely that SRS Enterprises had no legitimate interest in its software and services and that its member Shyam Sankar actually was an agent of one of its competitors, Palantir, i2 would never have agreed to enter into any license agreement with SRS.

49.     In addition, i2 is informed and believes, and thereupon alleges, that the defendants entered into the 2006 License Agreement with no intention to perform such agreement.  Among other things, the 2006 License Agreement provides as follows:  **"Under no circumstances may the Receiving Party give any known competitor of the Owning Party access to the Proprietary Information of the Owning Party. . . ."**  The defendants could not have intended to perform the 2006 License Agreement because, in actual fact, the managing member of SRS that solicited the purchase of the i2 software was, at all relevant times, an agent of i2's competitor Palantir.

50.     In addition, i2 is informed and believes, and thereupon alleges, that the defendants entered into license agreements for all of the Analyst's Notebook and the iBase software

products they purchased or received as upgrades during the 2006 through 2010 period, all of which contained nearly identical restrictions on use and disclosure, with no intention to perform them. Among other things, all of these license agreements restricted the use of the licensed software and prohibited its distribution to unauthorized third parties. The defendants could not have intended to perform any of these license agreements, because, in actual fact, the managing member of SRS Enterprises that solicited the purchase of the i2 software was, at all relevant times, an agent of i2's competitor Palantir, and the software was intended for use by Palantir, not by SRS, which is simply a shell.

51.    The defendants' scheme to defraud i2 and misappropriate its software, confidential information, and other trade secrets was continuous from 2006 until the present, with the defendants repeatedly conspiring to use the SRS Enterprises entity to purchase additional licenses of i2 software and services as alleged herein. Palantir and the other defendants conspired to use this subterfuge because they knew that i2 would not have agreed to license its software and provide other trade secrets and confidential information to a direct competitor.

52.    i2 reasonably relied on the misrepresentations of the defendants that the actual licensee was SRS Enterprises, which was purchasing the i2 Software for SRS Enterprises' "commercial Fraud Investigations." Further, i2 reasonably relied on the defendants' promises to perform the 2006 License Agreement and each of the other license agreements,, as i2 had no reason to know that SRS Enterprises had no legitimate interest in i2's products and services and that the true purchaser and user of i2's software was its competitor, Palantir, who was purchasing the software through its agent Shyam Sankar.

53.     As a result of this fraud, i2 has been damaged in an amount subject to proof at trial, but in excess of the jurisdictional limits of this Court.

54.     The conduct of the defendants in committing this fraud was willful and malicious. i2 is entitled to an award of punitive damages in an amount sufficient to punish and deter such misconduct.

## Claim II
### (Breach of Contract)
**(Against SRS Enterprises, and Alter Ego defendants Shyam Sankar and Nochur Sankar )**

55.     i2 realleges and incorporates herein paragraphs 1 through 54, inclusive.

56.     In 2006, i2 entered into the 2006 License Agreement with SRS Enterprises pursuant to which it licensed its Analyst's Notebook SDK, which provided access to i2's core technology, confidential information, and trade secrets.  The 2006 License Agreement provided, among other things, as follows:

(a)     i2 was granting a "non-transferrable" license to the Analyst's Notebook SDK, the related documentation and to a device called a Dongle – which is a hardware authorization key that enables an Authorized User to access the Software.

(b)     The software could only be used by Authorized Users, which was limited to the Licensees' employees who have a <u>need</u> to use the Product and are bound by the confidentiality obligations of the license agreement.

(c)     The Licensee was prohibited from modifying, sublicensing or distributing the software.

(d)     The Licensee could not transfer any licenses for the Product to any third party without the express permission of i2. (§ 2.2.2.)

(e)     The Licensee was prohibited from using the Product to create a software program designed for substantially the same purpose(s) as or otherwise substantially similar to the Product, Analyst's Notebook, or any other i2 products. (§ 2.2.3.)

(f)     The Licensee agreed that it would "effect and maintain adequate security measures to safeguard the Product and other Trade Secrets from access, use, or copying by any unauthorized person, and shall notify i2 immediately if the Licensee becomes aware of any unauthorized access to, use, or copying of any part of the Product or other Trade Secrets by any person." (§ 7.3.)

