# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

## ALEXANDRIA DIVISION

| | |
|---|---|
| i2, INC., a Delaware corporation; and i2 LIMITED, a British limited company registered in England and Wales, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:10-cv-00885-LO-JFA |
| PALANTIR TECHNOLOGIES, INC., a Delaware corporation; SHYAM SANKAR, an individual; DR. ASHER SINENSKY, an individual; SRS ENTERPRISES, LLC, a Florida limited liability company; and NOCHUR SANKAR, an individual, | |
| Defendants. | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY AND MOTION FOR A PROTECTIVE ORDER

## TABLE OF CONTENTS

A.    i2 Misstates The Law, And Cannot Satisfy The Proper Test For A Grant Of Expedited Discovery ....................................................................................................................8

B.    Examination Of i2's Discovery Requests Reveals Its Improper Motivations ..................12

C.    Expedited Discovery Is Inappropriate For Several Other Reasons As Well ....................13

      1.    i2 Seeks To Deprive Palantir Of Its Ability To Challenge i2's Pleadings Before Discovery Begins ..................................................................................................13

      2.    The Protective Order Submitted By i2 Is Inadequate, Especially Given The Type Of Evidence That Will Be Involved In This Case ..................................................14

      3.    If Expedited Discovery Is Permitted, Palantir Should Be Permitted To Take Discovery As Well ..................................................................................................17

## PRELIMINARY STATEMENT

This case represents an attempt by i2 to hold captive its customers' data—including data vital to national security—contained in legacy i2 software (known as "Analyst's Notebook" and "iBase"), so that only i2's products can be used with that data.  Many intelligence and law enforcement agencies desire to use Palantir's open-platform data analysis system, which has proven to be far more useful and robust than any product offered by i2, to evaluate their data. But i2 seeks to prevent this by using licensing terms that attempt to bar any i2 customer from permitting a competitor to develop programs that would allow i2's customers to access and transfer their own data from Analyst's Notebook or iBase to another platform.  i2 wishes to bar any such interoperability even if it prevents customers from sharing their own vital intelligence and security information with other agencies or field agents, or prevents customers from analyzing their own data using another company's data analysis software.

There is no factual or legal justification for i2's motion for expedited discovery. According to i2's motion, expedited discovery is required to elicit evidence to support i2's motion for a temporary restraining order, a motion which has now been resolved via a stipulation of the parties.  That justification is therefore gone.  To the extent that i2 suggests there is some risk that i2 code was used to develop Palantir's products, there is nothing in the facts pleaded that would support that suggestion, and as discussed below, the history of the two companies and the nature of their respective products renders any such claim untenable on its face.  Moreover, Palantir should be permitted to test the sufficiency of i2's complaint under Federal Rule of Civil Procedure 12(b)(6), particularly its civil RICO claim, its flimsy copyright claims, and its legally insufficient identification of trade secrets, before the parties hurtle into discovery without a Rule 26(f) conference, a case management order, or a schedule.  This District is known for moving cases and pushing litigation forward.  Palantir is happy to meet that challenge and litigate this

case expeditiously and aggressively.  But the normal rules which govern civil litigation exist for a reason.  They promote order and efficiency.  No fire drill is needed here.  The status quo and electronic evidence has been preserved.  There is no threat of irreparable harm, and this is ultimately, at best, a case about money damages.  There is no identifiable exigency which can justify expedited discovery here, especially the overbroad discovery i2 has proposed and the inadequate protective order about which it has never initiated a meet and confer process with Palantir.  For reasons discussed more fully below, surely if i2 is to take expedited discovery, Palantir must be given the same latitude to explore i2's long-standing awareness that customers and competitors had to figure out ways to extract data from i2's legacy products, over i2's monopolistic objections, in order to serve the intelligence and defense needs of critical law enforcement and national security agencies.  Palantir is also entitled to learn about i2's efforts to protect its market position by whatever anti-competitive means it can think of.  Palantir respectfully suggests that this litigation should be handled like all other cases.  Let the parties and their experienced counsel resolve the upcoming motion to dismiss, then have a Rule 26(f) conference, and then proceed expeditiously, but in the ordinary course.  The normal case management rules are the appropriate vehicle for moving this case forward.

