UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| i2 INC., a Delaware corporation; and i2 LIMITED, a British limited company registered in England and Wales,<br><br>              Plaintiffs,<br><br>     v.<br><br>PALANTIR TECHNOLOGIES, INC., a Delaware corporation; SHYAM SANKAR, an individual; DR. ASHER SINENSKY, an individual; SRS ENTERPRISES, LLC, a Florida limited liability company; and NOCHUR SANKAR, an individual,<br><br>              Defendants. | Civil Action No. 1:10-cv-00885-LO-JFA |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ....................................................................................................3

III. ARGUMENT .........................................................................................................5

    A.   i2's federal claims fail, and with them, i2's purported basis for
        invoking this Court's jurisdiction. ..................................................................6

        1.   The Court should dismiss i2's RICO claim. ...............................7

        2.   The Court should dismiss i2's claim for copyright
               infringement. ..............................................................................9

               a.   i2 has not alleged any facts whatsoever to support its
                    claim for copyright infringement. ...................................9

               b.   Even if i2 had alleged the elements of copyright
                    infringement, which it hasn't, its claim would fail under
                    the "fair use" doctrine. .................................................12

               c.   i2's copyright claim also fails under the "copyright
                    misuse" doctrine. ..........................................................15

               3.   The Court should dismiss i2's claim for contributory copyright
               infringement. ............................................................................16

    B.   Even if this Court were to exercise pendent jurisdiction, i2's state-law
        claims fail. ....................................................................................................17

        1.   The Court should dismiss i2's fraud, contract, RICO, and
               business conspiracy claims because i2 has not alleged
               damages, other than conclusory allusions to lost profits, which
               i2 has expressly disclaimed. .....................................................17

        2.   The Court should dismiss i2's fraud and business conspiracy
               claims as preempted by the VUTSA. ........................................19

        3.   The Court should dismiss i2's contract claim under UCITA, as
               a matter of public policy, and based on the express provision
               that the licenses do not limit the "use or dissemination of
               information not actually derived from" i2. ................................21

        4.   The Court should dismiss i2's claim for trade secret
               misappropriation. ......................................................................22

               a.   i2 has not alleged facts showing that the information at
                    issue satisfies the statutory definition of a trade secret. .................22

               b.   i2's allegations are particularly deficient with respect to

Dr. Sinensky.........................................................................................27

5. The Court should dismiss i2's business conspiracy claim........................28

IV. CONCLUSION..........................................................................................................30

# TABLE OF AUTHORITIES

**Page No.**

### Federal Cases

*A.V. ex rel. Vanderhye v. iParadigms, LLC*
  562 F.3d 630 (4th Cir. 2009) ...........................................................................13, 14, 15

*Al-Abood v. El-Shamari*
  217 F.3d 225 (4th Cir. 2000) .................................................................................8, 9, 28

*Anderson v. Found. for Advancement, Educ. & Employment of Am.
  Indians*
  155 F.3d 500 (4th Cir. 1998) .........................................................................................8

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009) ........................................................................................ *passim*

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*
  350 F.3d 640 (7th Cir. 2003) ...........................................................11, 15, 16, 22

*Bank of Montreal v. Signet Bank*
  193 F.3d 818 (4th Cir. 1999) .......................................................................................17

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................. *passim*

*C&F Packing Co., Inc. v. IBP, Inc.*
  224 F.3d 1296 (Fed. Cir. 2000) ...................................................................................19

*Campbell v. Acuff-Rose Music, Inc.*
  510 U.S. 569 (1994) .....................................................................................................12

*Chicago Lock Co. v. Fanberg*
  676 F.2d 400 (9th Cir. 1982) .......................................................................................27

*Composite Marine Propellers, Inc. v. Van Der Woude*
  962 F.2d 1263 (7th Cir. 1992) .....................................................................................19

*Conley v. Gibson*
  355 U.S. 41 (1957) .......................................................................................................10

*CoStar Group, Inc. v. LoopNet, Inc.*
  373 F.3d 544 (4th Cir. 2004) .......................................................................................16

*Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*
  535 F. Supp. 2d 542 (E.D.N.C. 2008) ...........................................................................9

*DSC Communications Corp. v. Pulse Communications, Inc.*
  170 F.3d 1354 (Fed. Cir. 1999) ...................................................................................16

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*
  499 U.S. 340 (1991) ..........................................................................................9, 10, 12

*Gasner v. County of Dinwiddie*
  162 F.R.D. 280 (E.D. Va. 1995) ....................................................................................3

*GE Investment Private Placement Partners II v. Parker*
  247 F.3d 543 (4th Cir. 2001) .........................................................................................7

*Gov't Employees Ins. Co. v. Google, Inc.*
  330 F. Supp. 2d 700 (E.D. Va. 2004) .............................................................6, 18, 20

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*
  118 F.3d 199 (4th Cir. 1997) ............................................................................ 12

*Hutchison v. KFC Corp.*
  809 F. Supp. 68 (D. Nev. 1992) ........................................................................ 20

*In re Buffalo Coal Co.*
  424 B.R. 738 (Bankr. N.D.W. Va. 2010) .......................................................... 18

*Lewin v. Cooke*
  95 F. Supp. 2d 513 (E.D. Va. 2000) ............................................................ 28, 29

*Litchfield v. Spielberg*
  736 F.2d 1352 (9th Cir. 1984) .......................................................................... 11

*Marvullo v. Gruner & Jahr*
  105 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................................... 10

*Menasco, Inc. v. Wasserman*
  886 F.2d 681 (4th Cir. 1989) ......................................................... 6, 7, 8, 9, 18

*Michigan Mut. Ins. Co. v. Smoot*
  128 F. Supp. 2d 917 (E.D. Va. 2000) ................................................................ 29

*MicroStrategy Inc. v. Bus. Objects, S.A.*
  331 F. Supp. 2d 396 (E.D. Va. 2004) ..................................................... 23, 25, 26

*MicroStrategy Inc. v. Bus. Objects, S.A.*
  429 F.3d 1344 (Fed. Cir. 2005) ................................................................... 19, 20

*Miranda v. Ponce Fed. Bank*
  948 F.2d 41 (1st Cir. 1991) ................................................................................ 6

*NXIVM Corp. v. Ross Inst.*
  364 F.3d 471 (2d Cir. 2004) .............................................................................. 13

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir. 2007) .......................................................................... 13

*Reibold v. Simon Aerials, Inc.*
  859 F. Supp. 193 (E.D. Va. 1994) ..................................................................... 18

*Scharpenberg v. Carrington*
  686 F. Supp. 2d 655 (E.D. Va. 2010) ............................................................... 28

*Schlegel v. Bank of Am., N.A.*
  505 F. Supp. 2d 321 (W.D. Va. 2007) ............................................................... 17

*SecureInfo Corp. v. Telos Corp.*
  387 F. Supp. 2d 593 (E.D. Va. 2005) ....................................................... *passim*

*Sedima, S.P.R.L. v. Imrex Co., Inc.*
  473 U.S. 479 (1985) ........................................................................................... 17

*Sega Enterprises Ltd. v. Accolade, Inc.*
  977 F.2d 1510 (9th Cir. 1992) ........................................................... 12, 13, 14, 15

*Skillstorm, Inc. v. Electronic Data Systems, LLC*
  666 F. Supp. 2d 610 (E.D. Va. 2009) ............................................................... 29

*Sony Computer Enter., Inc. v. Connectix Corp.*
  203 F.3d 596 (9th Cir. 2000) ............................................................................ 15

iv

*Sony Corp. of Am. v. Universal City Studios, Inc.*
  464 U.S. 417 (1984) ....................................................................................................11

*State Analysis, Inc. v. Am. Fin. Servs. Ass'n*
  621 F. Supp. 2d 309 (E.D. Va. 2009) .................................................................24, 25

*Taylor v. Waters*
  81 F.3d 429 (4th Cir. 1996) .........................................................................................7, 16

*Telxon Corp. v. Symbol Technologies, Inc.*
  961 F. Supp. 1113 (N.D. Ohio 1996)...........................................................................26

*United Mine Workers v. Gibbs*
  383 U.S. 715 (1966)..........................................................................................2, 7, 16

