UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| i2 INC., a Delaware corporation, i2 LIMITED, a British limited company registered in England and Wales,<br><br>Plaintiffs,<br><br>v.<br><br>PALANTIR TECHNOLOGIES, INC., a Delaware Corporation, SHYAM SANKAR, an individual, DR. ASHER SINENSKY, an individual,  SRS ENTERPRISES, LLC, a Florida limited liability company and NOCHUR SANKAR, an individual,<br><br>Defendants. | CIVIL ACTION NO. 1:10CV885-LO/JFA |

## DECLARATION OF CHRISTOPHER J. SUNDERMEIER IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

I, Christopher J. Sundermeier, declare as follows:

1. I am an attorney with Cooley LLP, counsel for plaintiffs i2 Inc. and i2 Limited (collectively "i2") in connection with the above-entitled action. I have personal knowledge of the facts set forth in this declaration and, if called upon to do so, I could and would testify competently to all of the matters contained herein. I submit this declaration in support of i2's Opposition to Palantir Technologies, Inc.'s ("Palantir") Motion to Compel Discovery.

2. On September 14, 2010 i2 served its Objections to Defendants' First Set of Requests for Production.

**Meet & Confer Process**

3. On September 27, 2010 and October 1, 2010 counsel for all parties met and conferred via teleconference. During these calls, the parties tried to narrow their disputes with

respect to each others' document requests and interrogatories.

4. During these calls, I reiterated i2's objections to several requests because they did not appear to be relevant to any claim or defense in this litigation. In response, Defendants' counsel stated that the relevance of their requests would become apparent when Palantir filed its counterclaims and affirmative defenses. I repeatedly invited defendants to articulate their expected claims and defenses in advance, to better assist i2 in evaluating the relevance of the outstanding requests. Counsel refused to provide any specifics but vaguely said the counterclaims would involve an affirmative defense of unclean hands, counterclaims for "antitrust," breach of contract and unfair competition, and that "interoperabilty" would be important. I asked defendants to elaborate on their factual basis for any of these claims, but they refused to do so.

5. During the September 27 call, the parties agreed for the first time to exchange proposed electronic search terms. The parties did, in fact, exchange search terms on September 28, 2010. Following this first exchange, the parties have continued to refine each other's search term lists. Most recently on October 18, 2010, Palantir requested additional search terms, which i2 has since agreed to accommodate.

6. On October 6, 2010, I sent defendants' counsel a letter summarizing i2's position on various document requests. Attached hereto as Exhibit A is a true and correct copy of my October 6, 2010 letter.

7. On October 11, 2010, I received a letter from John Trinidad addressing i2's discovery request objections. Attached hereto as Exhibit B is a true and correct copy of Mr. Trinidad's October 11, 2010 letter.

8. On October 13, 2010, plaintiffs' counsel Einat Sandman Clarke sent defendants a letter further clarifying i2's position regarding various document requests. Attached hereto as

Exhibit C is a true and correct copy of Ms. Clarke's October 13, 2010 letter.

9. On September 24, 2010, this Court ordered defendants to file any responsive pleading by October 15, 2010.

10. On October 12, 2010, counsel for defendants requested a four-day extension on filing their responsive pleadings. On October 13, I responded via email that i2 would grant defendants this professional courtesy. Attached hereto as Exhibit D is a true and correct copy of the email I sent to defendants' counsel on October 13, 2010.

11. Defendants filed their responsive pleadings on the evening of October 19. Less than 24 hours later, defendants' counsel John Trinidad sent me an email requiring a response within 27 hours concerning whether i2 had altered any of its positions on all pending document requests in light of the newly filed answer and counterclaim. Attached hereto as Exhibit E is a true and correct copy of Mr. Trinidad's email of October 20, 2010.

12. On October 21, 2010, I responded to Mr. Trinidad that we were in the process of reviewing the pending document requests in light of defendants' counterclaims and defenses, and would need to confer with our client in order to respond to his request. While I stated that I did not know whether I could meet his deadline of noon on October 21, I would get back to him promptly within the next couple of days. Attached hereto as Exhibit F is a true and correct copy of my email to Mr. Trinidad of October 21, 2010.

13. On October 22, 2010, Mr. Trinidad responded to my email indicating that the discovery issues could wait no longer. Within a few hours of that communication, Palantir filed this Motion to Compel. Attached hereto as Exhibit G is a true and correct copy of Mr. Trinidad's email of October 22, 2010.

14. That same day, October 22, 2010, Ms. Clarke sent to defendants' counsel Ben Berkowitz a letter which offered to produce documents related to the KCC and Palantir co-

marketing relationship and the documents related to the COPLINK transaction between Los Angeles Sheriffs Department, i2 and Palantir. Attached hereto as Exhibit H is a true and correct copy Ms. Clarke's letter of October 22, 2010.

15. My first opportunity to review Defendants' claims and defenses was on the night of October 19, 2010, when the defendants' responsive pleadings were filed. This was the first time that defendants articulated any facts to support their case, and the various policies, proclamations and laws on which they intend to rely.