(g)     The Licensee agreed "(iii) not to, and shall require its Authorized Users not to, decompile, disassemble, or reverse engineer the Software, 'API' or Sample Code, and (iv) not to, and shall require its Authorized Users not to, deconstruct, reverse engineer, or otherwise attempt to bypass the 'Dongle.'" (§ 7.5)

(h)     The Licensee agreed to maintain the Proprietary Information received from the Owning Party in strict confidence, (ii) not to disclose the Proprietary Information received from the Owning Party to a third party without the Owning Party's prior written approval, and (iii) not to, directly or indirectly, use the Proprietary Information received from the owning Party for any purpose other than for the purposes permitted by this Agreement. (§ 8.1.)

(i)     Finally, Licensee agreed that **"Under no circumstances may the Receiving Party give any known competitor of the Owning Party access to the Proprietary Information of the Owning Party. . . ."** (§ 8.1.).

57.     From 2006 through 2010 defendants entered into license agreements for all of the Analyst's Notebook and the iBase software products they purchased or received as upgrades, all of which contained nearly identical restrictions on the use and disclosure of the software, and all

of which contained express provision that prohibit use or disclosure of the licensed software and material to unauthorized third parties   For example, as noted above, the 2007 License Agreement, provided that (1) the license was "non-transferrable" and for "non-commercial use"; (2) the software could only be used by Authorized Users; (3) the Licensee was prohibited from reproducing, modifying or creating a derivative works of the Product, in whole or in part; (4) the Licensee was prohibited from distributing, sublicensing, or otherwise transferring the Product directly to or through third parties; (5) the Licensee agreed to limit access to the Product to Authorized Users and *prohibit access to the Product to any third party that is not an Authorized User*, without the prior written consent of i2; (6) the Licensee agreed not to decompile, disassemble, reverse-assemble, analyze, or otherwise examine the Product for reverse engineering of the Product and agreed not to deconstruct, reverse engineer, or otherwise attempt to bypass a License Key; (7) the Licensee agreed to obligate its Authorized Users to keep i2's proprietary information confidential; (8) the Licensee agreed not to disclose i2's confidential information to any third party without i2's prior written approval; and (9) the Licensee agreed to use i2's confidential information only for the purposes of this Agreement. Each of the other i2 licenses that SRS entered into contained nearly identical terms.

58.     The defendants breached the 2006 License Agreement and the other license agreements by, among other things, transferring and disclosing the software, i2's confidential and proprietary information, and trade secrets to unauthorized third parties and a competitor, Palantir, which used the software, confidential information, and trade secrets beyond the scope of the license and for purposes of developing products and features that would enable it to more effectively compete against i2.   In this instance, SRS was a shell entity with no business

operations and entered into the 2006 and 2007 License Agreements solely for the purpose of misappropriating i2's confidential information for the benefit of Palantir.

59.    As a result of defendants' breaches, i2 has been damaged in an amount subject to proof at trial, but in excess of the jurisdictional limits of this Court.

60.    As a result of defendants' breaches, i2 has suffered irreparable harm in that its software, trade secrets and other confidential information have been disclosed to and misused by a competitor, which irreparable harm can only be remedied by appropriate injunctive relief as set forth below.

**Claim III**
**(Misappropriation Of Trade Secrets)**
**(Against All Defendants)**

61.    i2 realleges and incorporates herein paragraphs 1 through 60, inclusive.

62.    By reason of the acts alleged herein, each of the Defendants has misappropriated i2's confidential, proprietary and trade secret information, in violation of the Uniform Trade Secrets Act, codified as Virginia Code § 59.1-336.