## BACKGROUND

Palantir is an exciting and extremely successful young company.  It was founded in 2004 by a group of innovators, some of whom had devised the system that PayPal used to leverage massive amounts of data and human analysis to solve problems with fraudulent transactions. Declaration of Daniel Woods in Support of Opposition to Motion for Expedited Discovery ("Woods Decl.") ¶ 4.  It has been very successful at raising capital and generating revenue.  It employs 270 talented professionals, many with top level security clearances, at offices in Palo Alto, California and McLean, Virginia.  *Id.* The majority of Palantir's programmers graduated

2

from top five institutions in the computer science field.

Palantir's customers include a veritable alphabet soup of federal, state and local government agencies, among them the FBI, the U.S. Counter-IED Operations Integration Center, the Los Angeles County Sheriff's Department, and the NYPD.  *Id.* ¶ 5.  Palantir's software allows its customers to manage, analyze, and when appropriate, share within the organization or with other entities vast quantities of data, even if that data has been collected, stored or organized using disparate software systems.  *Id.*  As the 9/11 Commission concluded, such interoperability is essential for our national and global security.  *See* Declaration of Melissa J. Miksch in Support of Opposition to Motion for Expedited Discovery ("Miksch Decl.") Ex. A ("The importance of integrated, all-source analysis cannot be overstated.  Without it, it is not possible to 'connect the dots.'").  But i2 doesn't care about that—it is a dinosaur that has been attempting to hold on to its legacy customer base by artificially restricting interoperability.  i2 has for years attempted to hold its customers' data hostage to being used only with software licensed by i2.  Customers who have stored their data in i2's Analyst's Notebook product do not like having their data held hostage by i2.  Woods Decl. ¶ 6.  This is no surprise, for i2's restrictions interfere with their ability timely to incorporate and analyze data generated or stored on other systems and obstructs or prevents them from sharing information with others who may be using another system when the need arises.  As i2's own declarant John Parker admits, "[i]t is common for customers of i2 who are soliciting bids [from intelligence analysis software providers] to state an explicit requirement that any solution offered by a bidder must be compatible with i2's Analyst's Notebook products."  Parker Decl. ¶ 60.

Palantir heeded the conclusions of the 9/11 Commission and addressed the needs of the intelligence community by creating a new, and vastly superior, intelligence analysis system which facilitates the sharing of critical national security data among agencies whose

effectiveness had long been diminished by balkanization of data. Woods Decl. ¶ 5. Palantir's platform is far different from anything offered by i2, which essentially provides a product (Analyst's Notebook) that allows a user to graphically represent (with icons and lines between them) connections that the user discerns in the user's own data, and a rudimentary database product (iBase) that permits storage and retrieval of a customer's data. One illustration of the difference is price: today, the cost of a typical Palantir installation starts at around the million dollar mark, Woods Decl. ¶ 11, while (as the materials that i2 submitted with its moving papers confirm) licenses to i2's Analyst's Notebook or iBase sell for less than ten thousand dollars.

The tremendous value of Palantir has been well-publicized. A 2009 front page article in the Wall Street Journal explained that Palantir "has designed what many intelligence agencies say is the most effective tool to date to investigate terrorist networks" enabling analysts to "scan multiple data sources at once, something previous search tools couldn't do." Miksch Decl. Exh. B at A1. That means an analyst who is following a tip about a planned terror attack, for example, can more quickly and easily unearth connections among suspects, money transfers, phone calls and previous attacks around the globe." *Id.*

The Wall Street Journal further acknowledged that Palantir's "software has helped root out terrorist financing networks, revealed new trends in roadside bomb attacks, and uncovered details of Syrian suicide bombing networks in Iraq, according to current and former U.S. officials familiar with the events." *Id.* Intelligence officials have described Palantir's software as "crucial" in "difficult theaters like Afghanistan" where "Palantir's software is now being used to analyze constantly shifting tribal dynamics and distinguish potential allies from enemies." *Id.* at A14.

To achieve these results, Palantir's solution operates across other companies' software platforms; it allows customers interoperability not just with data stored in i2's platforms, but

with data found in dozens of others. Woods Decl. ¶ 7. The predictable result is that customers freed from their captivity to i2's software (or the software of other companies) embrace the superior user experience and capabilities offered by Palantir. *Id.*

Interoperability, however, poses a threat to i2, which has been using a combination of restrictive licensing terms and "closed" data and file formats in an attempt to protect its legacy position in the market, regardless of the consequences and potential detriments to its customers and national security. It has gone to extreme lengths to attempt to tie its customers down, in at least one instance demanding $55,000 from the Los Angeles' Sheriff's Department to allow it to use the LASD's own data with a Palantir solution. Declaration of Toan Ton in Support of Opposition to Expedited Discovery ("Ton Decl.") at ¶¶ 5-6. This lawsuit is yet another attempt by i2 to forestall its eventual obsolescence.