*Veney v. Wyche*
  293 F.3d 726 (4th Cir. 2002) .......................................................................................3

*Williams v. Equity Holding Corp.*
  245 F.R.D. 240 (E.D. Va. 2007) ..............................................................................6, 20

## State Cases

*Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*
  251 Va. 28, 466 S.E.2d 382 (1996) ...........................................................................22

*DVD Copy Control Ass'n, Inc. v. Bunner*
  31 Cal. 4th 864 (2003) ..............................................................................................27

*Filak v. George*
  267 Va. 612, 594 S.E.2d 610 (2004) ..........................................................................17

*R&D 2001, LLC v. Collins*
  No. CL-2005-7021, 2006 Va. Cir. LEXIS 131 (July 12, 2006) .............................29

## Federal Statutes

17 U.S.C. § 107 ...............................................................................................................12, 13

18 U.S.C. § 1962(c) .........................................................................................................9

## State Statutes

Va. Code § 18.2-499 .......................................................................................................29

Va. Code § 59.1-336 ..............................................................................20, 22, 23, 25, 26

Va. Code § 59.1-341 ....................................................................................................19, 20

Va. Code § 59.1-501.5 ..................................................................................................2, 21, 27

Va. Code § 59.1-508.7 ..................................................................................................18, 19

## Constitutional Provisions

U.S. Const., Art. I, § 8, cl. 8...........................................................................................13

## I.    INTRODUCTION

Plaintiff i2 Inc. is refreshingly candid about the anticompetitive nature of its claims in this action.  As i2 makes clear, the gravamen of its complaint is that defendants[1] sought to develop "products and features that would enable [defendant Palantir] to more effectively compete against i2" by allowing customers—intelligence and law enforcement agencies across the country—to choose between i2's and Palantir's "products and services directed at national security," and to import ***the customers' own data*** into the Palantir platform if they wish to do so. Compl. ¶¶ 1, 9, 58.  But the law does not permit plaintiffs to pursue claims that are anticompetitive at their core, as i2 freely admits is the case here.  *See id.*  And, here, it is not simply competition that is at issue—though that would be reason enough to dismiss i2's claims. What's at stake here is the ability of critical national security, defense and intelligence agencies to access their own data and use it interoperably in whichever platform they choose in order to most effectively protect the citizenry.

i2's claims, which are admittedly anticompetitive and contrary to national security, fail for several reasons:

- i2's Racketeer Influenced and Corrupt Organizations ("RICO") claim fails because i2 has alleged at most a "garden variety" fraud, which, under established Fourth Circuit law, cannot support a claim for treble damages under the RICO Act.

- i2's copyright claims fail because it has alleged no facts whatsoever to support them, relying instead on vacuous legal conclusions in violation of Rule 8 and the Supreme Court's seminal decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  The copyright claims also fail under

---

[1] This motion to dismiss is brought on behalf of defendants Palantir Technologies, Inc. ("Palantir"), Shyam Sankar, and Dr. Asher Sinensky.  Unless otherwise indicated, "defendants" refers to these movants.

the doctrines of "fair use," which privileges defendants' admittedly pro-competitive conduct, and "copyright misuse," which bars i2's admittedly anticompetitive claims.

- Because all of i2's federal claims fail, its pendent state-law claims should be dismissed as a matter of course under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

- In any event, i2's fraud, contract, RICO, and conspiracy claims fail because i2's only suggestion of damages is that it lost profits as a result of Palantir's competition, but i2 ***expressly disclaimed any such damages in its license agreements, both in contract and in tort***.

- i2's fraud and business conspiracy claims are also preempted by the Virginia Uniform Trade Secrets Act ("VUTSA"), which supersedes all non-contractual civil claims based, as i2's claims are, on alleged misappropriation of trade secrets.

- i2's contract claim fails as a matter of public policy, as codified in the Uniform Computer Information Transactions Act ("UCITA"), which Virginia has enacted.  *See* Va. Code § 59.1-501.5 (2010).  UCITA invalidates software license terms that "prohibit persons from observing the visible operations or visible characteristics of software and using the observations to develop non-infringing commercial products," which is precisely how i2 construes its licenses here, in violation of Virginia's fundamental public policies encouraging "innovation, competition, … and fair use." UCITA § 105 cmt. 3.

- i2's claim for misappropriation of trade secrets fails because it has no factual foundation, but rests on bare legal conclusions, contrary to *Twombly* and *Iqbal*.

- Finally, i2's business conspiracy claim also does not have the factual grounding *Twombly* and *Iqbal* require, much less the particularized factual foundation Rule 9(b)

2

demands.  The conspiracy claim also fails because, under established Virginia law, a

company cannot conspire with its own agents, which is precisely what i2 alleges here.

For all these reasons, and others set forth in detail below, this Court should dismiss i2's

complaint in its entirety.

## II.    BACKGROUND[2]

i2 alleges that it provides "intelligence and investigation software solutions for defense,

national security, law enforcement and commercial security all over the world."  Compl. ¶ 2.

Palantir "is a competitor of i2 that similarly develops analysis software sold to the intelligence,

defense, and law enforcement communities."  *Id.* ¶ 3.

According to i2, defendant Shyam Sankar, a Palantir employee, along with his father,

defendant Nochur Sankar, formed defendant SRS Enterprises LLC ("SRS") and, beginning in

2006, told i2 that SRS wanted to use i2's software for "commercial Fraud Investigations."  *Id.* ¶

4.  i2 alleges on information belief that SRS "has never had any business or operations of any

kind," and did not conduct "commercial fraud investigations."  *Id.*  i2 alleges that between 2006

and 2009, SRS "fraudulently" obtained licenses to i2 products—its Analyst Notebook software,

versions 6-8; Analyst Notebook Software Development Kit ("SDK"); and iBase SSE Designer

("iBase") software.  *See id.* ¶¶ 5-8, 27-39; Declaration of D. Bradford Hardin, Jr. ("Hardin

Decl.") (filed herewith) Exs. A-E.[3]

---

[2] For purposes of this motion only, defendants accept the well-pleaded factual allegations in the
complaint as if they were true.  *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Neither
defendants nor this Court are "required, however, to accept as true allegations that are merely
conclusory, unwarranted deductions of fact, or unreasonable inferences.  Nor must we accept as
true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Id.*
(citations and quotation marks omitted).

[3] The law is clear that where, as here, a plaintiff fails to attach contracts or other documents that
are referenced or relied upon in the complaint, the defendant may refer to those documents in its
motion to dismiss under Rule 12(b)(6) and "the Court may consider the same without converting
the motion to one for summary judgment."  *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282
(E.D. Va. 1995).

In its complaint, i2 focuses on several provisions of these licenses, which i2 freely admits are anticompetitive in nature—for example, purported restrictions on reverse engineering, on using the software to create similar products, and on giving any known competitor of i2's access to its purportedly proprietary information. *See* Compl. ¶¶ 56-58. But i2 ignores other provisions, which are contained in each of these licenses, and are fatal to i2's claims. For example, immediately after the purported restriction on providing information to competitors, the licenses expressly state that "*[n]othing herein shall limit either party's use or dissemination of information not actually derived from the other party*...." Hardin Decl. Ex. A § 8.2 (emphasis added); *see also id.* Exs. B-E § 9.1. And in each of the licenses, both parties expressly disclaimed indirect, consequential, special, or exemplary damages, including for lost business or profits, related in any way to the licensed products:

> IN NO EVENT WILL EITHER PARTY OR ITS LICENSORS BE LIABLE FOR INDIRECT, CONSEQUENTIAL, SPECIAL, OR EXEMPLARY DAMAGES (**INCLUDING WITHOUT LIMITATION, LOSS OF REVENUE, DATA, BUSINESS, OR ANTICIPATED PROFITS**) **IN ANY WAY RELATED TO** THIS AGREEMENT, **THE PRODUCT**, OR THE APPLICATIONS, **WHETHER IN CONTRACT OR IN TORT**, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Hardin Decl. Ex. A § 11.1 (original capitalization, bold added); *see also id.* Exs. B-E § 7.

i2 alleges on information and belief that Palantir, through employees including defendants Shyam Sankar and Dr. Asher Sinensky, "used the i2 software, and the additional confidential information and trade secrets that they obtained under false pretenses from i2, to assist them in the development of new Palantir software products, utilities and features that were specifically designed to enable Palantir to unfairly, yet more effectively, compete with i2." Compl. ¶ 9. In particular—in one of the few allegations of the complaint with non-conclusory factual content—i2 alleges that Palantir "used" the i2 software "to develop data importing functionality that easily extracts information out of the Analyst's Notebook software and

4

transmits that information into a Palantir database," as well as "an import utility called 'iBaseCrawl' that enables Palantir software users to extract data out of iBase databases." *Id.* i2 admits that Palantir's importing tools only extract **customer data**, not any i2 proprietary, trade-secret, or copyrighted information, and that Palantir's intentions were entirely pro-competitive:

> Because i2 technology is so widely used by the customer base that Palantir is attempting to penetrate, the Analyst's Notebook data importer and iBaseCrawl utility greatly enhance Palantir's ability to sell its software to i2 customers. Both the Analyst's Notebook data importer and iBaseCrawl offer Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services.