**i2's Document Production Thus Far**

16. It is unclear to i2 why Palantir is complaining already about deficient document production when the agreed upon production date is still more than a week away. During the September 27, 2010 meet and confer call, the parties agreed that neither party would be in a position to complete its production by October 6, 2010. Hence, it was agreed that each party would produce what they had available at the time on October 6, 2010, or following entry of a Protective Order. The parties also agreed to make best efforts to complete their production of documents by approximately November 4, 2010.

17. On October 7, 2010, this Court entered the Protective Order.

18. Both parties made their initial productions of documents on October 8, 2010. i2's document production consisted of nearly 1,000 documents. These documents were responsive to various document requests including, but not limited to:

- A. Documents sufficient to show the APIs for the products at issue. (Request for Production **No. 5**);
- B. Documents indicating that customers have provided Palantir with access to i2 products (Request for Production **No. 6**)
- C. A copy of all manuals, product specifications and training materials for the products at issue. (Request for Production **No. 10**);
- D. Public videos demonstrating the claimed ability of Palantir products to interface with i2 Products (Requests for Production **Nos. 11-13**);

4

E. Documents supporting i2's conclusion that Palantir must have had access to the Analyst's Notebook SDK (Request for Production **No. 15**);

F. Documents related to purchases alleged in the Carty Declaration (Request for Production **No. 17**);

G. Documents and things related to the June 20, 2008 CORE Lab Workshop at the Naval Postgraduate School (Request for Production **No. 18**);

H. Copies of confidentiality agreements executed between i2 and its employees (Request for Production **No. 26**);

I. Document sufficient to show the date of first public use of the icons that i2 contends Palantir has copied (Request for Production **No. 44**);

J. Copyright registrations for the products at issue (Request for Production **No. 56**);

K. Documents sufficient to show the relationship between i2 Limited, i2 Holdings Limited and i2. (Request for Production **No. 59**); and

L. Documents sufficient to show the current organization chart for the management of i2 (Request for Production **No. 60**).

In addition, i2 informed Palantir that no documents exist pertaining to Request for Production **No. 52** (documents showing confidential information KCC received from Palantir).

19. i2's document production efforts are being undertaken in good faith. As agreed by the parties, i2 produced what it had available as soon as the Protective Order was entered and has been working hard to meet the deadline of November 4, 2010 that the parties agreed to. i2 has continued to collect and review documents with the expectation of meeting the November deadline with a robust production. However, with respect to late-added terms and concessions, i2 may need to make subsequent productions.

### i2 Interoperability

20. i2 produces and sells many products that are interoperable with many other third party software programs and databases. i2's products are used by literally thousands of customers in almost a 150 countries around the world for a host of applications. All of these products are installed by the thousands of customer into their individual, existing computer systems and have to be integrated and interoperable with the other components of the systems.

5

For example, i2's customers use the i2 software to analyze data stored in a host of different types of database programs in addition to its iBase database system which i2 sells. For this reason, i2 sells numerous products – such as its iBridge product, its iBase Intellishare products, its iXa Web Services SDK, and its iXv SDK – that are all designed to facilitate interoperability between i2's products and the customers' other software systems and database applications. In addition, i2 sells products that are specifically designed to give customers the tools necessary to customize the Analyst's Notebook and iBase software to interoperate with the customer's other systems as well as add on custom features. These products include the Analyst's Notebook SDK and iBase SSE.

21.  In addition, i2 also frequently provides professional services to help facilitate interoperability by assisting customers in integrating its products into their particular environments. This is a standard part of the business for most software companies.

22.  Consequently, asking for every document relating to interopability for all products at all times is extraordinarily overbroad and burdensome, brings in numerous products that are not involved in this case, and seeks information that is not relevant to this matter. i2 has agreed to produce all information relating to interoperability between i2 products at issue in this case and any Palantir products – which is clearly one of the issues in this case.

### **KCC/ COPLINK**

23.  Knowledge Computer Corporation ("KCC") is a company that merged with i2 in July 2009. KCC's main product is COPLINK. i2 acquired COPLINK in the July 2009 merger, but was otherwise unaffiliated with the company before that transaction. The COPLINK product is not at issue in this case as i2 has not determined that Palantir has stolen any trade secrets relating to this product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 27, 2010 in Palo Alto, California.

_____
Christopher J. Sundermeier

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Don Bradford Hardin, Jr., Esq.
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6000
bradford.hardin@wilmerhale.com

Anand Vijay Ramana, Esq.
MCGUIREWOODS LLP
1750 Tysons Blvd.
Suite 1800
McLean, VA 22102
(703) 712-5000
aramana@mcguirewoods.com

Jeffrey R. Chanin, Esq.
Melissa Miksch, Esq.
Eugene M. Paige, Esq.
Elliot R. Peters, Esq.
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
jchanin@kvn.com
mmiksch@kvn.com
emp@kvn.com
epeters@kvn.com

/s/ Robert R. Vieth
Robert R. Vieth, VSB 24304
COOLEY LLP
One Freedom Square|Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email: rvieth@cooley.com