63.    The software, documentation and other confidential and proprietary information that was delivered to the Defendants by i2 as a result of the Defendants' fraud and deception constituted trade secrets which have independent economic value as a result of not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

64.    The Defendants have expressly acknowledged that the software and related documentation constitute trade secrets. For example, the 2006 License Agreement provides as follows:

> **"Licensee acknowledges that the Product constitutes**
> **commercially valuable, proprietary, and confidential products**
> **of i2. . . the design and development of which reflect a**

25.

considerable effort on the part of skilled computer programming and software development professionals employed by i2 . . . and the investment of considerable time and money by i2. . . **Licensee further acknowledges that the Product contains substantial Trade Secrets of i2. . .** which have been entrusted to Licensee for use only as expressly authorized under this Agreement. **Licensee acknowledges that such Trade Secrets (i) derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use, and (ii) are the subject of efforts of i2 . . . that are reasonable under the circumstances to maintain their secrecy."** (2006 License Agreement § 7.2.)(emphasis added)

65.     i2's software, documentation and related product and support information are the subject of efforts by i2 to maintain their secrecy that are reasonable under the circumstances, which efforts include the use of licenses that prohibit the disclosure or unauthorized use of the software, documentation and related product and support information.

66.     As alleged hereinabove in detail, the Defendants acquired the trade secrets using improper and unlawful means.  Knowing that i2 would not knowingly disclose its software and trade secrets to its competitor, Shyam Sankar, Palantir's Vice President of Business Development, acting as an agent of Palantir and for the benefit of Palantir, conspired with the other defendants to use a shell entity to enter into certain license agreements with i2 in order to gain access to i2's core technologies.  Among other things, the license agreements prohibited the disclosure or transfer of i2's software and other confidential and proprietary information to third parties and restricted the use of i2's software to non-commercial use.  The 2006 License Agreement also expressly prohibited any licensee from disclosing the software and other confidential and proprietary information to any competitor of i2.  The defendants entered into the license agreements with i2 in order to use the software and related trade secrets for improper purposes and knowing that the disclosure of i2's confidential information to third parties, and in particular to i2's competitors, was prohibited under the license agreements.

67.     The Defendants have used the  trade secrets to i2's detriment without the consent of i2.  i2 is informed and believes that the Defendants' misappropriation is ongoing, and that unless the Defendants are enjoined from doing so, they will continue to misappropriate and misuse i2's confidential, proprietary and trade secret information, thereby gaining for Palantir an improper competitive advantage over i2.

68.     Unless the Defendants are restrained by appropriate preliminary and permanent injunctive relief, the Defendants' conduct will continue to cause i2 immediate and irreparable harm for which there is no adequate remedy at law.

69.     As a proximate result of the actions alleged above, i2 has been damaged in an amount that is uncertain at this time, but which exceeds the jurisdictional limits of this Court.

70.     i2 also is entitled to an award of restitution for all monies gained by the Defendants as a result of their wrongful conduct.

71.     i2 is informed and believes that the Defendants' actual and repeated misappropriation of i2's trade secrets, which took place over a period of four years, and which was done in secret and with great planning and deliberation, was willful and malicious and was intended to obtain an unfair economic advantage, such that i2 is entitled to recover exemplary damages against each of the Defendants pursuant to applicable law in an amount to be determined at trial, and to obtain reimbursement for its reasonable attorneys' fees as authorized by applicable law.

**Claim IV**
**(Copyright Infringement – 17 U.S.C. §§ 501 et seq.)**
**(Against All Defendants)**

72.     i2 realleges and incorporates herein paragraphs 1 through 71, inclusive.

73.     The Analyst's Notebook version 7.0, iBase version 5.0, and the Analyst's Notebook version 8.0 (together, the "Copyrighted Works") contain wholly original material and constitute copyrightable subject matter under the laws of the United States.

74.     i2 obtained federal copyright registration for the Analyst's Notebook version 7.0 on July 23, 2008.  Attached to this Complaint as **Exhibit A** is a true and correct copy of i2's certificate of registration for Analyst's Notebook version 7.0 (Reg. No. TXu 1-578-426).

75.     i2 obtained federal copyright registration for iBase version 5.0 on July 23, 2008. Attached to this Complaint as **Exhibit B** is a true and correct copy of i2's certificate of registration for iBase version 5.0 (Reg. No. TXu 1-578-423).

76.     i2 obtained federal copyright registration for the Analyst's Notebook version 8.0 on November 19, 2009.  Attached to this Complaint as **Exhibit C** is a true and correct copy of i2's certificate of registration for Analyst's Notebook version 8.0 (Reg. No. TXu 1-657-489).