Just as i2's efforts to keep its customers captive is not a new development, neither is i2's awareness of Palantir's access to and use of i2's products to achieve interoperability. While i2 claims it only just now discovered how Palantir gained access to its products, it does <u>not</u> deny, and cannot deny, that it has known for years of both Palantir's access to its software and efforts to create interoperability—which it now complains of so vociferously and insists necessitates expedited discovery. That is because Palantir has never been anything but open about its creating in Palantir's products the capability to exchange customers' data between its software and i2's products.

In addition to what i2 learned from its own customers and conferences where both companies were attendees, Palantir has distributed materials discussing its ability to transfer customer data from i2 software to its platform for years. For example, Palantir has described the program that is used to obtain data from iBase, "iBaseCrawl," in documents available on its website. Woods Decl. ¶ 9. It has discussed its ability to obtain data from iBase in materials

disseminated to its customers since 2007. Ton Decl. Exh. A. Another document disseminated to customers since early 2009 discussed Palantir's compatibility with i2's Analyst's Notebook ("ANB"). Ton Decl. Exh. B. And Palantir visually showed that it could move data from Analyst's Notebook to Palantir's platform as early as the fall of 2008, including by posting a video on YouTube that demonstrated the transfer of data from an active copy of Analyst Notebook that i2 admittedly saw. *See* Parker Decl. ¶ 48. Because that video was removed from YouTube a few months later, it is indisputable (as Mr. Parker effectively admits, *see id.* ¶¶ 47-53) that i2 has known for nearly two years that Palantir had access to i2 software, or that Palantir had performed a feat of programming that i2 contends was "virtually impossible" to do without having access to Analyst's Notebook. *Id.* at ¶ 53. Simply put, contrary to i2's recently minted claims that this is an extraordinary situation requiring this Court to order emergency relief and expedited discovery, i2 has known for years that Palantir had utilized its products in order to provide Palantir customers the ability to transfer their data (in both directions) between i2's and Palantir's products. Palantir's doing so was not, and is not, unlawful. However, even assuming *arguendo* that i2 has a viable claim of some sort in this case, there is no plausible emergency here that would justify expedited discovery, and the idea that this Court would issue a preliminary injunction depriving government security agencies of the ability to exchange information vital to national security, counterterrorism, and crime fighting because i2 does not want anyone's software used but its own seems far-fetched.

On August 9, 2010, without warning, i2 filed the present complaint against Palantir. Palantir learned of the complaint from one of its customers, the Los Angeles Sheriff's Department, which had been given a copy of the complaint by i2 before it was served on Palantir. Two days later, i2 filed this motion for expedited discovery (noticed for hearing nine days after filing) and served it that night, along with the complaint.

Contrary to i2's contrived attempt to paint Palantir not just as an allegedly unauthorized user of its software, but also as part of a criminal racketeering enterprise that has stolen it, Palantir was perfectly willing to deliver to i2 the software that had been purchased from i2, and it would have been willing to do so upon request, without the need for i2's filing a 40 page complaint, let alone a sweeping demand for expedited discovery. Moreover Palantir will demonstrate in this litigation that its conduct was lawful and that i2 has suffered no compensable harm. What i2 tries to paint as a heinous crime was a response to a national security problem, the demands of intelligence and law enforcement customers, and the dictates of common sense: customers need to be able to use, transfer and exchange their own data, regardless of the program that may have previously been used to store or organize it. Palantir's products have that capability across industry platforms, not just i2's. But, for its own commercial self-interest, and irrespective of the national interest, i2 now wants to thwart this progress towards interoperability and openness within the intelligence community. It has launched this suit in an attempt to keep its customers' data captive within its products, so as to deny them the ability to use their data on Palantir's and other companies' software. This goal is at the least inequitable, if not illegal, and expedited discovery should not be granted to help i2 achieve it.

## ARGUMENT

The Federal Rules of Civil Procedure instruct that a party "may not" seek discovery "from any source" prior to their Rule 26(f) conference absent a court order to the contrary. Fed. R. Civ. P. 26(d). i2 therefore bears the burden of persuading this Court that it should cast aside the manner in which cases are presumptively litigated under the Federal Rules. *See, e.g.*, *American Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009) (denying expedited discovery when plaintiff's evidence did not show that it would "be irreparably harmed by delaying the broad-based discovery it now requests until after the initial conference between

the parties under Rule 26(f)").