*Id.*

Based on these allegations, i2 asserts federal claims under the Copyright and RICO Acts.[4] These federal claims provide the only purported basis for federal subject matter jurisdiction. *See* Compl. ¶¶ 41-42, 72-116. i2 also asserts pendent state-law claims for fraud,[5] breach of contract,[6] misappropriation of trade secrets,[7] and business conspiracy.[8]

### III.    ARGUMENT

In *Twombly* and *Iqbal*, the Supreme Court established a two-step process for evaluating whether a complaint satisfies Rule 8 or instead should be dismissed under Rule 12(b)(6). *First,* the district court should identify and eliminate allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. *Second,* the district court should evaluate the remaining, non-conclusory allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. This requires "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely

---

[4] The direct copyright infringement claim is Claim IV, which i2 asserts against all defendants. The contributory claim is Claim V, which i2 asserts against SRS, Shyam Sankar, and Nochur Sankar. The RICO claim is Claim VI against all defendants.

[5] Claim I against Palantir, Shyam Sankar, SRS, and Nochur Sankar.

[6] Claim II against SRS, Shyam Sankar, and Nochur Sankar.

[7] Claim III against all defendants.

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (citation and internal quotation marks omitted). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Rule 9(b)'s even stricter requirements apply to i2's fraud, RICO, and business conspiracy claims. *See, e.g., Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). i2 "must plead the time, place, and content of the false representations, the person making them, and what the person gained from them." *Williams v. Equity Holding Corp.*, 245 F.R.D. 240, 244 (E.D. Va. 2007) (quotation marks omitted). Likewise, business conspiracy must "be pleaded with particularity, and with more than mere conclusory language. The heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citation and quotation marks omitted).

Moreover, i2's RICO claim is especially subject to scrutiny, even apart from Rule 9(b). RICO's extraordinary remedies, including treble damages, its quasi-criminal nature, and the resulting stigma make it "the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). Courts accordingly must take care "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted." *Menasco*, 886 F.2d at 683.

## A.     i2's federal claims fail, and with them, i2's purported basis for invoking this Court's jurisdiction.

As shown below, i2's federal claims fail. But those claims are i2's only purported basis

---

[8] Claim VII against Palantir, Shyam Sankar, Nochur Sankar, and Dr. Asher Sinensky.

for federal subject matter jurisdiction.  *See* Compl. ¶¶ 41-42.  This Court, therefore, should dismiss this entire case.  *See Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *accord Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996) (instructing district court to dismiss state-law claims along with federal claims).

    **1.**    **The Court should dismiss i2's RICO claim.**

i2's RICO claim fails for the same reasons this Court set forth in dismissing a virtually identical claim in *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 613-15 (E.D. Va. 2005). There, as here, the plaintiff alleged that the defendants fraudulently obtained a software license—which contained similar "provisions prohibiting a licensee from disassembling or reverse engineering the … software or allowing others to use the software"—by misrepresenting their intent to use it for one company when, in fact, they would distribute it to another for competitive analysis. *Id.* at 600.  Plaintiffs claimed that defendants committed RICO predicate acts of mail and wire fraud, and criminal copyright infringement, in order "to fraudulently obtain trade secret, proprietary information from the plaintiff." *Id.* at 604.  But these allegations failed to state a RICO claim because they did "not properly allege a 'pattern of racketeering activity.'" *Id.* at 613 (quoting 18 U.S.C.A. § 1962(c)).

To plead a RICO claim, a plaintiff must allege facts showing that the predicate acts of racketeering activity "'are related and that they constitute or pose a threat of continued criminal activity.'" *Id.* at 614 (quoting *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)).  In the Fourth Circuit, "civil RICO liability is reserved for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being."  *Id.* at 614 (quotation marks and ellipses omitted; quoting *Al-Abood*, 217 F.3d at 238, and *Menasco*, 886 F.2d at 684); *accord GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001)

7

(affirming dismissal).  The Fourth Circuit accordingly "hesitates to find civil RICO liability for a 'pattern of racketeering activity' predicated on acts of mail and wire fraud because of the sheer scope of fraud cases involving use of the mail and wires."  *SecureInfo*, 387 F. Supp. 2d at 614; *see also Al-Abood*, 217 F.3d at 238 ("[W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice.") (internal quotation marks and brackets omitted).  The pattern requirement thus "helps to screen out the garden-variety fraud claims."  *SecureInfo*, 387 F. Supp. 2d at 614; *see also Al-Abood*, 217 F.3d at 238 ("This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity."); *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (vacating default judgment on RICO claim because the pattern alleged was "not enough to distinguish Anderson's claim from an ordinary fraud claim better prosecuted under state law").

The *SecureInfo* court held that the plaintiff's allegations that the defendants obtained software by false pretenses "do not meet the requirements for a pattern of racketeering activity. Instead, Plaintiff's claim is one for garden-variety fraud[.]"  387 F. Supp. 2d at 615 (citations and quotation marks omitted).  There, as here, the plaintiffs alleged only "one victim," and "a narrow and specific purpose, that is, to turn over proprietary information and to use it to compete with" the plaintiff.  *Id.*  While the time period at issue in *SecureInfo* was shorter, that is not dispositive, as evidenced by *Al-Abood*, where, although the predicate acts "were related and involved three discrete schemes spanning several years, there was only one victim of the fraud," and "the narrow focus of the scheme … combined with the commonplace predicate acts" persuaded the Fourth Circuit "that this case does not involve a scope of unlawful activity that exceeds that found in customary fraud cases."  217 F.3d at 238-39; *see also Menasco*, 886 F.2d at 684

8

(affirming dismissal where defendants' "actions were narrowly directed towards a single fraudulent goal," and "involved but one perpetrator" and "one set of victims").

Likewise here, the alleged "pattern of racketeering activity" consists of a single alleged victim—i2—and precisely the same "narrow and specific purpose" as in *SecureInfo*—"to turn over proprietary information and to use it to compete." 387 F. Supp. 2d at 615; *see* Compl. ¶ 99 ("[T]he enterprise worked and continues to work towards a common purpose of defrauding defendant Palantir's competitor, i2, of its proprietary software and confidential information in order for Palantir to develop and sell its own competing software."). Accordingly, i2 has not alleged a pattern of racketeering activity, and the Court should dismiss i2's RICO claim. *See id.*; *Menasco*, 886 F.2d at 684; *Al-Abood*, 217 F.3d at 238-39; 18 U.S.C.A. § 1962(c).

    **2.**    **The Court should dismiss i2's claim for copyright infringement.**

        **a.**    **i2 has not alleged any facts whatsoever to support its claim for copyright infringement.**

To state a claim for copyright infringement, i2 must allege facts—not mere conclusions—showing "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950-51. The "ownership" element breaks down, in turn, into three "applicable sub-elements: (1) originality, (2) copyrightability, and (3) compliance with statutory formalities [including] … 'registration of the copyright claim.'" *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 551 (E.D.N.C. 2008) (quoting 17 U.S.C. § 411(a) (no action for infringement can proceed absent registration)); *accord* 4 NIMMER ON COPYRIGHT § 13.01[A] (2010). And the "copying" element "consists of both a factual element (whether the defendant did in fact copy) and a legal element (whether the things copied are in themselves sufficiently original to merit copyright protection)." *Custom Dynamics*, 535 F. Supp. 2d at 551; *see also Feist*, 499 U.S. at 361.