77.     i2's product Analyst's Notebook SDK includes the copyrighted Analyst's Notebook software and is therefore also protected by copyright.

78.     i2 is and has always been the sole proprietor of all rights, title and interest in and to the Copyrighted Works.

79.     i2 has duly complied with all statutory formalities of the Copyright Act with respect to the Copyrighted Works.

80.     As alleged hereinabove, the Defendants have in the past and continue to (i) misappropriate the Copyrighted Works; (ii) reproduce the Copyrighted Works; (iii) prepare derivative works based upon the Copyrighted Works; and (iv) sell, license or otherwise distribute copies of the Copyrighted Works, thus infringing i2's exclusive rights in the Copyrighted Works in violation of 17 U.S.C. §§ 106 and 501 *et seq.*

81.     Defendants are not licensed or authorized by i2 to use the Copyrighted Works and, to the extent that they claim any right or license to the Copyrighted Works, have used the Copyrighted Works beyond the scope of any license issued by i2.

82.     On information and belief, Defendants intend to continue their course of conduct and to wrongfully use, infringe upon, and otherwise continue to profit from their use of materials that infringe on the Copyrighted Works.

83.     The natural and foreseeable result of Defendants' conduct has been and will continue to be to deprive i2 of the benefits of the exclusive right (i) to reproduce the Copyrighted Works; (ii) to prepare derivative works based upon the Copyrighted Works; (iii) to sell, license, or otherwise distribute as its own, copies of the Copyrighted Works to the public, including clients and potential clients; (iv) to deprive i2 of goodwill; and (v) to injure i2's relations with present and prospective clients.

84.     By reason of Defendants' infringement, i2 has sustained and will continue to sustain substantial injury, loss and damage to its ownership rights in the Copyrighted Works.

85.     i2 is suffering and will continue to suffer irreparable harm as a result of Defendants' copyright infringement.  i2 has no adequate remedy at law and money damages alone will be insufficient to adequately compensate i2 for the infringement of its copyrights.  i2 is entitled to a preliminary and permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such actions of copyright infringement.

86.     i2 is further entitled to recover from Defendants the damages, including but not limited to attorneys' fees, that it has sustained as a result of Defendants' acts of copyright infringement in an amount to be proven at the time of trial.

87.     i2 is further entitled to recover from Defendants the gains, profits and advantages obtained by Defendants as a result of their acts of copyright infringement in an amount to be proven at the time of trial.

88.     Alternatively, i2 is entitled to maximum statutory damages under 17 U.S.C § 504(c).

**Claim V**
**(Contributory Copyright Infringement)**
**(Against Defendants SRS Enterprises LLC, Shyam Sankar,**
**And Nochur Sankar)**

89.     i2 realleges incorporates herein paragraphs 1 through 88, inclusive.

90.     The aforementioned activities by defendants constitute infringements of i2's exclusive rights in the Copyrighted Works in violation of 17 U.S.C. §§ 106 and 501. Defendants SRS Enterprises, Shyam Sankar, and Nochur Sankar, with knowledge, have induced, caused or materially contributed to the unauthorized reproduction and distribution of the Copyrighted Works by Palantir, Shyam Sankar in his actions beyond the scope of the authority granted to SRS Enterprises and Dr. Asher Sinensky. Thus, defendants SRS Enterprises, Shyam Sankar, and Nochur Sankar have induced, caused or materially contributed to the infringement of i2's copyrights.

91.     Each such infringement by defendants Palantir, Shyam Sankar, and Dr. Asher Sinensky of the Copyrighted Works, contributed to by defendants SRS Enterprises, Shyam Sankar, and Nochur Sankar, constitutes a separate and distinct act of infringement. The acts of infringement by these defendants were willful, in disregard of and with indifference to the rights of i2.

92.     As a result of acts and conduct of defendants SRS Enterprises, Shyam Sankar and Nochur Sankar, i2 has sustained and will continue to sustain substantial, immediate, and

30.

irreparable injury, for which there is no adequate remedy at law.   i2 is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, defendants SRS Enterprises, Shyam Sankar, and Nochur Sankar will continue to infringe its rights in the Copyrighted Works. i2 is entitled to preliminary and permanent injunctive relief to restrain and enjoin defendants' continuing infringing conduct.