### A.     i2 Misstates The Law, And Cannot Satisfy The Proper Test For A Grant Of Expedited Discovery

i2's description of the showing that this Court has required in order to grant a request for expedited discovery is mistaken. It suggests that this Court employs a minimal "good cause" standard for allowing expedited discovery to be taken. Mot. at 4. Yet *Physicians Interactive v. Lathian Systems Inc.*, No. 03-1193-A, 2003 U.S. Dist. LEXIS 22868 (E.D. Va. Dec. 5, 2003), upon which i2's motion relies, says no such thing. In fact, it instructs that "[t]his Court, in granting motions for expedited discovery, has held that a plaintiff must sufficiently prove the first and second prongs of *Blackwelder [Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977)], the 'balance of hardships' analysis." *Id.* at *12.[1]

The first prong of *Blackwelder* requires that i2 demonstrate "irreparable harm" if expedited discovery is not granted. *See id.* Yet i2 devotes all of *one sentence*, bereft of any citation to evidence, to the proposition that it would suffer such harm absent expedited discovery. *See* Mot. at 6. And the claim i2 makes, that it will suffer irreparable harm in the form of lost business unless it is granted immediate discovery, has been expressly *rejected* by a case that i2 itself cited in its motion because lost business is compensable by money damages. *See Dimension Data North Am., Inc. v. Netstar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) ("Assuming, *arguendo*, that plaintiff's allegations regarding breach of confidentiality agreements are correct and that plaintiff will prevail at trial on the merits, the damages associated with such breach in the intervening time period can be readily calculated and awarded to plaintiff."); *see*

---

[1] The *Blackwelder* test referred to in *Physicians Interactive* was recently replaced with a stricter standard in *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342 (4th Cir. 2009), *vacated and remanded*, 130 S. Ct. 2371 (2010), *reaffirmed in relevant part and remanded*, 607 F.3d 355 (4th Cir. 2010). *Real Truth* requires a stronger showing by the party seeking relief, for example, rejecting the proposition that upon a strong showing of probability of success, a "moving party may demonstrate only a *possibility* of irreparable injury." 575 F.3d at 347. Thus, i2's burden in seeking expedited discovery has, if anything, only gotten heavier in

*also Carter v. Ozoeneh*, No. 3:08-cv-614, 2009 WL 1383307 at *3 (W.D.N.C. May 14, 2009) (denying expedited discovery despite claims of a "serious risk of losing customers and investors" when plaintiff did not show "that their alleged damages cannot be adequately remedied by a monetary judgment").

Though it is clear that i2's description of the law in this area is not accurate, it is also worth noting that i2's attempts to liken itself to the two cases upon which it seeks to rely in its motion are also meritless. i2's allegations are nothing like those in the *Physicians Interactive* complaint, where the plaintiff feared a recurrence of cyber-attacks on its facilities. i2 has not argued that Palantir will continue to obtain software from i2, and indeed Palantir has already agreed voluntarily to return to i2 any software that it acquired from i2. Moreover, i2's complaint does not even allege that Palantir has copied software code from i2 products; far from it. The gravamen of its complaint is that Palantir has made it possible for i2 customers to use their own data, locked down in the i2 format, with Palantir software (and vice versa). *See* Compl. ¶ 9 (complaining about software "that easily extracts information out of the Analyst's Notebook software" and "that enables Palantir software users to extract data out of iBase databases"). In each instance, of course, Palantir requires that the user performing the extraction be licensed to use the i2 software, since they will need to use a dongle to activate the i2 software, thus ensuring that only customers licensed by i2 to use its software who wish to extract their own data from i2 and use it on the Palantir platform are able to do so. The closest i2 gets to any claim of "copying" is that Palantir has supposedly used "icons" that look like those used by i2. *See id.* ¶ 10. But claims that icons of two companies look alike is hardly grist for the expedited discovery mill.