As an initial matter, it is important to note that i2 does not and cannot, as a matter of law, claim any copyright in the only information it alleges Palantir actually used—the customer information extracted and transferred to the Palantir platform.  *See* Compl. ¶¶ 9, 72-88; *See Feist*, 499 U.S. at 361 ("Certainly, the raw data does not satisfy the originality requirement. [Plaintiff] may have been the first to discover and report the names, towns, and telephone numbers of its subscribers, but this data does not owe its origin to [plaintiff].") (quotation marks omitted).

Lacking any factual or legal basis for accusing defendants of copyright infringement, i2 falls back on utterly conclusory allegations that "amount to nothing more than a 'formulaic recitation of the elements,'" and are therefore "not entitled to be assumed true" *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555); *see* Compl. ¶¶ 72-88.  i2's **only** attempt to satisfy the "copying" element is its utterly conclusory assertion that "Defendants have in the past and continue to (i) misappropriate the Copyrighted Works; (ii) reproduce the Copyrighted Works; (iii) prepare derivative works based upon the Copyrighted Works; and (iv) sell, license or otherwise distribute copies of the Copyrighted Works, thus infringing i2's exclusive rights in the Copyrighted Works in violation of 17 U.S.C. §§ 106 and 501 et seq."  Compl. ¶ 80.  This is nothing more than a bare "assertion that [defendants] 'infringed the copyrights'"—precisely "the sort of fact-free pleading that provides no notice of the factual underpinnings of the lawsuit, and which *Twombly* sought to curb when [it] retired the 'no set of facts' language in *Conley v. Gibson*."  *Laine v. Pride*, 09 CV 3057 (HB), 2010 WL 199927, at *7 (S.D.N.Y. Jan. 19, 2010); *see also Twombly*, 550 U.S. at 563 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).  Even before *Twombly* and *Iqbal*, courts held that a copyright claim must set forth the "particular infringing acts with some specificity.  Broad, sweeping allegations of infringement do not comply with Rule 8."  *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (quotation marks and ellipses omitted).  Thus, i2's copyright claim would have failed even

10

before *Twombly* and *Iqbal*, and certainly fails now.

Indeed, the only reference in the complaint to "copying" with any factual content whatsoever is i2's assertion that "a video published by Palantir from their April 2010 User Conference demonstrating the Palantir application" allegedly shows "icons" for depicting "items such as people, places, assault weapons, airplanes, and organizations," which purportedly are "virtually identical to the user interface icons in i2's Analyst Notebook application." Compl. ¶ 10. But that allegation is irrelevant because i2 alleges neither ownership of a valid copyright in any such icons, nor actionable copying of them. *See id.* ¶¶ 10, 72-88. On the contrary, the only works to which i2's copyright claim applies—by virtue of i2's express allegations to that effect as well as its failure to allege or attach copyright registrations for any other purported works— are the "Analyst Notebook version 7.0, iBase version 5.0, and the Analyst's Notebook version 8.0." Compl. ¶ 73. i2 alleges no facts whatsoever to support its conclusory assertion that any of the defendants "reproduce[d]" i2's allegedly copyrighted works, prepared "derivative works" based on them, or "distribute[d]" them. *Id.* ¶ 80.[9]

If i2 means to imply that Palantir's "iBaseCrawl" functionality, which "enables Palantir software users to extract [customer] data out of iBase databases," is a "derivative work," that is incorrect as a matter of law. *See* Compl. ¶ 9. Judge Posner rejected an equivalent claim out of hand in *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640 (7th Cir. 2003), holding that a process for extracting uncopyrighted material from plaintiff's copyrighted software is not a "derivative work," as a matter of law. *Id.* at 644. i2 does not and cannot allege that iBaseCrawl was "copied" from any copyrightable portion of iBase or any of i2's other allegedly copyrighted works. *See id.*; *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.

---

[9] i2 also asserts that defendants "misappropriate[d]" the allegedly Copyrighted Works, Compl. ¶ 80, but whatever that is supposed to mean, it is not a violation of any of the five rights enumerated in 17 U.S.C. § 106, and thus is not actionable as copyright infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

11

1984) ("a work is not derivative unless it has been substantially copied from the prior work"); 2 NIMMER ON COPYRIGHT § 8.09[A] (2010) (same); Compl. ¶¶ 9, 72-88. And, again, i2 clearly cannot claim, and does not allege, any rights—derivative or otherwise—in the customer data that iBaseCrawl was designed to extract. *See Feist*, 499 U.S. at 361.

Likewise, i2 does not and cannot allege that any of the defendants "distributed" any of i2's allegedly copyrighted works—by allegedly making them available internally to Palantir employees, or otherwise. *See* Compl. ¶ 58. "In order to establish 'distribution' of a copyrighted work, a party must show that an unlawful copy was disseminated '*to the public*.'" *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (emphasis added; quoting 17 U.S.C. § 106(3)). i2 does not even allege public distribution of any of its works as a conclusion, much less with the factual foundation *Twombly* and *Iqbal* require.

### b. Even if i2 had alleged the elements of copyright infringement, which it hasn't, its claim would fail under the "fair use" doctrine.

i2 will undoubtedly attempt to make much of the fact that Palantir "used" its software in some fashion. Even as alleged by i2, however, Palantir's use was clearly "fair" and permissible as a matter of law. It is well established that analysis of computer programs for the purpose of, as i2 puts it, "developing products and features that would enable [defendants] to more effectively compete," Compl. ¶ 58, is "fair use." *See, e.g.*, *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527-28 (9th Cir. 1992). "From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts....'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). Section 107 of the Copyright Act codifies the four "fair use" factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.…

17 U.S.C. § 107 (2010).  Each of these factors weighs in defendants' favor here.

*First*, the purpose and character of defendants' alleged use was admittedly pro-competitive, and thus served the ultimate purpose of the Copyright Act—promoting "the Progress of Science and useful Arts."  U.S. Const., Art. I, § 8, cl. 8.  As the Fourth Circuit has explained, "the fact that the disputed use of copyrighted material is commercial is not determinative" of the first factor, and becomes even less significant "'the more transformative the new work'" is.  *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009) (quoting *Campbell*, 510 U.S. at 579).  Palantir's alleged use of i2's software to develop a method for extracting customer data, where neither the data itself nor Palantir's programs are even alleged to contain any of i2's copyrighted material, is highly transformative.  *See id.*; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (a "new" commercial work was "highly transformative" even though, unlike here, it directly incorporated plaintiff's work).  The only purpose of defendants' alleged use was to allow customers to "import[] into Palantir's products the data that they have developed over time using i2 products and services," Compl. ¶ 9, just as Palantir's software is able to extract customer data from other file formats (Adobe Acrobat .pdf files, Microsoft Word .doc files, and scores of others).

While i2 alleges that defendants originally obtained the allegedly copyrighted works by false pretenses, even assuming the truth of that allegation, and that it somehow "weighs in plaintiffs' favor," the first factor still favors defendants in light of the transformative nature of" Palantir's alleged use.  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004).

Indeed, the first "fair use" factor—and the doctrine in general—favors even admitted copying of copyrighted software for purposes of "reverse engineering."  *See Sega*, 977 F.2d at

13

1523 ("We conclude that given the purpose and character of Accolade's use of Sega's video game programs, the presumption of unfairness has been overcome and the first statutory factor weighs in favor of Accolade."); *id.* at 1527-28 (concluding that reverse engineering "to gain access to the ideas and functional elements embodied in a copyrighted computer program" to facilitate legitimate competition "is a fair use of the copyrighted work, as a matter of law"). Here, i2 does not and cannot allege that defendants copied i2's works or engaged in "reverse engineering," as that term is normally understood to denote "disassembly" or "decompilation" of "machine-readable object code" into "human-readable source code." *Id.* at 1514. But given defendants' admittedly pro-competitive purpose, their more minimal use was "fair" *a fortiori.* *See id.*; Compl. ¶ 58 (Palantir sought "to more effectively compete against i2").