93.     As a direct and proximate result of the infringements by defendants SRS Enterprises, Shyam Sankar, and Nochur Sankar, i2 is entitled to damages, including attorneys' fees, and to Defendants' gains, profits and advantages in an amount to be proven at the time of trial.

94.     Alternatively, i2 is entitled to maximum statutory damages under 17 U.S.C § 504(c)..

### Claim VI
### (Civil RICO--Violation of Title 18 United States Code Section 1962(c))
### (Against All Defendants)

95.     i2 realleges and incorporates herein paragraphs 1 through 94, inclusive.

96.     Plaintiff i2, and defendants Palantir, Shyam Sankar, Nochur Sankar, Dr. Asher Sinensky and SRS Enterprises are "persons" as defined by 18 U.S.C. §1961(3) because they are individuals or entities capable of holding a legal or beneficial interest in property.

97.     Defendants Palantir, Shyam Sankar, SRS Enterprises, LLC, Nochur Sankar and Dr. Asher Sinensky have wrongfully participated in the conduct of an enterprise through a pattern of racketeering activity which has directly injured Plaintiff i2 in its business and property in violation of 18 U.S.C. §1962(c).

- **The Enterprise**

98.     The enterprise is an association-in-fact which includes defendants Palantir, Shyam Sankar, SRS Enterprises, LLC, Nochur Sankar and Dr. Asher Sinensky.

99.    The association-in-fact enterprise is a group of entities associated together for the common purpose of acting to promote Palantir's business of developing and selling software that is sold to the intelligence, defense, and law enforcement communities.  More specifically, the enterprise worked and continues to work towards a common purpose of defrauding defendant Palantir's competitor, i2, of its proprietary software and confidential information in order for Palantir to develop and sell its own competing software.  The enterprise is engaged in, and its activities affect, interstate commerce.

100.    The association-in-fact enterprise constitutes an ongoing organization because it began its initial illicit activities in March 2006 and continues these activities to this day.

101.    Shyam Sankar, "Director of Forward Deployed Engineering" for defendant Palantir and a managing member of defendant SRS Enterprises, has served as the primary leader of the association-in-fact enterprise's illicit actions alleged herein.   Under Shyam Sankar's direction, the other "persons" identified in paragraph 96 actively participated in a pattern of racketeering activity as alleged below.

102.    The association-in-fact enterprise alleged herein constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

- **Pattern of Racketeering Activity**

103.    From March 2006 to the present, defendants Palantir, Shyam Sankar, SRS Enterprises, LLC, Nochur Sankar, and Dr. Asher Sinensky unlawfully, knowingly, and intentionally conducted and participated in a pattern of racketeering activity that included the acts of mail fraud, wire fraud, and criminal infringement of copyright alleged in this Complaint, all of which are indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 2319 (criminal infringement of copyright).

104.    During the above referenced time period, the Defendants knowingly and continuously participated in a scheme to defraud i2 of its proprietary software and other confidential and proprietary information by, among other things, (i) misrepresenting to i2 their identity and purpose in purchasing Plaintiff's software, (ii) concealing the fact that they (Shyam Sankar and Dr. Asher Sinensky) were the agents of i2's competitor Palantir, and (iii) failing to abide by the terms of i2's license agreements that prohibited them from sharing the software, trade secrets and confidential and proprietary information with any unauthorized third party or i2's competitors.   Defendants also knowingly and willfully infringed i2's copyrights on the software licensed to defendants by reproducing i2's copyrighted software and distributing it to Palantir for its commercial advantage as alleged herein.

- **Mail Fraud**

105.    To gain access to i2's proprietary software and information, Shyam Sankar, SRS Enterprises, Nochur Sankar, and potentially others as yet not identified engaged in at least fourteen separate acts of mail fraud that violated 18 U.S.C. § 1341 from 2006 to the present.