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002), provides i2

---

light of recent developments in Fourth Circuit law.

with no support.  Far from creating the sort of needless rush at the very outset of a case advocated by i2 here, the plaintiff in *Semitool* filed its motion for expedited discovery *two months* after filing its complaint.  *See id.* at 274.  Rather than burdensome and broad requests such as are involved here, *see infra* Part B, *Semitool* involved targeted requests for readily available items such as technical specifications, schematics, maintenance manuals, and user or operating manuals.  *See id.*  And unlike this case, where i2 filed a complaint, a motion for temporary restraining order and preliminary injunction, and this expedited discovery motion without any prior warning, in *Semitool* the defendant "had notice that Plaintiff has been seeking this information for *over a year* as there were pre-litigation disclosure requests made by Plaintiff, as well as extensive discussion between the parties regarding said requests."  *Id.* at 276-77 (emphasis added).  i2's aggressive attack at the outset of this case is nothing like the situation in *Semitool*.  Indeed, although *i2* certainly was on notice of the claims that it wished to bring for as long or longer than the plaintiff in *Semitool*, it never made any pre-litigation requests for disclosure to Palantir.

Perhaps realizing that its attempts to draw parallels with prior cases are not well taken, i2 attempts to paint Palantir as a thief who is likely to "hide its fraud through the destruction of electronic evidence," and "urges the court not to take this chance."  Mot. at 7.  i2's smears are unfortunate.  Palantir has hired reputable counsel, Keker & Van Nest, LLP and Wilmer Cutler Pickering Hale & Dorr, LLP, to represent it in this case.  SRS and Nochur Sankar will be represented by McGuireWoods LLP.  These parties and their counsel take their document retention and preservation obligations seriously, and had moved to secure potentially relevant materials in this case even before being served with the complaint.  There is not a whit of evidence suggesting that Palantir will not abide by its obligations as a litigant.  Indeed, Palantir has voluntarily agreed to the requests made by i2 in its motion for temporary restraining

order/preliminary injunction, and would have done so even without this litigation being commenced. Simply put, i2's name-calling does not justify its requested deviation from the standard rules of litigation.

Yet another reason that i2 is not entitled to expedited discovery is because it has known of Palantir's possession and use of i2 software for years without doing anything about it. i2 cannot satisfy the irreparable harm prong of *Blackwelder* here because one who has slept on its rights for so long cannot now seek to have the Court grant what is effectively an equitable remedy of expedited discovery. *See, e.g.*, *Max-Planck-Gesellschaft Zer Forderung Der Wissenschaften E.V. v. Whitehead Institute for Biomedical Research*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009) ("A party cannot delay the initiation of litigation and then use an 'emergency' created by its own decisions concerning timing to support a motion for preliminary injunction.").

i2 cannot show the second prong of *Blackwelder* either, because the harm that would be suffered by Palantir if i2's demand for expedited discovery is granted is clear. i2 has strategically filed this motion at the very outset of the case, serving it along with the complaint in this matter. During the time that Palantir's counsel should be permitted to get up to speed on the allegations in the complaint (which i2 has had plenty of time to investigate and prepare) and prepare a response to it, they must instead devote their efforts to briefing an opposition to this motion and possibly responding to massively overbroad discovery requests on an expedited basis. There is no justification for that, especially given this Court's well-deserved reputation for moving cases expeditiously under the Federal Rules of Civil Procedure as they are written and routinely applied. Moreover, as described below, granting i2's motion would permit discovery to go forward on all of i2's purported causes of action before this Court has a chance to consider the legal challenges Palantir intends to bring to the sufficiency of those purported causes of action, and before the Court has a chance to become familiar with the context of this case, in

which sensitive data from public safety and military agencies may well be at stake.

**B.      Examination Of i2's Discovery Requests Reveals Its Improper Motivations**

Consideration of the discovery requests that i2 has included with its request for expedited discovery also demonstrate why its motion should not be granted.  As another one of the cases i2 itself cites in its motion holds, "[c]ourts must also protect defendants from unfair expedited discovery" and in doing so "it makes sense to examine the discovery request . . . and the ***reasonableness*** of the request in light of all of the surrounding circumstances."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623-24 (N.D. Ill. 2000).  No expedited discovery at all should be granted for the reasons previously stated.  But even if some discovery were considered permissible, i2's requests go too far.  Here, the requests propounded by i2 include:

- The production of all documents and communications between Palantir and any known customers of i2 going more than four years back;

- The source code for certain Palantir software;

- The identification of all persons at Palantir who has had access to or used any i2 software, and details about when that occurred (which includes by its terms any employees who have had access to i2 software while working at any customer site);

- The identity and substance of the opinions of "every anticipated testifying expert witness";

- The identity of each and every customer who has purchased Palantir software since the time that Palantir developed certain software applications.