**Second**, the "nature of the copyrighted works"—computer programs—also weighs in defendants' favor. *See Sega*, 977 F.2d at 1526. As the *Sega* court recognized, computer programs "contain unprotected aspects that cannot be examined without copying." *Id.* They are, accordingly, afforded "a lower degree of protection than more traditional literary works." *Id.*

**Third**, given that i2 has not alleged any facts showing that defendants used any of i2's copyrighted works in Palantir's own, the "amount and substantiality of the portion used"— zero—weighs in defendants' favor. And even if it didn't, "where the ultimate (as opposed to direct) use is as limited as it was here, the factor is of very little weight." *Id.* at 1526-27.

**Fourth**, the final "fair use" factor also weighs in defendants' favor. The Fourth Circuit "focus[es] here not upon 'whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but [upon] whether the secondary use *usurps the market of the original work.*'" *Vanderhye*, 562 F.3d at 643 (emphasis in original; quoting *NXIVM*, 364 F.3d at 482). Although customers may choose Palantir's products over i2's, Palantir has not "usurped the market" of i2's works themselves because Palantir's own works are

14

transformative and not merely a "'republication which offers [i2's] copyrighted work in a secondary packaging.'" *Id.* (quoting *Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 207 (4th Cir. 1998)); *see also Sony Computer Enter., Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir. 2000) ("[B]ecause the Virtual Game Station is transformative, and does not merely supplant the PlayStation console, the Virtual Game Station is a legitimate competitor in the market for platforms on which Sony and Sony-licensed games can be played.").

For all of these reasons, i2's copyright claim, as pleaded, fails under the "fair use" doctrine as a matter of law. *See*, *e.g.*, *Sega*, 977 F.2d at 1527-28.

### c.  i2's copyright claim also fails under the "copyright misuse" doctrine.

Whereas the fair use analysis, in this context, focuses on the admittedly pro-competitive nature of Palantir's alleged copying of i2's copyrighted works, the "copyright misuse" doctrine focuses, conversely, on the anticompetitive nature of i2's conduct. "The doctrine of misuse prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *WIREdata*, 350 F.3d at 647 (quotation marks omitted). In *WIREdata*, the plaintiff had developed and copyrighted a computer program for compiling real-estate information, and the defendant extracted "the raw data" from it for its own real-estate database. *Id.* at 643. As Judge Posner held in remanding the case with instructions to dismiss the copyright claim, "[i]t would be appalling" to allow a plaintiff "to use copyright law to block access to data that not only are neither copyrightable nor copyrighted, but were not created or obtained by the copyright owner." *Id.* at 641-42.[10]

---

[10] *WIREdata* was not ultimately decided on the grounds of copyright misuse because the plaintiff's claims were barred by a state open-records law. *See* 350 F.3d at 647. But Judge Posner strongly indicated that to allow the plaintiff's claims to proceed would be contrary to the copyright misuse doctrine: "for a copyright owner to use an infringement suit to obtain property protection, here in data, that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process." *Id.* The court further expressed "profound skepticism" as to the plaintiff's interpretation of its license agreements to limit the

But that is precisely what i2 is attempting here. The only use of its software that i2 alleges with any factual detail whatsoever was admittedly for the sole purpose of offering "Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services." Compl. ¶ 9. i2 cannot be allowed to use the copyright law to block access to such data, to which i2 admittedly has neither copyrights nor any other rights. *See WIREdata*, 350 F.3d at 641, 647.

3.      **The Court should dismiss i2's claim for contributory copyright infringement.**

i2's claim for contributory copyright infringement fails for all the reasons its direct infringement claim fails, and more. "[A]bsent direct infringement, there can be no contributory infringement." *DSC Communications Corp. v. Pulse Communications, Inc.*, 170 F.3d 1354, 1359 (Fed. Cir. 1999). As shown above, i2 has not alleged any facts to support a claim for direct infringement, and any such claim is barred by the doctrines of fair use and copyright misuse in any event.

Further, i2 has not alleged anything but bare conclusions in support of the additional elements of its contributory infringement claim—that defendants SRS, Shyam Sankar, and Nochur Sankar "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another." *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quotation marks omitted). i2 provides a formulaic recitation of these elements, but nothing more. *See* Compl. ¶ 90. Its contributory infringement claim fails for this independent reason. *See Iqbal*, 129 S. Ct. at 1951.

For all these reasons, the Court should dismiss i2's RICO and copyright claims. And, because these federal claims are fatally defective, this Court should also dismiss the pendent state-law claims. *See Gibbs*, 383 U.S. at 726; *Taylor*, 81 F.3d at 437.

---

disclosure or use of the non-copyrighted data. *Id.*

**B.      Even if this Court were to exercise pendent jurisdiction, i2's state-law claims fail.**

Even if this Court were to exercise pendent jurisdiction over i2's state-law claims for fraud, breach of contract, trade-secret misappropriation, and business conspiracy, those claims fail on their own terms.  One way or another, the Court should dismiss the entire complaint.

**1.      The Court should dismiss i2's fraud, contract, RICO, and business conspiracy claims because i2 has not alleged damages, other than conclusory allusions to lost profits, which i2 has expressly disclaimed.**

Damages are an essential element of i2's claims for fraud,[11] breach of contract,[12] RICO violations,[13] and business conspiracy.[14]  But i2 alleges nothing beyond a "formulaic recitation" of the damages element of these claims.  *Twombly*, 550 U.S. at 555; *see* Compl. ¶¶ 53, 59, 115, 119.  i2's sole allegation of fraud damages is that "[a]s a result of this fraud, i2 has been damaged in an amount subject to proof at trial, but in excess of the jurisdictional limits of this Court."  Compl. ¶ 53.  Its allegations in support of the contract, RICO, and business conspiracy claims are just as vacuous.  *See id.* ¶¶ 59, 115, 119.  These "allegations are conclusory and not entitled to be assumed true."  *Iqbal*, 129 S. Ct. at 1951; *see also SecureInfo*, 387 F. Supp. 2d at 603, 616 (dismissing fraud claim nearly identical to i2's for failure to allege damages).

The only purported factual basis for damages i2 even hints at in its complaint is that Palantir allegedly used the i2 software and other information to "offer Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services," Compl. ¶ 9, enabling Palantir "to more effectively compete against i2."  *Id.* ¶ 58.  Even assuming that these conclusory allegations were adequate under *Twombly* and *Iqbal*, and that "effective competition" were actionable—neither of which is the case—***the result of such competition can only be lost profits to i2, which are consequential***

---

[11] *See*, *e.g.*, *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999).

[12] *See*, *e.g.*, *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

[13] *See*, *e.g.*, *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

*damages that i2 expressly and repeatedly disclaimed, both for contract and tort claims*:

> IN NO EVENT WILL EITHER PARTY OR ITS LICENSORS BE LIABLE FOR INDIRECT, CONSEQUENTIAL, SPECIAL, OR EXEMPLARY DAMAGES (**INCLUDING WITHOUT LIMITATION, LOSS OF REVENUE, DATA, BUSINESS, OR ANTICIPATED PROFITS**) **IN ANY WAY RELATED TO** THIS AGREEMENT, **THE PRODUCT**, OR THE APPLICATIONS, **WHETHER IN CONTRACT OR IN TORT**, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Hardin Decl. Ex. A § 11.1 (original capitalization, bold added); *see also id.* Exs. B-E § 7.

In addition to i2's express disclaimer of lost "revenue, data, business, or anticipated profits," under Virginia law, i2's broad disclaimer of "consequential damages" also covers restitution for any alleged benefit to defendants. Virginia's UCITA specifically categorizes as "consequential damages" a "benefit obtained as a result of" a defendant's alleged "disclosure or misuse of information that is a trade secret or in which the aggrieved party has a right of confidentiality." Va. Code § 59.1-508.7 (2010); *see also In re Buffalo Coal Co.*, 424 B.R. 738, 745 (Bankr. N.D.W. Va. 2010) (applying Virginia law and holding that lost profits are "consequential damages" where defendant's alleged breach "causes the plaintiff to lose profit on third party, unrelated contracts," rather than money the defendant itself agreed to pay).