106.    Throughout the interactions of Shyam Sankar, Palantir, SRS Enterprises, Nochur Sankar, and potentially others as yet not identified, with i2, Defendants knowingly misrepresented their intended use of i2's software and proprietary information.   Defendants also failed to disclose their relationships with i2's competitor Palantir, knowing that such a disclosure would prevent them from accessing i2's intellectual property as it represented a violation of licensing agreements entered into by SRS.   In execution of their scheme to defraud i2, Defendants used or caused the use of the mail system as defined in 18 U.S.C. § 1341 on at least fourteen separate occasions.

33.

**107.**     The first act of mail fraud occurred on April 13, 2006. In reliance on Shyam Sankar, Palantir, Nochur Sankar, and SRS's misrepresentations about their affiliations and their intended use of i2's product, i2 shipped Defendants the Analyst's Notebook software through Federal Express ("FedEx") on April 13, 2006.

**108.**     As alleged above, Defendants knowingly continued their scheme to defraud i2 from April 2006 to the present. Similar to the first shipment described above, Defendants caused i2, in detrimental reliance on Shyam Sankar, Palantir, Nochur Sankar, and SRS's material, knowingly fraudulent pretenses, representations, and omissions of fact, to use the services of FedEx to deliver their products and information to SRS and Nochur Sankar. Dates of i2's other FedEx shipments to SRS include on or about June 1, 2006; June 16, 2006; January 11, 2007; January 12, 2007; May 14, 2007; August 29, 2007; October 4, 2007; November 21, 2007; May 23, 2008; September 3, 2008; November 13, 2008; March 2, 2009; and February 26, 2010.

**109.**     Defendants knowingly caused to be delivered to them by mail and/or FedEx i2's products and information in furtherance of their scheme to defraud i2 of its business and intellectual property, thus violating 18 U.S.C. § 1341.

- **Wire Fraud**

**110.**     In addition to engaging in a pattern of mail fraud, Shyam Sankar, Palantir, SRS Enterprises, Nochur Sankar, Dr. Asher Sinensky and potentially others as yet not identified, engaged in acts of wire fraud in order to gain access to i2's proprietary software and information. As part of the same scheme to defraud i2 of its business and property alleged previously, Defendants knowingly transmitted in interstate commerce by means of wire communications, writings, signs, signals, pictures, or sounds for the purpose of executing their scheme in violation of 18 U.S.C. § 1343.

111.    These wire communications include over sixty phone conversations, email communications, and website communications from April 12, 2006 to the present that all furthered Defendants' scheme to defraud i2 of its business and property. The specific number of predicate acts of wire fraud cannot fully be alleged without access to Defendants' books and records, but the most blatant of these acts are alleged previously in this Complaint.

112.    Shyam Sankar, Palantir, SRS Enterprises, Nochur Sankar, Dr. Asher Sinensky and potentially others as yet not identified, have utilized said mail fraud and wire fraud to conduct their racketeering enterprise, and these activities have been ongoing and continuous since 2006 and are likely to continue in the future, absent relief in this action.

- **Criminal Infringement of a Copyright**

113.    Shyam Sankar, Palantir, SRS Enterprises, Nochur Sankar, and potentially others as yet not identified, also knowingly and willfully infringed i2's copyright for purposes of Palantir and their own commercial advantage, violating 18 U.S.C. § 2319. This violation of 18 U.S.C. § 2319 qualifies as a predicate act under 18 U.S.C. § 1961 and is part of the Defendants' pattern of racketeering.

114.    As alleged in Claim IV, Defendants infringed i2's software copyrights and face possible civil liability under 17 U.S.C. §§ 501 *et seq*. Furthermore, in their infringement of i2's copyrights, Defendants violated 18 U.S.C. § 2319 and 17 U.S.C. § 506 which qualify as criminal infringement of i2's copyright. Defendants knowingly and willfully committed the infringing actions outlined in Claim IV and did so for the purposes of commercial advantage to themselves and Palantir.