And the list goes on.  This is but a sampling of the overreaching requests that i2 has made, and that it demands Palantir answer in far less than the 30 days to which Palantir is entitled under the Federal Rules.  Not only does i2 demand Palantir's crown jewels—its source code—but it also wants to see all of Palantir's correspondence with all of the mutual customers of the parties.  What would i2 need with all of that data on an expedited basis?  Clearly, despite i2's protestations that it would "not gain any competitive advantage" from the discovery it seeks here, Mot. at 7, that is exactly what i2 is after.  These unreasonable demands confirm that its goal

here is not to obtain discovery to which it could arguably be entitled but rather to occupy

Palantir's counsel with crushing discovery burdens at the very outset of the case, before they

have even had a chance to respond to the complaint.

**C.    Expedited Discovery Is Inappropriate For Several Other Reasons As Well**

**1.    i2 Seeks To Deprive Palantir Of Its Ability To Challenge i2's Pleadings Before Discovery Begins**

Courts from the Supreme Court on down have recognized the burdens imposed on parties

by the discovery process, and have held that complaints should be forced to withstand scrutiny

before discovery is permitted to commence.  *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 558-59 (2007) (emphasizing the need for scrutiny of complaints before potentially

expensive discovery takes place).  i2 seeks to short-circuit this inquiry by demanding discovery

before Palantir has even had a chance to respond to the complaint.  Before allowing what could

turn out to be exceedingly expensive and burdensome discovery to go forward, this Court should

consider any arguments that Palantir may make for why one or more of the purported causes of

action fail to state a claim.

i2's tactic is all the more improper because it seeks to rush forward into expedited

discovery on a complaint that prominently features legally inadequate "racketeering" allegations

and a claim of trade secret misappropriation when i2 hasn't given any indication of what it

claims its trade secrets are aside from the general pleading in its complaint that "software,

documentation and other confidential and proprietary information" constitute its trade secrets.

Courts recognize that a trade secret claim needs to be far better defined prior to discovery

commencing so that a plaintiff cannot simply declare what it later finds in a defendant's files to

be its trade secret.  *See, e.g.*, *Brescia v. Angelin*, 90 Cal. Rptr. 3d 842, 848 (Cal. Ct. App. 2009)

(observing that the appropriate identification of trade secrets early in a case "prevents plaintiffs

from using the discovery process as a means to obtain the defendant's trade secrets"); *see also*

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) (reversing grant of summary judgment for plaintiff on trade secret cause of action relating to computer software when the plaintiff "assert[ed] that it ha[d] trade secrets in its diagnostic software and operating system" but did not "specifically identify these trade secrets"); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007) (denying motion to compel discovery from trade secret defendant and finding that it was "appropriate in this case to require Witten to first identify with 'reasonable particularity' those trade secrets it believes to be at issue"); *Hill v. Best Med. Int'l, Inc.*, No. 09-1194, 2010 WL 2546023 at * 3 (W.D. Pa. June 24, 2010) (holding that a defendant need not respond to discovery until trade secrets identified with reasonable particularity; "general allegations and generic references to products are insufficient to satisfy [plaintiff's] burden of identifying its misappropriated trade secrets with 'reasonable particularity'"); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (granting motion for protective order where plaintiff had not provided a particularized list of trade secrets).  Indeed, this issue is so important in trade secret litigation that California, a sister Uniform Trade Secrets Act jurisdiction, has enacted a statute specifically mandating that a proper list of trade secrets be provided before discovery commences.  *See* Cal. Code of Civ. Proc. § 2019.210.  The bare allegations of i2's complaint regarding its alleged trade secrets should be subjected to scrutiny before any discovery, let alone expedited discovery, is permitted to go forward.  By filing this motion i2 hopes to evade these sorts of threshold questions about the sufficiency of its complaint, and the Court should not permit it to do so.