Furthermore, while defendants Palantir and Dr. Sinensky are not parties to the license agreements, any damages allegedly attributable to these defendants are identical to and derivative of those attributed to SRS and the Sankar defendants, whom i2 has named as parties to the license agreements (the Sankars as purported alter egos). *See Reibold v. Simon Aerials, Inc.*, 859 F. Supp. 193, 199 (E.D. Va. 1994) (disclaimer of consequential damages not limited in effect to contracting parties). Certainly i2 has not alleged any independent basis for holding Palantir or Dr. Sinensky liable for fraud, RICO, or business conspiracy—much less with the particularity Rule 9(b) requires. *See Menasco*, 886 F.2d at 684; *Gov't Employees Ins. Co.*, 330 F. Supp. 2d at 706. On the contrary, i2's claims against Palantir depend on its allegations that

---

[14] *See*, *e.g.*, *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007).

"Shyam Sankar has been an employee and agent of, and acting on behalf of, Palantir," as well as the purported alter ego of SRS. Compl. ¶¶ 16, 20. And Dr. Sinensky isn't alleged to have done anything other than sign up for a "Webinar" under "the name 'SAS Enterprises.'" *Id.* ¶ 40. Thus, because i2's damages allegations fail with respect to SRS and the Sankars, they necessarily also fail as to Palantir and Dr. Sinensky.

Thus, the Court should dismiss i2's fraud, contract, RICO, and business conspiracy claims for failure to allege the necessary element of cognizable damages.[15]

### 2.    The Court should dismiss i2's fraud and business conspiracy claims as preempted by the VUTSA.

The Court also should dismiss i2's fraud and business conspiracy claims because they are preempted by the VUTSA, which "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." Va. Code § 59.1-341 (2010). As the Federal Circuit explained in rejecting a Virginia business conspiracy claim as preempted, "the VUTSA … preempt[s] *all* claims for relief, including both common law *and* statutory causes of action, if they provide a civil remedy for misappropriation of trade secrets *unless* they are contractual or criminal in nature." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1363 (Fed. Cir. 2005) (emphases in original; citing Va. Code § 59.1-341); *see also*, *e.g.*, *C&F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1307 (Fed. Cir. 2000) (fraud claim preempted under identical provisions of Kansas Uniform Trade Secrets Act); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (same provisions in Illinois Trade Secrets Act "abolished all common law theories of misuse of such

---

[15] i2's trade secret and copyright claims also fail to the extent i2 seeks restitution and/or "indirect, consequential, special, or exemplary damages (including without limitation, loss of revenue, data, business, or anticipated profits)" on those claims. Hardin Decl. Ex. A ¶ 11.1; *see also* Va. Code § 59.1-508.7 (2010) (defining restitution for "disclosure or misuse of information that is a trade secret or in which the aggrieved party has a right of confidentiality" as "consequential damages"). But because these claims fail in their entirety for other reasons, they are addressed separately.

information.  Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong.") (citation omitted); *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71 (D. Nev. 1992) (other tort claims are "displaced by the Uniform Trade Secrets Act and will be dismissed").

Here, i2 alleges that the object of the purported fraud and conspiracy was "to misappropriate the software, trade secrets and other confidential and proprietary information of i2 that is embodied in its software and other documentation."  Compl. ¶ 47; *see also id.* ¶¶ 117-21.  The allegedly misappropriated information on which the fraud and conspiracy claims are purportedly based is the very same information that i2 alleges to constitute trade secrets under the VUTSA: "The software, documentation and other confidential and proprietary information that was delivered to the Defendants by i2 as a result of the Defendants' fraud and deception constituted trade secrets which have independent economic value as a result of not being generally known to the public or to other persons who can obtain economic value from their disclosure or use."  *Id.* ¶ 63.  Because i2's fraud and conspiracy claims are "predicated on a misappropriation of trade secrets," they are preempted by the VUTSA.  *Microstrategy*, 429 F.3d at 1363; Va. Code § 59.1-341 (2010).

Moreover, to the extent that i2 may argue that its fraud and business conspiracy claims are not predicated on an alleged misappropriation of trade secrets, that only underscores i2's failure to allege any factual basis for these claims, much less the particular facts Rule 9(b) requires.  *See Williams*, 245 F.R.D. at 244; *Gov't Employees Ins. Co.*, 330 F. Supp. 2d at 706.  And i2's failure to allege any facts to show the necessary element of damages becomes even more glaring if i2 seeks to allege fraud or conspiracy to misappropriate information that does ***not*** qualify as a trade secret—*i.e.*, that is not secret and/or does not derive economic value from being kept secret.  *See* Va. Code § 59.1-336 (2010).

Accordingly, the Court should dismiss i2's fraud and business conspiracy claims as

preempted by the VUTSA.

      **3.    The Court should dismiss i2's contract claim under UCITA, as a matter of public policy, and based on the express provision that the licenses do not limit the "use or dissemination of information not actually derived from" i2.**

Virginia's UCITA expressly provides that the Court may refuse to enforce software license agreements whose terms are contrary to public policy. Va. Code § 59.1-501.5 (2010). As the notes to this uniform act state, "***terms in a mass-market license that prohibit persons from observing the visible operations or visible characteristics of software and using the observations to develop non-infringing commercial products … would ordinarily be invalid in the absence of a showing of significant commercial need***." UCITA § 105 cmt. 3 (emphasis added) (attached as Hardin Decl. Ex. F). Such restrictions are invalid because they are contrary to fundamental public policies favoring "innovation, competition, … and fair use." *Id.*

Here, the contract terms i2 seeks to enforce are precisely the kind UCITA prohibits. The gravamen of i2's contract claim—indeed, its entire complaint—is that defendants SRS, Shyam Sankar, and Nochur Sankar allegedly disclosed the licensed software and other information to Palantir "for purposes of developing products and features that would enable it to more effectively compete against i2." Compl. ¶ 58. In particular, i2 alleges that Palantir used the licensed information "to develop data importing functionality," which offers "Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services." *Id.* ¶ 9. In other words, i2 admits that it seeks to prohibit defendants' observations of the visible operations and characteristics of i2's software "to develop non-infringing commercial products." UCITA § 105 cmt. 3 (Hardin Decl. Ex. F). Those contract terms are invalid and unenforceable as contrary to fundamental public policy. *See id.*; Va. Code § 59.1-501.5 (2010).

Furthermore, while i2 argues that SRS and the Sankars breached the license agreements' restrictions on giving "any known competitor" of i2's the licensed information, i2 ignores the

provision in each of the licenses that "*[n]othing herein shall limit either party's use or dissemination of information not actually derived from the other party*…."  Hardin Decl. Ex. A § 8.2 (emphasis added); *see also id.* Exs. B-E § 9.1.  Contrary to that provision, i2 seeks to use the licenses to "limit" defendants' "use or dissemination" of information that i2 admits was not "actually derived from" i2—namely the information that "*Palantir's customers* … have developed over time using i2 products and services."  *Id.*; Compl. ¶ 9 (emphasis added); *see also WIREdata*, 350 F.3d at 647 (expressing "profound skepticism" about plaintiff's interpretation of its contracts to limit the use or disclosure of non-copyrighted information).  Because the contracts expressly permit precisely the "use or dissemination" on which i2's contract claim is purportedly based, the claim fails as a matter of law.  *See, e.g.*, *Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 34, 466 S.E.2d 382, 385-86 (1996).

### 4.    The Court should dismiss i2's claim for trade secret misappropriation.

In order to state a claim for misappropriation of trade secrets, i2 must allege facts sufficient to establish: (1) that the information at issue is a trade secret; and (2) that defendants misappropriated that information.  *See* Va. Code § 59.1-336 (2010).  Because i2 fails to allege facts to support these elements, the Court should dismiss i2's trade-secret claim.

#### a.    i2 has not alleged facts showing that the information at issue satisfies the statutory definition of a trade secret.

i2 cannot state a claim for trade secret misappropriation because the information at issue does not meet the statutory definition of "trade secret."  Under the VUTSA, a "trade secret" is defined as information that:

1.  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336 (2010).