- **Direct Injury to i2's Business or Property**

115.    i2 was injured in its business and property by reason of Defendants' pattern of racketeering activity.  Specifically, i2 relied on Defendants' numerous fraudulent representations submitted by mail and/or interstate wire in granting Defendants and ultimately Palantir access to its proprietary software and information.  But for Defendants' fraudulent representations, i2 would never have disclosed its proprietary software and information to Defendants, some of whom were employees of i2's competitor, Palantir, at the time and remain so today.  These illicit activities injured i2's business in an amount subject to proof at trial, but which exceed the jurisdictional limits of this Court.

116.    Additionally, as alleged herein above, after gaining access to i2's proprietary software, Defendants willfully infringed several of i2's copyrights in violation of 18 U.S.C. § 2319 and 17 U.S.C. § 506(a), thereby directly injuring i2's business and intellectual property. This unlawful infringement by Defendants was a substantial factor in causing damage to i2 because Defendants developed products and features that enabled them to unfairly compete against i2 by using the Copyrighted Works.  This unlawful infringement caused damage to i2's business and property in an amount to be proven at trial.

### Claim VII
### (Conspiracy To Injure Another In Trade Or Business (Va. Code §§ 18.2-499(A) & 500) (Against Defendants Palantir, Shyam Sankar, Nochur Sankar and Dr. Asher Sinensky)

117.    i2 realleges and incorporates herein paragraphs 1 through 116, inclusive.

118.    As described herein above, defendants Palantir and employees Shyam Sankar, and Dr. Asher Sinensky acted in concert, agreed, associated, mutually undertook or combined together with SRS Enterprises and its managing members Nochur Sankar and Shyam Sankar to injure i2's business and reputation.

119.     As a result of the Defendants' conduct, i2's business has been damaged in an amount subject to proof at trial.

120.     In addition, i2 is entitled to injunctive relief to stop defendants from causing further harm to i2's business through Defendants' concerted actions.

121.     Defendants' conduct was done intentionally, purposefully, maliciously, willfully and without lawful justification, entitling i2 to recover treble damages and attorneys' fees.

### Prayer for Relief

WHEREFORE, i2 prays for judgment as follows:

1.     That Defendants, and each of them, as well as their agents, servants, employees, and all other persons acting in concert or participating with them, be preliminarily and permanently enjoined and ordered, without limitation:

a.     To deliver to i2 all software, documents, computer files, products or other tangible objects (including all dongles) in their possession, control or custody, that describe, constitute, or in any way embody i2 software, trade secret and confidential and proprietary information, and to provide certification of such return to this Court under penalty of perjury;

b.     To immediately and permanently dispossess themselves of, but forensically preserve, any and all software, documentation, trade secrets and confidential and proprietary information of i2 from all of their computer systems, servers or other storage devices, and to provide certification of both the dispossession of and forensic preservation of this information by an independent third party auditor to this Court under penalty of perjury;

c.     To immediately cease all further use or disclosure of any of i2's confidential, proprietary and/or trade secret information; to immediately cease using, selling or otherwise distributing any software products, computer programs, features, methods or anything

else developed by Palantir based on or arising from its misappropriation of i2's trade secrets and other confidential and proprietary information including, but not limited to, the data importing features built into Palantir's software and other products to import data from i2's software;

    2       For compensatory damages subject to proof at trial;

    3.      For disgorgement of all profits any defendants earned as a result of Defendants' wrongful conduct;

    4.      For copyright damages pursuant to 17 U.S.C. §§ 502;

    5.      For exemplary damages;

    6.      For treble damages pursuant to Va. Code §§ 18.2-499(A) & 500;

    7.      For costs of suit;

    8.      For attorneys' fees; and

    9.      For such other and further relief as this Court deems just and proper.


Dated:   August 9, 2010              COOLEY LLP

By:   _____
Robert R. Vieth, VSB 24304
MaryBeth W. Shreiner, VSB 75592
COOLEY LLP
One Freedom Square | Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email: rvieth@cooley.com
Email: mshreiner@cooley.com

OF COUNSEL

Christopher J. Sundermeier
Mark F. Lambert
Neha M. Marathe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email:  sundermeierc@cooley.com
Email:  mlambert@cooley.com
Email:  nmarathe@cooley.com

**Attorneys for Plaintiffs**
**i2 Inc. and i2 Limited**

## DEMAND FOR JURY TRIAL

i2, Inc. and i2 Limited hereby demand a jury trial on all claims and issues triable of right

by a jury.