      2.      **The Protective Order Submitted By i2 Is Inadequate, Especially Given The Type Of Evidence That Will Be Involved In This Case**

The request for this Court to grant expedited discovery to be carried out under the form protective order that was submitted by i2 (without any consultation with counsel for Palantir) is also improper because of the need for the parties to attempt to reach agreement on an appropriate

protective order. The protective order i2 has attached to its motion is clearly deficient in several regards, which could likely have been worked out had i2 chosen to negotiate a protective order rather than trying to cram an order down on Palantir. For example, i2's proposed protective order does not include any mechanism by which Palantir could challenge i2's designation of "independent experts" who would be permitted to see any and all of Palantir's most sensitive and confidential information. Under i2's proposal, i2 could designate a consultant who has worked extensively with i2, or perhaps even an i2 employee, as an "independent expert" that can have access to Litigating Counsel's Eyes Only documents. There is no way for Palantir to challenge the designation of such a person as an independent expert under i2's proposal; yet such protections for highly confidential information are ubiquitous in litigation today.

The proposed protective order also contains no special provisions for the protection of source code, such as requiring that the source code be located only on a standalone computer, access to which is limited. Yet that is a standard feature in cases involving this uniquely important material. *See, e.g.*, *Leader Techs. Inc. v. Facebook Inc.*, No. 08-cv-862-JJF-LPS, 2009 WL 3021168, at *4 n.4 (D. Del. Sept. 4, 2009) (plaintiff only "permitted to review [defendant]'s source code at a location of [defendant]'s choosing, at which [defendant] will provide a non-networked, stand-alone, password-protected computer terminal for [plaintiff]'s use"; those examining the source code "are prohibited from copying or printing" the source code).[2] i2's

_____

[2] Further examples of such restrictions are found in the files of courts throughout the country. *See, e.g.*, *Connectel, LLC v. Cisco Sys., Inc.*, No. 2:04-cv-00396 LED (E.D. Tex. May 9, 2005), Doc. No. 54, ¶ 12(c) ("Any such source code shall only be viewed or analyzed on a stand-alone computer (a computer that is not connected to any internal or external computer or computer network) located at the producing party's facilities or within the single designated United States office of the Source Code Custodian.") (Miksch Decl. Exh. C); *BTG Int'l, Inc. v. Amazon.com, Inc., et al.*, No. 1:04-cv-01264-SLR (D. Del. June 24, 2005), Doc. No. 148, ¶ 14(a)(i) ("A single electronic copy of such source code or executable code shall be made available for inspection on a stand alone computer.") (Miksch Decl. Exh. D); *Tivo Inc. v. Echostar Commc'ns Corp.*, No. 2:04-cv-00001 DF (E.D. Tex. Feb. 7, 2005), Doc. No. 49, ¶ 7(a) (source code in electronic form "will be provided on a standalone computer . . . at an office of outside counsel for the producing Person . . . .") (Miksch Decl. Exh. E); *Intergraph Hardware*, Doc. No. 88, ¶ 17(a) ("Access to the machine-readable version of the [code] shall only be provided…on "stand alone" computers….") (Miksch Decl. Exh. F); *Broadcom Corp. v. Commonwealth Scientific and*

attempt to sweep these issues under the rug by wrapping them up in its motion for expedited discovery is really an attempt to deny Palantir the ability to negotiate a protective order that will allow adequate protection of its crown jewels.  And contrary to i2's claim that *Physicians Interactive* and *Semitool* involved "the same type[] of information," Mot. at 7, neither case mentioned that it was granting access to source code.

Moreover, some of the customers whose data may be exchanged in discovery in this case are critical national security and law enforcement agencies whose data is highly sensitive and in some cases require a security clearance merely to access it.  Courts have recognized that disclosure of such information presents special concerns that must be accommodated.  *See, e.g.*, *Colby v. Halperin*, 656 F.2d 70, 73 (4th Cir. 1981) (reversing modification of protective order permitting attorney to review classified material subject to his obtaining security clearance because "there should be no authorized disclosure [of classified information] to anyone in the absence of a demonstration of a strong necessity for it"); *Hayden v. Nat'l Sec. Agency/Central Sec. Srvc.*, 608 F.2d 1381, 1385 (D.C. Cir. 1979) (district court did not abuse its discretion in excluding counsel from *in camera* review of classified material subject to protective order because "it is not appropriate, and not possible without grave risk, to allow access to classified defense-related material to counsel who lack security clearance, unless a court has already determined pursuant to FOIA procedures that the material should be publicly disclosed").  Yet there is no recognition of this issue, and how it should be treated in discovery, in i2's proposed protective order.  This issue, as well, requires a more carefully thought out, negotiated, and tailored protective order than the form protective order that i2 has attempted to impose without

---

*Industrial Research Org.*, No. 6:09-cv-513 (LED) (E.D. Tex. Apr. 20, 2010), Doc. No. 61, ¶ 5.3(a) ("…[the reviewing parties] may load the [source code] onto a stand-alone, non-networked, password protected computer….") (Miksch Decl. Exh. G); *Intel Corp. v. Commonwealth Scientific and Industrial Research Org.*, No. 6-06-CV-551 LED (E.D. Tex. June 8, 2007), Doc. No. 140, ¶ 5.3(a) ("…[the reviewing parties] may load the [source code] onto a stand-alone, non-networked, password protected computer….") (Miksch Decl. Exh. H).

so much as an attempt to meet and confer with Palantir.