The "alleged trade secret must be described 'in sufficient detail to establish each element of a trade secret.'"  *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D. Va. 2004) (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993)).  "It is not enough to claim generally that trade secrets were stolen.  A plaintiff must identify, with particularity, each trade secret it claims was misappropriated.  This must be done to allow the finder of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information."  *Id.* (citations omitted).

Here, i2 pleads that its "software, documentation and other confidential and proprietary information" qualify as "trade secrets" because they "have independent economic value as a result of not being generally known to the public or to the other persons who can obtain economic value from their disclosure or use."  Compl. ¶ 63.  i2's conclusory allegations fall far short of its pleading burden.  By merely reciting the statutory language without setting forth any supporting facts, i2 does precisely what *Twombly* and *Iqbal* prohibit.  Indeed, when stripped of its legal conclusions, as *Iqbal* requires, the complaint fails to allege even a single fact to support the conclusion that the information derives "independent economic value" from being secret and not "readily ascertainable."  *See* Va. Code § 59.1-336 (2010); *Iqbal*, 129 S. Ct. at 1950-51; *MicroStrategy*, 331 F. Supp. 2d at 418.

The facts i2 does allege confirm that its claim must fail.  i2 alleges that Palantir used i2's software to "develop data importing functionality" that provides "Palantir's customers an easy solution for importing into Palantir's products the data that they have developed over time using i2 products and services."  Compl. ¶ 9.  In other words, i2 alleges that Palantir determined how ***customers' information*** is saved in the files used by i2's software and developed a way to open a file containing that information using Palantir's platform.  *See id.*  Such data importation is

23

commonplace, and certainly is not actionable as trade secret misappropriation (or anything else). To use an everyday example, if one wishes to use Microsoft Word to open a document someone else has created using Corel WordPerfect, Word automatically converts the information in the file so that it can be read and edited using Word. Just as Corel couldn't claim to own the information one of its customers put into a WordPerfect file—a brief or some other document the customer authored—i2 does not and cannot claim that it owns the underlying information residing in the files that are created by i2's program. That information belongs solely to the customers who have created the files, and who are free to move that information among platforms at their discretion. i2 certainly has no right to prohibit customers from using their information with whatever solution they wish merely because they once chose to store it in an i2 file format. To allow i2 to assert such a right would be disastrous to critical national security, defense and intelligence agencies, which depend on interoperability and unfettered access to information that admittedly belongs to them, not i2. *See id.*

Moreover, i2 has not alleged and cannot allege that defendants misappropriated any information relating to how i2's software *actually* operates—*i.e.*, how the software, as i2 describes it, "delivers the richest assisted analysis and visualization capabilities in the world to support analysts in quickly turning large sets of disparate information into high-quality and actionable intelligence to prevent crime and terrorism." *Id.* ¶ 5. While that functionality may have independent value, defendants are not alleged to have misappropriated it. By i2's own admissions, defendants have simply figured out how to access customer information that is saved by i2's program. *Id.* ¶ 9. i2 has not alleged that the way in which its software saves this third-party information has independent economic value. As a matter of law, it cannot. *See State Analysis, Inc. v. Am. Fin. Servs. Ass'n*, 621 F. Supp. 2d 309, 320-21 (E.D. Va. 2009) (dismissing trade secret claim for failure to allege independent economic value).

24

In *State Analysis*, the plaintiff sought trade secret protection for passwords that defendants had allegedly misappropriated to gain access to its database. *See id.* at 320-21. This Court held that "[a]lthough the passwords at issue clearly have economic value given that they are integral to accessing [the plaintiff's] database, they have no *independent* economic value in the way a formula or a customer list might have." *Id.* at 321 (emphasis in original). A "'barrier'" to the access of information is not itself "'information that might properly be considered a trade secret.'" *Id.* (quoting *MicroStrategy*, 331 F. Supp. 2d at 429 n. 4). The Court accordingly dismissed the trade secret claim "in its entirety." *Id.*

Like a password, the manner in which i2 saves its customers' information is irrelevant to the program's functionality. While both have some value within the greater context of the program—passwords are "integral to accessing [the plaintiff's] database," *id.*, and i2's means for storing customer information keeps that information at hand so that its program can access it efficiently—neither derives *independent* economic value stemming from being kept secret. *See id.* The only "value" i2's file structure could have derives from i2's efforts to obstruct interoperability and thereby inhibit competition through its use of licensing agreements, which is not "value" that trade secret law recognizes or protects. *See id.*

Furthermore, the manner in which i2 saves customer information lacks independent economic value because it is "readily ascertainable by proper means." Va. Code § 59.1-336 (2010). If a competitor—or "other persons who can obtain economic value from" the information (*id.*)—could easily and legitimately discover it, "the inference is that the information was either essentially 'public' or is of de minimis economic value." *Microstrategy*, 331 F. Supp. 2d at 416-17. There is no dispute that i2's software and related documentation were advertised and licensed publicly. In fact, i2 alleges that it has licensed its software to over 4500 organizations in nearly 150 countries. Compl. ¶ 2. Any of these companies could have done just

as Palantir has done here, and determined through ordinary use of the programs the manner in which they save information to files.  i2 does not and cannot allege that defendants did anything other than simply "use" its programs in developing their own functionality in the same way that any customer who had purchased a copy of the program could have done.  *See, e.g.. id.* ¶ 9 (alleging that defendants "*used* the i2 software, and the additional confidential information and trade secrets they obtained under false pretenses from i2, to assist them in the development of new Palantir software products.…") (emphasis added).  Nor can i2 deny that customers are "persons who can obtain economic value from" determining how to extract their own data for use with Palantir's program or for some other purpose.  *See* Va. Code § 59.1-336 (2010).  As the court recognized in *Telxon Corp. v. Symbol Technologies, Inc.*, 961 F. Supp. 1113 (N.D. Ohio 1996), such "[i]nteroperability is desired by customers."  *Id.* at 1118.  Interoperability "is important because it helps ensure the continued availability of products from a variety of sources;" and a "customer that is limited to a single source risks the possibility that the vendor will go out of business or simply stop manufacturing the product."  *Id.*

Therefore, even under i2's allegations, a purchaser could discover the manner in which customer information is saved using i2's software pursuant to its legitimate license and ordinary use of the program.  As a result, "the inference is that the information was either essentially 'public' or is of de minimis economic value."  *Microstrategy*, 331 F. Supp. 2d at 416-17.  Indeed, the only reason i2 alleges its legitimate licensees cannot do precisely what defendants did here is that the licensing agreements purportedly prohibit it.  As discussed above, however, i2 cannot rely on those admittedly anticompetitive license terms because they violate public policy and are invalid.  *See* Section III.B.3, *supra*.

Likewise, i2 cannot rely on its licenses' purported "express[] acknowledge[ment]" of receipt of "trade secrets" as proof that its data qualify as trade secrets.  *See* Compl. ¶ 64.  Calling

26

something a "trade secret" does not make it so.  i2 cannot unilaterally exempt itself from the VUTSA's requirements by virtue of its licensing terms.  That would not only frustrate the intent of the Virginia legislature—which has expressly denied trade-secret protection to information that is not secret, not valuable, readily ascertainable, and/or inadequately protected—it would also "in effect, convert the Company's trade secret into a state-conferred monopoly akin to the absolute protection that a federal patent affords. Such an extension of [state] trade secrets law would certainly be preempted by the federal scheme of patent regulation." *Chicago Lock Co. v. Fanberg*, 676 F.2d 400, 405 (9th Cir. 1982).[16]  And, as discussed earlier, Virginia has expressly recognized the threats posed by protectionist and restrictive licensing terms, and has adopted the UCITA to strike down those terms that violate public policy.  *See* Va. Code § 59.1-501.5 (2010); UCITA § 105 cmt. 3 (Hardin Decl. Ex. F); Section III.B.3, *supra*.   i2's efforts to grant itself a monopoly over information that does not meet the statutory definition of a "trade secret" should not be given any weight.  *See id.*

Thus, i2's claim for trade secret misappropriation fails because it has not alleged any facts to support its bare conclusion that the data at issue are trade secrets.