Dated:   August 9, 2010                          COOLEY LLP


                                    By: _____
                                         Robert R. Vieth, VSB 24304
                                         MaryBeth W. Shreiner, VSB 75592
                                         COOLEY LLP
                                         One Freedom Square | Reston Town Center
                                         11951 Freedom Drive
                                         Reston, VA  20190-5656
                                         Telephone: (703) 456-8000
                                         Facsimile:  (703) 456-8100
                                         Email:  rvieth@cooley.com
                                         Email: mshreiner@cooley.com

                                         OF COUNSEL

                                         Christopher J. Sundermeier
                                         Mark F. Lambert
                                         Neha M. Marathe
                                         COOLEY LLP
                                         3175 Hanover Street
                                         Palo Alto, CA  94304-1130
                                         Telephone: (650) 843-5000
                                         Facsimile:  (650) 849-7400
                                         Email:  sundermeierc@cooley.com
                                         Email: mlambert@cooley.com
                                         Email:  nmarathe@cooley.com

                                         **Attorneys for Plaintiffs**
                                         **i2 Inc. and i2 Limited**

870250 v12/HN

40.

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

TXu 1-578-426

**Effective date of registration:**

July 23, 2008

---

## Title

Title of Work: Analyst's Notebook 7.0

## Completion/Publication

Year of Completion: 2007

## Author

- Author: i2 Limited
  Author Created: entire work of computer software

  Work made for hire: Yes
  Anonymous: No                          Pseudonymous: No

## Copyright claimant

Copyright Claimant: i2 Limited
The Visual Space, Capital Park, Fulbourn, Cambridge, CB21 5XH, United Kingdom

## Limitation of copyright claim

Previously registered: No

## Certification

Name: Min Wang
Date: July 22, 2008

---



**EXHIBIT**
A
ALL-STATE LEGAL®

TPN#:

Registration #:   TXU001578426

Service Request #:   1-80213902

Kirkland & Ellis LLP
Min Wang, Esq.
200 East Randolph Drive
Suite 5300
Chicago, Illinois 60601

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**TXu1-578-423**

**Effective date of
registration:**

July 23, 2008

## Title
Title of Work: iBase 5.0

## Completion/Publication
Year of Completion: 2007

## Author
Author: i2 Limited

Author Created: entire work of computer software

Work made for hire: Yes

Anonymous: No                              Pseudonymous: No

## Copyright claimant
Copyright Claimant: i2 Limited

The Visual Space, Capital Park, Fulbourn, Cambridge, CB21 5XH, United
Kingdom

## Limitation of copyright claim
Previously registered: No

## Certification
Name: Min Wang

Date: July 22, 2008



EXHIBIT
B

IPN#:

Registration #:   TXU001578423

Service Request #:   1-80213655

Min Wang, Esq.
Kirkland & Ellis, LLP
200 East Randolph Drive, Suite 5300
Chicago, Illinois 60601

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-657-489

**Effective date of registration:**

November 19, 2009

## Title

**Title of Work:** Analyst's Notebook 8

## Completion/ Publication

**Year of Completion:** 2009

## Author

■  **Author:** i2 Limited

**Author Created:** computer program

**Work made for hire:** Yes

**Domiciled in:** United Kingdom

## Copyright claimant

**Copyright Claimant:** i2 Limited

The Visual Space, Capital Park, Cambridge, CB21 5XH, United Kingdom

## Limitation of copyright claim

**Material excluded from this claim:** computer program

**Previous registration and year:** V3563D900      2008

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** i2 Limited

**Address:** The Visual Space, Capital Park

Cambridge, CB21 5XH United Kingdom

## Certification

**Name:** Jennifer LW Vowels

**Date:** November 19, 2009

EXHIBIT

ALL-STATE LEGAL®

C

**Registration #:**   TXU001657489

**Service Request #:**   1-282324421

i2
Jennifer LW Vowels
1430 Spring Hill Road
Suite 600
McLean, VA 22102  United States