### 3.    If Expedited Discovery Is Permitted, Palantir Should Be Permitted To Take Discovery As Well

Finally, if discovery is to begin in an expedited fashion, it should not be one-sided.  If discovery is to commence now, Palantir is entitled to expedited discovery into issues that relate to possible defenses that it has already identified in the short time that it has had knowledge of i2's accusations of wrongdoing.  Morever, if i2 is to be permitted to set aside the ordinary rules of discovery and case management in pursuit of its claims, Palantir should be equally entitled to a suspension of those rules for it to develop evidence supporting its defenses and its own potential claims against i2.  Palantir understands that i2 has been modifying its software over time to look more and more like Palantir's own software, and it is entitled to take discovery into how and why that has been done.  Palantir also understands that i2 has aggressively sought to prevent companies from using their own data with alternative software solutions, including by demanding payment in order to release their own data.  Palantir is entitled to take discovery into those events so that it may consider what claims it may possess against i2 as the case proceeds. Palantir is further entitled to take discovery into the reasons for the timing of launching this lawsuit and i2's public relations campaign that accompanied its filing, and facts demonstrating that i2 has been well aware of Palantir's ability to interoperate with its software for some time now.  In fairness, if i2 is permitted to take expedited discovery at the outset of the case, Palantir should similarly be allowed to propound discovery upon i2.

## CONCLUSION

For the foregoing reasons, i2's motion for expedited discovery should be denied.  In the alternative, to the extent the Court permits expedited discovery, both sides should have the same rights.

Dated:  August 23, 2010

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ _____
Carl Nichols, VSB No. 43065
D. Bradford Hardin, Jr., VSB No. 76812*
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:        (202) 663-6000
Facsimile:        (202) 663 6363
Email: Carl.Nichols@wilmerhale.com
Email: Bradford.Hardin@wilmerhale.com
*Admitted in Virginia only.  Supervised by members of the District of Columbia Bar.

Of Counsel:

John W. Keker, *pro hac vice* pending
Elliot R. Peters, *pro hac vice* pending
Jeffrey R. Chanin, *pro hac vice* pending
Eugene M. Paige, *pro hac vice* pending
Melissa J. Miksch, *pro hac vice* pending
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:        (415) 391-5400
Facsimile:        (415) 397-7188
Email:      jkeker@kvn.com
Email:      epeters@kvn.com
Email:      jchanin@kvn.com
Email:      emp@kvn.com
Email:      mmiksch@kvn.com

**Attorneys for Defendants**
**PALANTIR TECHNOLOGIES, INC.,**
**SHYAM SANKAR, and DR. ASHER**
**SINENSKY**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of August, 2010, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Robert R. Vieth, Esq.
> COOLEY LLP
> One Freedom Square | Reston Town Center
> 11951 Freedom Drive
> Reston, VA  20190-5656
> *Attorney for Plaintiffs i2 Inc. and i2 Limited*

> Anand Vijay Ramana
> McGuireWoods LLP (McLean)
> 1750 Tysons Blvd
> Suite 1800
> McLean, VA 22102-4215
> (703) 712-5000
> Email: aramana@mcguirewoods.com
> *Attorney for Nochur Sankar and SRS Enterprises, LLC*

> /s/
> _____
> Carl Nichols, Esq. (Va. Bar No. 43065)
> Don Bradford Hardin, Jr., Esq. (Va. Bar No. 76812)
> Wilmer Cutler Pickering Hale and Dorr LLP
> 1875 Pennsylvania Ave., N.W.
> Washington, D.C. 20006
> Telephone:  (202) 663-6226
> Facsimile:  (202) 663-6363
> Carl.Nichols@WilmerHale.com
> Bradford.Hardin@WilmerHale.com
> *Attorneys for Palantir Technologies, Inc., Shyam Sankar, and Dr. Asher Sinensky.*

19