> **b.     i2's allegations are particularly deficient with respect to Dr. Sinensky.**

i2's trade-secret allegations are deficient with respect to all defendants, as shown above, but they are particularly devoid of any factual matter to justify i2's claim against Dr. Sinensky. Dr. Sinensky is never even referenced in the trade secret claim itself.  *See* Compl. ¶¶ 61-71. Looking at the complaint more broadly, the only allegation that even arguably contains factual

---

[16] *See also*, *e.g.*, *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 901 n.5 (2003) (Moreno, J., concurring) ("[N]owhere has it been recognized that a party wishing to protect proprietary information may employ a consumer form contract to, in effect, change the statutory definition of 'improper means' under trade secret law to include reverse engineering, so that an alleged trade secret holder may bring an action even against a nonparty to that contract. Moreover, if trade secret law did allow alleged trade secret holders to redefine 'improper means' to include reverse engineering, it would likely be preempted by federal patent law, which alone grants universal protection for a limited time against the right to reverse engineer.") (citing

content specific to Dr. Sinensky is i2's allegation that he is employed by Palantir and his email address asherks@gmail.com was provided as contact information when "Palantir signed up for a June 20, 2010 Webinar … under the name 'SAS Enterprises.'"  Compl. ¶ 40; *see also id.* ¶ 8 (same).  On the basis of this single allegation, i2 seeks to hold Dr. Sinensky liable for misappropriation.  i2 again falls far short of its pleading burden under *Twombly* and *Iqbal*, failing to allege anything that raises "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.[17]

### 5.     The Court should dismiss i2's business conspiracy claim.

Finally, the Court should dismiss i2's deficient business conspiracy claim.  Under Virginia law, "allegations of a business conspiracy must be pled with particularity beyond mere conclusory language."  *Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 662 (E.D. Va. 2010).  As in *Scharpenburg*, where a statutory business conspiracy claim was dismissed on the pleadings, i2's complaint is "devoid of factual allegations" suggesting that the defendants joined together as part of a conspiracy to injure i2 in its business or reputation.  *Id.*  As it has done elsewhere in its complaint, i2 impermissibly seeks to substitute bare legal conclusions for the necessary factual content.  *See id.*; *Iqbal*, 129 S. Ct. at 1951.

i2's conspiracy theory also contradicts the established principles that "a conspiracy, by definition, requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy."  *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524 (E.D. Va. 2000); *accord SecureInfo*, 387 F. Supp. 2d at 616.  By attempting to impute

---

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989)).

[17] The same is true for all of i2's other claims against Dr. Sinensky—for copyright infringement (Claim IV), purported RICO violations (Claim VI), and business conspiracy (Claim VII).  Each of these is based on nothing more than bare conclusions and the allegation that Dr. Sinensky signed up for a "Webinar."  Compl. ¶¶ 40, 72-88, 95-121.  That is no basis for any claim against Dr. Sinensky, and the idea that it could be grounds for civil RICO liability, which "is reserved for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being," is particularly absurd.  *See Al-Abood*, 217 F.3d at 238.

liability to Palantir for the alleged acts of Shyam Sankar and Dr. Sinensky, i2's own allegations make clear that it is asserting that these individuals were Palantir's agents and "employees acting within the scope of their employment," who cannot conspire with their employer, as a matter of law. *Lewin*, 95 F. Supp. 2d at 525. Nor can i2's conspiracy claim be saved by the fact that the remaining defendants are not employees of Palantir. Again, i2's own pleadings negate its claim. It alleges that these other defendants also acted as purported agents "on behalf of, and for the benefit of, Palantir." Compl. ¶ 38. Thus, i2's conspiracy claim fails as a matter of law. *See Lewin*, 95 F. Supp. 2d at 524; *SecureInfo*, 387 F. Supp. 2d at 616; *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) (dismissing business conspiracy claim).

Finally, i2's allegations of business conspiracy are fatally flawed for their failure to include factual allegations showing that defendants acted "willfully and maliciously." Va. Code § 18.2-499. As this Court explained in *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610 (E.D. Va. 2009), pleading the required legal malice requires a showing that the purpose of "injur[ing] the plaintiff's reputation, trade, or business … was at least one of the purposes of the conspiracy." *Id.* at 618. It is "not enough" to allege that what the defendants purportedly did was "tortious or unconscionable conduct." *R&D 2001, LLC v. Collins*, No. CL-2005-7021, 2006 Va. Cir. LEXIS 131, at *10 (July 12, 2006). Yet, here, i2 hasn't even alleged facts showing "tortious or unconscionable conduct," *id.*, much less the requisite facts showing a conspiracy designed to injure i2's business. Instead, i2's allegations show that defendants' purpose was to allow customers—i2's as well as Palantir's—a choice of software platforms to analyze information vital to their efforts to fight crime and maintain national security. "[T]here can be no conspiracy to do an act the law allows"—much less one crucial government agencies depend on. *Id.* at *9 (quoting *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402 (1985)). On the contrary, it is i2's attempt to lock customers into its software platform by using

restrictive licensing that is forbidden.  Thus, i2 has failed to state a valid claim for business

conspiracy.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss i2's complaint in its entirety.

Dated:  September 7, 2010                              WILMER CUTLER PICKERING HALE
                                                      AND DORR LLP


                                      By:  */s/ Carl Nichols* _____
                                           Carl Nichols, VSB No. 43065
                                           D. Bradford Hardin, Jr., VSB No. 76812
                                           1875 Pennsylvania Avenue, NW
                                           Washington, DC  20006
                                           Telephone:       (202) 663-6000
                                           Facsimile:       (202) 663 6363
                                           Email: carl.nichols@wilmerhale.com
                                           Email: Bradford.Hardin@wilmerhale.com


                                           Of Counsel:

                                           John W. Keker (*pro hac vice pending*)
                                           Elliot R. Peters (*admitted pro hac vice*)
                                           Jon B. Streeter (*admitted pro hac vice*)
                                           Eugene M. Paige (*admitted pro hac vice*)
                                           KEKER & VAN NEST LLP
                                           710 Sansome Street
                                           San Francisco, CA  94111-1704
                                           Telephone:       (415) 391-5400
                                           Facsimile:       (415) 397-7188
                                           Email:      jkeker@kvn.com
                                           Email:      epeters@kvn.com
                                           Email:      jbs@kvn.com
                                           Email:      emp@kvn.com

                                           **Attorneys for Defendants**
                                           **PALANTIR TECHNOLOGIES, INC.,**
                                           **SHYAM SANKAR, and DR. ASHER**
                                           **SINENSKY**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of September, 2010, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert R. Vieth, Esq.
COOLEY LLP
One Freedom Square | Reston Town Center
11951 Freedom Drive
Reston, VA  20190-5656
*Attorney for Plaintiffs i2 Inc. and i2 Limited*

Anand Vijay Ramana, Esq.
McGuireWoods LLP (McLean)
1750 Tysons Blvd
Suite 1800
McLean, VA 22102-4215
(703) 712-5000
Email: aramana@mcguirewoods.com
*Attorney for Nochur Sankar and SRS Enterprises, LLC*

I FURTHER CERTIFY that on the 7th day of September, 2010, a true and correct copy of the foregoing was served by hand on the following:

Christopher J. Sundermeier
Mark F. Lambert
Neha M. Marathe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130

Dated:  September 7, 2010                    WILMER CUTLER PICKERING HALE
                                            AND DORR LLP


                                    By:  */s/ Carl Nichols*_____
                                        Carl Nichols, VSB No. 43065
                                        D. Bradford Hardin, Jr., VSB No. 76812
                                        1875 Pennsylvania Avenue, NW
                                        Washington, DC  20006
                                        Telephone:       (202) 663-6000
                                        Facsimile:       (202) 663 6363
                                        Email: carl.nichols@wilmerhale.com
                                        Email: Bradford.Hardin@wilmerhale.com

                                        **Attorneys for Defendants
                                        PALANTIR TECHNOLOGIES, INC.,
                                        SHYAM SANKAR, and DR. ASHER
                                        SINENSKY**