UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| i2 INC., a Delaware corporation; and i2 LIMITED, a British limited company registered in England and Wales,<br><br>            Plaintiffs,<br><br>    v.<br><br>PALANTIR TECHNOLOGIES, INC., a Delaware corporation; SHYAM SANKAR, an individual; DR. ASHER SINENSKY, an individual; SRS ENTERPRISES, LLC, a Florida limited liability company; and NOCHUR SANKAR, an individual,<br><br>            Defendants. | Civil Action No. 1:10-cv-00885-LO-JFA |
| PALANTIR TECHNOLOGIES, INC., a Delaware corporation,<br><br>            Counter-Plaintiff,<br><br>    v.<br><br>i2 INC., a Delaware corporation; and i2 LIMITED, a British limited company registered in England and Wales,<br><br>            Counter-Defendants. | |

**PALANTIR TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL i2 INC. AND i2 LIMITED TO PRODUCE DOCUMENTS, PROVIDE A FULL AND COMPLETE RESPONSE TO INTERROGATORY 14, AND COMPLY WITH THE COURT'S OCTOBER 29, 2010 ORDER**
(PUBLIC / REDACTED VERSION)

Palantir Technologies, Inc. ("Palantir"), pursuant to the Federal Rules of Civil Procedure

and the Local Rules of this Court, respectfully submits this Memorandum in Support of

Palantir's Motion to Compel i2 Inc. and i2 Limited to Produce Documents, Provide a Full and Complete Response to Interrogatory 14, and Comply with the Court's October 29, 2010 Order.

## I.   INTRODUCTION

After receiving a detailed memorandum in May 2010 written by i2 employee Annie Johns ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████ Tom O'Neil, i2's head of Global Sales, testified in a recent deposition that he ████████████████████████████████████████████████ ████████████. The reason?  O'Neil believed that, ████████████████████ ████████████████████████████████████████████████████████████ ███████

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

According to O'Neil, ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████████████ █████████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████████████████████ Palantir submits that ██████████████ nothing Palantir did (or allegedly did) had any "effect on" i2. Palantir will seek to prove exactly that at trial.  And when i2's witnesses try to blame Palantir for

---

[1] Declaration of John Trinidad In Support of Palantir's Motion ("Trinidad Decl."), Exh. 1 (Transcript of O'Neil Deposition) at 166:12-24.

[2] *Id*. at 167:6-11(emphasis added).

millions in lost business ███████████████████████████████

Palantir is entitled to confront them on cross-examination with the true causes of i2's claimed

losses.

The truth is that i2 has been floundering for years.  i2 has ████████████████████

████████████ for reasons having nothing to do with Palantir; it has been an innovation laggard;

and it has failed to provide customers with essential enterprise-wide computing solutions.  In

short:  i2 has failed to keep up with a rapidly evolving marketplace, and it is that failure—not

any actions by defendants—that has caused any loss of sales i2 may attempt to pin on Palantir.

When  Mr. O'Neil's previous company, Knowledge Computing ("KCC"), merged with i2 in the

fall of 2009, the senior management of KCC ████████████████████████████████

██████████████████████████████ Upon taking over, the new management saw

i2 as ████████████. Mr. O'Neil testified that █████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

This lawsuit, and the effort to blame Palantir for i2's commercial failings, is the

centerpiece of a strategy instituted by recently a installed management team at i2 to take a new,

aggressive stance toward Palantir, which ███████████████████████ had done a

better job developing an up-to-date server-based produced which could run across an entire

enterprise and draw upon limitless data sources.  That is what intelligence analysts, the military

and  law enforcement need and are demanding in the marketplace i2 and Palantir serve, not the

1990s-style desktop computing approach upon which i2's flagship product, Analysts Notebook

("ANB") is based.  To slow Palantir's momentum in the marketplace, and to ████████████

██████████████████ that has been described by i2's own Chief Technology Officer,

Wojciech Wyzga, as ███████████████████████ To defend itself,

Palantir is entitled to explore all of these issues.

---

[3] *Id*. at 145:13-23 and 242:24-243:15.

In broad terms, that is the background to this motion. The specific discovery disputes that precipitated the motion all involve efforts by i2 to block discovery by Palantir into the true causes of i2's business losses in recent years and the ways in which i2 has used this lawsuit as a tool in the marketplace to try to gain a competitive advantage. In its particulars, the motion presents five issues for decision:

*First*, i2 has attempted to block discovery by Palantir into damages and causation issues by arguing that a prior ruling by this Court on October 29, 2010 limited production of damages-related material to revenues, profits, and costs of the "i2 products at issue." But that ruling came before the Rule 30(b)(6) deposition of Anthony Carty, i2's Chief Financial Officer. It became clear in Mr. Carty's deposition that i2 does not ███████████████████████████ ██████████████████████████████████████████ Mr. Carty testified that ██████████████████████████████████████████ ██████████████████████████████████████████ In order to narrow its production of financial information to the "i2 products at issue," i2 created a customized three-page spreadsheet that was apparently prepared upon the instruction of i2's counsel, specifically for this litigation. Exh. 4 to Carty Deposition. By this motion, Palantir seeks to compel the production of the actual management reporting documents that ██████████ ██████ i2 relies on to measure its financial performance: annual budgets and operating plans (Request No. 80), quarterly business review packages (Request No. 81), and weekly sales "tracker" reports and minutes of weekly sales "tracker" meeting (Request Nos. 82 and 83). Palantir is also entitled to a full production of i2's audited financial statements—the document that i2 apparently relied on to create its made-for-litigation revenues spreadsheets, and which i2's CFO has admitted were i2's most accurate financial metrics (Request Nos. 78-79).

*Second,* Palantir seeks to compel production of documents relating to i2's decision to license i2's Analyst Notebook product ("ANB") to Memex and any other competitors, either under the previous management regime of Mr. Holroyd, or currently, under the new management regime. i2 now tries to claim that it "never" would have licensed its software to SRS had it known that SRS had an affiliation with Palantir, a competitor of i2. That claim is a central pillar

of i2's claim of wrongdoing against Palantir. But the truth is that under the pressure of trying to meet its sales targets and generate satisfactory revenues, i2 has a history of ███████████ ███████████████████ Not only does this sales activity destroy the premise of i2's breach of contract, fraud, trade secret, and unfair competition claims, but also (assuming i2 can prove wrongdoing by defendants here), the prices charged to these competitors will necessarily place a cap on any possible money recovery by i2 in this case. i2 may wish to run away from its history of selling to competitors at trial, but Palantir is fully entitled to explore it. Documents surrounding the Memex transaction (Request No. 87) are plainly relevant for that purpose.

*Third*, Palantir is entitled to a full and complete interrogatory answer detailing all of the circumstances under which i2 disseminated copies of the complaint in this action or summaries of the allegations contained therein (Interrogatory No. 14). At trial, Palantir will contend not only that the complaint exaggerates the actual effect of Palantir's alleged conduct on i2's business, but that i2 is using this lawsuit as a tool to disparage Palantir in the marketplace and buy time while it attempts to complete the development of a long-overdue enterprise-based software product that is being positioned to compete with Palantir. On October 29, 2010, the Court granted Palantir's motion to compel documents responsive to Request No. 30, finding that i2's dissemination of information or descriptions or summaries of i2's claims in this matter are relevant. Nevertheless, i2 refuses to provide a complete response to Palantir's Interrogatory No. 14 on this same topic by failing to provide the names of the customers that i2 advised of the filing of the complaint. Moreover, i2 has failed to provide a response regarding the actions of other i2 employees, despite documentary evidence showing ███████████████████ ██████████████████████ i2 must provide a full and complete response to Interrogatory No. 14 in accordance with Rule 33 of the Federal Rules of Civil Procedure.

*Fourth*, i2 refuses to produce the executable files and source code ███████████ ████████████████████████████████████████████████ ████████and thereby has failed to comply with the Court's prior order. On October 29, 2010, the Court granted Palantir's motion to compel as to Request No. 55, and ordered i2 to produce documents and things related to i2's efforts to copy Palantir products or features. The executable

files and source code ███████ fall squarely within Request No. 55, as i2's own documents prove.  For example, i2's Chief Technology Officer has stated in internal communications that ████████████████████████████████████ In addition, i2's internal presentations describing ███████████████████████████████████████████ ████████████████████████████ Documents recently produced to Palantir following the Court's October 29, 2010 Order show ███████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ███████ pursuant to the Court's October 29 Order, Palantir is entitled to production of ███ ██████ source code and executable files.

*Fifth,* and finally, government contracts materials responsive to Request Nos. 75-77 are directly relevant to Palantir's counterclaim, and must be produced.

## II.   FACTUAL BACKGROUND

**A.   Discovery to date has demonstrated that i2 has been unable to keep up with competitors because of a failure to innovate, its inferior product offering, and its sub-optimal based business model.**

In August 2010, i2 brought the present action against Palantir, alleging multiple causes of action arising out of Palantir's alleged acquisition of the software that it sells to thousands of customers around the globe.  i2 claims to have suffered lost sales and lost profits due to defendants' alleged wrongful actions in creating a tool that can be used to import customer data that was stored using i2 software.  To put forth a defense, Palantir needs to obtain materials demonstrating that lost sales by i2, if any, were not a result of purported wrongdoing by Palantir

or Palantir's development of import and export functionality, but rather stem from i2's inability to provide a product that met customer needs.

Discovery to date has uncovered ████████████████████ As i2's Chief Financial Officer Anthony Carty admitted, ████████████████ ████████████████████████████████████████████ ████████  These business failures appear to be the result of multiple factors—an inability to innovate, an inferior product offering, and a sub-optimal business model—none of which have anything to do with defendants' alleged wrongdoing.

**Failure to Innovate**:  One of i2's primary problems has been its inability to provide new and innovative tools to its customers in a timely fashion. ████████████████ ████████████████

████████████████████████████████

████████████  ████████████████

████████████████████████

████████████████████████

████████████

**Inferior Products**:  i2's own documents contain many admissions that ████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████

████████  i2 now makes much of that one feature—indeed this entire lawsuit is built on the

idea that it is somehow foundational to what Palantir was doing—but in the privacy of the their corporate suite, the i2 executive team told themselves the truth:  Palantir had a superior, more up-to-date product.

**Sub-optimal Business Model:**  i2's business model is centered on a stand-alone software package designed to be used by one user at a time:  ANB.  In contrast, Palantir provides an enterprise-wide, server based solution.  i2 has acknowledged that ███████████████████

███████████████████████████████████████████  ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██

**B.**     **i2 admits that** ████████████████████ **is a copy of Palantir's platform.**

Realizing that the market had shifted and that customers were favoring companies that offered server-based products, i2 launched an effort ███████████████████████ by copying Palantir's products.  Palantir sought related discovery through Request for Production No. 55, which calls for documents and things relating to i2's efforts to copy Palantir products. Trinidad Decl., Exh. 9 (Palantir's First Set of Document Requests) at 12.  After i2 refused to produce documents responsive to this request, Palantir brought a motion to compel.  Docket No. 77 at 17-18.  On October 29, 2010, the Court heard argument regarding Request No. 55, and ordered i2 to produce responsive material.  Trinidad Decl., Exh. 10 (Transcript of October 28, 2010 Hearing) at 28:1-29:6.

Following the issuance of that Court Order, i2 produced documents that demonstrate ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**C.     i2 gained access to i2's technical documents through improper means.**

Palantir recently uncovered i2's scheme to ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

---

[4] These slides are excerpts from a native PowerPoint file document produced on December 10, 2010 and designated "Confidential – Litigation Counsel Eyes Only" by i2.  Trinidad Decl., Exh. 12 (December 10, 2010 Production Letter from Clarke).  The native file ████████████████ ████████████████████████  Trinidad Decl., ¶ 11.  For the Court's convenience, Palantir has produced the full presentation as Exhibit 13 to the Trinidad Declaration.

[REDACTED]

There is, therefore, no doubt that i2 has had in its possession—since at least June of 2009—highly technical, proprietary information regarding Palantir's server-based product, that this information was procured through [REDACTED]

[REDACTED]

**D.    After the meet and confer process, i2 stood on its objections regarding the disputes at issue in this motion.**

The immediate dispute arose as a result of i2's objections and responses to Palantir's Second and Third Set of Requests for Production and i2's Responses and Objections to Palantir's Second Set of Interrogatories.  On December 6, 2010, counsel for Palantir raised certain issues with i2's objections to the Second Set of Requests for Production and Interrogatories, and in a good faith effort to resolve the disputes informally, requested a meet and confer later that week. *Id.*, Exh. 18.  The next day, i2 sent an email refusing to meet and confer, claiming that the issues

raised by Palantir had previously been decided by the Court's October 29, 2010 Order. *Id.*, Exh. 19 (December 7, 2010 Email from Brown). i2 promised to provide a further response by Friday, December 10. *Id.* Having not received anything on that date, Palantir again requested a formal response to its December 6 letter. *Id.*, Exh. 20 (December 13, 2010 Email from Trinidad). i2 finally provided its response on December 14, 2010. *Id.*, Exh. 21 (December 14, 2010 Letter from Brown).

The parties then met and conferred through a series of letters regarding i2's response to the Second Set of Interrogatories, and i2's objections to Palantir's Third Set of Requests for Production. *Id.*, Exhs. 32 - 33. The parties also conducted a teleconference on December 22, 2010. Although the parties narrowed down the number of issues in dispute, they were unable to reach agreement on Requests for Production Nos. 61, 75-77, 78-79, 80-83, 86-87 and Interrogatory No. 14.

On December 28, 2010, Palantir sent a letter to i2 requesting that i2 make available the Apollo source code for Palantir's review, and produce any executable files for Apollo pursuant to the Court's October 29, 2010 Order. Trinidad Decl., Exh. 22 (December 28, 2010 Letter from Trinidad). i2 failed to respond.

Palantir respectfully requests that the Court issue an order compelling i2 to produce documents responsive to these Requests for Production, provide a full and complete response to Interrogatory No. 14, and comply with the Court's October 29, 2010 Order.

## III.   ARGUMENT

### A.   Palantir is entitled to discovery of non-privileged documents and information relevant to any party's claim or defense.

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* As the United States Supreme Court explained more than three decades ago, "any matter that bears on, or that reasonably could lead to other matter

that could bear on, any issue that is or may be in the case" is discoverable. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (discovery not limited to issues raised in the pleadings, as the process of discovery itself is designed to help the parties define and clarify the issues). The party objecting to discovery bears the burden of establishing that discovery should not be permitted. *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992) (internal citation omitted). As discussed more fully below, all of the discovery requests at issue here are well within the relevance standards of Rule 26 and therefore, i2 cannot meet its burden.

**B.     Palantir's Request for Production Nos. 61, 78-79, 80-83, and 86-87 seek relevant information, and i2 must provide documents responsive to those requests.**

      **1.     Documents related to i2's consistent inability to meet its revenue targets are also relevant to causation and damages, and must be produced (Request No. 80-83, 86 and 78-79).**

**REQUEST NO. 80**:  All annual budgets or annual operating plans prepared by i2 from 2006 to the present.

**REQUEST NO. 81**:  All quarterly management reporting packages provided to i2's Board of Directors for purposes of the Quarterly Business Review, for each quarter from 2006 to the present.

**REQUEST NO. 82**:  A copy for each week since 2006 of the "tracker" DOCUMENT that is distributed by i2 among its management personnel on Thursday evenings or Friday mornings.

**REQUEST NO. 83**:  All DOCUMENTS containing or constituting minutes of meetings at which the "tracker" DOCUMENT that is distributed by i2 among its management personnel every Thursday evening is discussed.

**REQUEST NO. 86**:  All DOCUMENTS discussing or concerning i2's failure to meet its budgeted revenue targets for the years 2006, 2007, 2008, 2009 and 2010 for each of the following products: Analysts' Notebook, Analysts' Notebook SDK, iBase, iBase SSE Designer, and i2 STL.

Anthony Carty, i2's Chief Financial Officer and Rule 30(b)(6) designee for topics related to i2's damages, testified that ████████████████████████████████████ ███████████████████████████████████████████████████████████ Mr. Carty was not able to ████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████████ (*Id.* at 94:18-96:5). Mr. Carty also testified tha ████████████████████████████ ████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Id.* at 251:6-252:2; Trinidad Decl., Exh. 23 (Exhibit 12 to

Carty Deposition) (discussing tracker documents but failing to include attachment).

Shortly after Mr. Carty's deposition, Palantir served Request Nos. 80-83 and 86 in order

to obtain these documents that would explain the reasons for i2's performance. i2's consistent

underperformance prior to and after Palantir's introduction of the import functionality at issue in

this litigation would severely undermine i2's claim that any alleged "damages" were the result of

defendants' alleged actions.

i2, however, refused to produce responsive documents, claiming that its production of

"revenues, profits, and costs related to the development and sale of the products at issue" are the

only damages-related documents that need to be produced in this action. Trinidad Decl., Exh. 24

(i2's Objections and Responses to Third Set of Requests for Production) at 3-6. According to i2,

these documents are "sufficient" for "Palantir to analyze damages suffered by i2 as a result of the

[sic] Palantir's wrongful behavior." i2 has made its intention clear: it wants to limit discovery of

damages-related information to "revenues, profits, and costs" of the i2 products at issue, and

block the production of any material that may support alternative theories of causation.[5] Palantir

is entitled to discovery in order to rebut i2's claims of damages and causation, and therefore,

documents responsive to Request Nos. 80-83 and 86 must be produced.

i2 must also produce a complete set of its audited financial statements—the documents

that its Chief Financial Officer stated ████████████████████████████████████

Trinidad Decl., Exh. 2 (Transcript of Carty Depo.) at 100:6-101:9 Indeed, the numbers from

these statements were likely used by i2 to create the customized three-page spreadsheet that Mr.

Carty relied on during his Rule 30(b)(6) deposition. *See* Trinidad Decl., Exh. 36 (Exh. 4 to Carty

Deposition). Palantir must be given access to all of i2's audited financial statements so as to test

the veracity of this made-for litigation spreadsheet that i2 has produced and relied on. Following

---

[5] Although in response to Request Nos. 80-83, i2 stated its willingness to meet and confer
"regarding an appropriately narrowed scope for this request," i2 failed to provide any proposed
narrowing during the course of the parties' meet and confer. Trinidad Decl., Exh. 24 (i2's
Objections and Responses to Third Set of RFPs) at 3-5. These Requests are appropriately
narrow, calling for handfuls of specific documents that are generated on a periodic basis. i2 has
not articulated any basis for claiming that these requests are unduly burdensome.

Mr. Carty's deposition, Palantir served Request Nos. 78-79 seeking production of these documents.[6] Recognizing that it could no longer sustain the position that audited financials are irrelevant in light of Mr. Carty's testimony, i2 produced some but not all of the audited financial statements for i2 Holdings. After Mr. Carty was deposed, i2 produced the audited financials statements dated December 2008 and December 2009, and for "i2 Software" for December 2007 and June 2008. *See* Trinidad Decl., ¶ 41.  In responding to Palantir's Request Nos. 78-79, however, i2 served only objections, and during the meet and confers, i2 refused to state whether it had provided a full set of financial documents, or whether it would agree to produce all financial statements from 2006 to the present.  i2's partial production of financial statements is insufficient, and its refusal to provide a straight answer to a simple question—does i2 agree to produce this financial material—is improper.  i2 must produce a complete set of audited financial statements from 2006 through the present, and withdraw its objections to Request Nos. 78-79.[7]

   **2.    The Court should order i2 to produce business strategy documents kept in the ordinary course of business that are directly relevant to causation and damages (Request No. 61).**

   **REQUEST NO. 61**:  All DOCUMENTS constituting or evidencing any presentations, prospectuses, business plans, strategic plans, business forecasts, product or technology roadmaps, time lines, programs of action, white papers, memoranda, financial reports or statements, investor updates, or other reports or disclosures RELATING TO the i2 PRODUCTS.

   Documents responsive to Request No. 61 are directly related to i2's ability to prove

---

[6] **REQUEST NO. 78**:  All annual i2 FINANCIAL STATEMENTS from 2006 to the present.

**REQUEST NO. 79**:  All quarterly i2 FINANCIAL STATEMENTS from 2006 to the present.

[7] Palantir recognizes that, prior to Mr. Carty's deposition, the court had denied its request for production of documents "comprising [i2's] financial statements," holding that i2 need only produce "documents showing the revenue, profits and costs related to the development and the sale of the products at issue in this case...."  Trinidad Decl., Exh. 10 (Transcript of Oct. 29, 2010 Hearing) at 7:11-17 (discussing Request No. 36).  But Mr. Carty's Rule 30(b)(6) testimony presents changed circumstances.  Not only are these materials the most accurate and reliable indicators of i2's financial performance, but Carty a▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that is central to Palantir's lack of causation defense.  Perhaps most importantly, because of the limitation that i2 persuaded the Court to impose—documents evidencing only the revenues and profitability of the "products at issue"—no periodic management reporting documents that i2 relies on in the regular course of business actually exist that meet that description, so Palantir was placed in the position of having to accept customized (and highly selective) reports prepared specifically for this litigation at the instruction of i2's counsel.

causation and damages.  As discussed previously, i2 has already produced internal

communications ███████████████████████  Business documents called for by

Request No. 61 are also likely to contain concessions and admissions  that the ANB product line

faced serious difficulty in the market, as customers turned to software providers that offered

more innovative tools and enterprise-wide solutions.  Thus, production of this material is likely

to lead to discovery explaining how and why i2's ANB product consistently underperformed and

why i2 was unable to meet its revenue targets, such documents will be unlikely to support i2's

current theory that Palantir's implementation of functionality that allows for interoperability with

data stored using i2 software lies at the root of its woes.

i2's refusal to produce responsive documents rests on i2's flawed claim that the Court

previously held that production of documents that may bear on damages would be limited to

"non-privileged documents sufficient to show its revenue, profits and costs related to the

development and sale of the Products at Issue" and "communications with customers relating to

the loss of business."  Trinidad Decl., Exh. 21 (December 14, 2010 Letter from Brown) at 1.  The

Court's rulings at that hearing were based upon the particular document requests at issue in the

motion before the Court at that time, not upon an absolute limitation on the materials relevant to

this litigation.  Nor is there support for i2's position anywhere in the transcript of the October 29,

2010 hearing.  Trinidad Dec., Exh. 10 (Transcript of October 29, 2010 Hearing).[8]  i2 must

produce documents responsive to Request No. 61.

### C.   i2 must produce documents related to its decision to sell software to its competitor, Memex.

**REQUEST NO. 87**:  All DOCUMENTS discussing or concerning i2's sales of any of Analysts' Notebook, Analysts' Notebook SDK, iBase, iBase SSE Designer, and i2 STL to Memex.

i2 has alleged, in this litigation, that it would not have sold its products to a competitor.

Yet, high-ranking i2 executives, including its former CEO Paul Holroyd, ██████████

████████████████████████████████████████████████████

---

[8] The Court, for example, granted Palantir's Motion to Compel production of documents
responsive to Request No. 55 (which sought documents relating to i2's efforts to copy or create
something similar to Palantir's products), in part due to a finding that such documents were
relevant to causation and damages.  *See* Trinidad Decl., Exh. 10 (Transcript) at 28:1-29:6.

███████ Palantir is entitled to i2's documents responsive to Request No. 87, not only because they undermine i2's averments in its complaint, but also because they may contain admissions regarding i2's views on interoperability with competitors' products, and discussions of the remuneration that i2 would require in order to make its commercial product available to its competitors.  i2 has imposed an improper limitation on its response to Request No. 87, agreeing to produce only "documents sufficient to show the sales of any of the products at issue to Memex."  Trinidad Decl., Exh. 24 (i2's Objections and Responses to Third Set of Document Requests) at 6-7.[9]  Moreover, there is minimal burden for i2 to collect and produce documents related to the sale of software to Memex:  because Memex is a competitor, not an ongoing customer, there are unlikely to be a large number of responsive documents.  Palantir is entitled to full discovery regarding i2's internal discussions on this sale to Memex.[10]

**D.   i2 must fulfill its obligations under Rule 33 and provide a full response to Interrogatory No. 14.**

> **INTERROGATORY NO. 14:**  "DESCRIBE separately and with as much specificity as possible each COMMUNICATION i2 has had (directly or indirectly) with current, former, or potential i2 customers RELATING TO the subject matter of i2's complaint in this lawsuit, including the subject matter of the COMMUNICATION, when the COMMUNICATION took place, and the identity of all individuals who took part in that COMMUNICATION."

Federal Rule of Civil Procedure 33 requires a responding party to answer an interrogatory "separately and fully."  Fed. R. Civ. Proc. 33(b)(3).  While a responding party may "specify the records that must be reviewed" in order to ascertain an answer to an interrogatory, it must do so with "sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. Proc. 33(d)(1).

i2's response to Interrogatory No. 14 fails to meet that standard.  Although i2's response provided some information regarding the involvement of certain i2 employees (including i2's Senior Vice President of for Marketing) in disseminating the complaint, it did not provide a

---

[9] i2 later agreed to produce documents "sufficient to determine the terms of the relationship between [i2 and Memex]."  Trinidad Decl., Exh. 27 (Dec. 21, 2010 Letter from Brown) at 3.

[10] Although i2 claims that it has already produced "copious documents that respond to this request," i2 was only able to cite to two such documents during the parties' December 22, 2010 meet and confer:  a document cited by Palantir in its December 19, 2010 letter, and a license agreement between i2 and Palantir.  Trinidad Decl., ¶ 42.

complete description of the full extent of i2's efforts to use its complaint as a marketing tool.

First, i2 refused to provide a sworn response regarding the actions of 

Trinidad Decl., Exhs. 28 - 31 (i2-019068, i2-019204, 019225, 019270).  i2's refusal to provide a response that describes ███ ███████ to distribute the complaint to customers demonstrates that i2's response to Interrogatory No. 14 is incomplete.

Second, instead of providing a response that allows Palantir to uncover the full extent of i2's efforts to use the complaint as a marketing tool, i2 attempts to make the discovery of this information a time consuming and burdensome task.  For example, instead of providing a narrative response, i2 states that the communications requested through this Interrogatory can be found—"while not exclusively"—in certain Bates ranges.  During the parties' meet and confer, Palantir asked i2 to provide precise and comprehensive Bates numbers where these documents cold be found, and asked i2 to remove from its response qualifying language such as "while not exclusively."  Trinidad Decl., Exh. 32 (December 17, 2010 Letter from Trinidad) at 3.  i2 refused.  *Id.*, Exh. 33 (December 21, 2010 Letter from Brown).  By inserting this qualifier, i2 requires Palantir to comb through its entire production to find documents that demonstrate i2's dissemination of the complaint (or the subject matter contained therein) to customers, even though this information is readily ascertainable if i2 were simply to interview those tasked with disseminating this information.

Third, the documents cited by i2 do not provide the names of the companies with which i2 communicated.  For example, i2 cites certain emails ██████████████████

However, those documents do not provide sufficient information to identify the customers these individuals represent.  Nor can i2 simply

rely on documentary evidence to respond to this request, as such a response would entirely omit evidence of oral communications i2 had with customers regarding the complaint. i2 must provide a response that includes information regarding which customers it contacted in its efforts to disseminate the complaint.

There can be no dispute that this material is relevant. The Court previously concluded that Palantir's request for documents relating to i2's dissemination of the complaint (Request No. 30) was relevant, and ordered i2 to produce responsive material. Trinidad Decl., Exh. 10 (Transcript of Oct. 29, 2010 Hearing) at 19:23-21:9 ("dissemination of information or descriptions or summaries of what [i2's] claims are in this matter, could be relevant to the issues in this case.").[11] The same result is warranted here, and i2 should be compelled to produce an amended and full response.

A compete response to Interrogatory No. 14 must describe all communication with third parties regarding i2's complaint and the allegations contained therein. A complete response must include all communications that took place after i2 commenced the investigation that led to i2's filing of its complaint, and identify the individuals and customers with whom i2 communicated.

**E.     i2 must comply with the Court's prior order and produce the source code and executable files** ███████████████████████████

Over i2's objections, the Court granted Palantir's motion to compel production of documents responsive to Request No. 55, which sought all documents and things related to i2's efforts to copy Palantir. Trinidad Decl., Exh. 10 (Transcript of October 29, 2010 Hearing) at 28:1-29:6. This Court Order has resulted in the production of a number of documents evidencing

████████████████████████████████████████████████████████

███████████████████████████████████████  Documents produced by

i2 demonstrate ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  *Id.*, Exhs. 15,

---

[11] At that hearing, i2's counsel represented that i2 had not disseminated the complaint for marketing purposes, and claimed that any communications regarding the complaint "have been extremely limited." Trinidad Decl., Exh. 10 (Transcript of Oct. 29, 2010 Hearing) at 20:4-14. If that is indeed i2's position, then there is no burden imposed by seeking a full and comprehensive response to Interrogatory No. 14.

17.

Palantir has reason to believe that i2 has used this and other improperly procured

proprietary information in order to copy Palantir's products and to launch 

In April 2010, i2's own Chief Technology Officer admitted

Trinidad Decl., Exh. 11.

Pursuant to the Court's October 29, 2010 Order, Palantir has requested executable files

as well as          source code to determine the extent of i2's copying.  i2,

however, refuses to produce this material, claiming that this material is irrelevant to the

litigation.  That issue was decided months ago, and i2 cannot avoid producing the requested

material given the Court's prior order regarding Request No. 55.

**F.  i2 must also produce documents related to its government contracts (Requests Nos. 75-77).**

**REQUEST NO. 75:**  All DOCUMENTS constituting work orders, Requests for Proposal, and/or responses to Requests for Proposals that led to the formation of CONTRACTS entered into by i2 and any government entity that were in effect as of March 2006 or any date thereafter.

**REQUEST NO. 76:**  All DOCUMENTS memorializing any of i2's attempts to sell i2's Analyst's Notebook, iBase, Analyst's Notebook SDK, iBase SSE Designer, and/or i2 STL to governmental entities, including but not limited to Requests for Proposals (RFPs),  Requests for Quotation (RFQs), Requests for Information (RFIs), Sole Source Justifications (SSJ), Limited Source Justifications (LSJ), Task Orders, Purchase Orders (POs), Statements of Work (SOWs), Reseller Agreements or Subcontracts.

**REQUEST NO. 77:**  All COMMUNICATIONS discussing any of i2's attempts to sell i2's Analyst's Notebook, iBase, Analyst's Notebook SDK, iBase SSE Designer, and/or i2 STL to governmental entities, including but not limited to documents RELATING TO Requests for Proposals (RFPs),  Requests for Quotation (RFQs), Requests for Information (RFIs), Sole Source Justifications (SSJ), Limited Source Justifications (LSJ), Task Orders, Purchase Orders (POs), Statements of Work (SOWs), Reseller Agreements or Subcontracts.[12]

i2 claims that its prior agreement to provide certain contracts is sufficient.  Palantir is not

willing to further limit this request by excluding Purchase Orders, Requests for Proposal and

---

[12] During the meet and confer process, Palantir agreed to limit Request Nos. 76-77.  Palantir limited Request No. 76 to documents that were formally submitted to or from governmental entities and expressly refer to the sale of i2's Analyst's Notebook, iBase, Analyst's Notebook SDK, iBase SSE Designer, and/or i2 STL to governmental entities.  Palantir also limited Request No. 77 to actual communications with government entities that expressly refer to Requests for Proposals (RFPs),  Requests for Quotation (RFQs), Requests for Information (RFIs), Sole Source Justifications (SSJ), Limited Source Justifications (LSJ), Task Orders, Purchase Orders (POs), Statements of Work (SOWs), Reseller Agreements or Subcontracts. Trinidad Decl., Exh. 18 at 5.

other contractual material.  i2 has requested similar material from Palantir (Trinidad Decl., Exh. 35 (i2's Second Set of Requests for Production at Request Nos. 13-20), and there is no basis for i2 to deny Palantir discovery of this material.  Moreover, these documents are directly relevant to Palantir's counterclaim.  *See* Docket No. 72 (Answer and Counterclaim) at ¶ 181 ("on information and belief, the express terms of many of i2's government contracts require it to permit its government customers to modify, adapt or combine the software it sells to them with other software products used by those customers…").  The counterclaim remains a live pleading in this case, and one of the primary arguments Palantir advanced at the hearing on i2's motion to dismiss was that, procedurally, any request for a dispositive ruling on the counterclaim should be taken up in the context of a Rule 56 motion, not a Rule 12 motion.  Because much of the proof that Palantir expects to marshal in support of the counterclaim will come from publicly available sources, the counterclaim adds very little discovery burden to the case.  But in this one relatively narrow area—involving the actual terms of i2's government contracts, and specifically the degree to which government agencies are nowadays requiring interoperability and data-sharing among different computer systems in as part of their procurement processes—the evidence must come from i2.  Palantir is entitled to gather that evidence.

## IV.   CONCLUSION

For the foregoing reasons, Palantir respectfully requests the Court to grant its motion to compel, and order i2 to provide documents responsive to Request for Production Nos. 61, 75-77, 78-79, 80-83, 86-87, provide a full and complete response to Interrogatory No. 14, and comply with the Court's October 29, 2010 Order.

Dated:  December 30, 2010

WILMER CUTLER PICKERING HALE
AND DORR LLP


By: */s/ D. Bradford Hardin, Jr.* _____
Carl Nichols, VSB No. 43065
D. Bradford Hardin, Jr., VSB No. 76812
Philip R. Seybold, VSB No. 73596
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:       (202) 663-6000
Facsimile:       (202) 663 6363
Email: carl.nichols@wilmerhale.com
Email: Bradford.Hardin@wilmerhale.com
Email: randy.seybold@wilmerhale.com

**Attorneys for Defendants
PALANTIR TECHNOLOGIES, INC.,
SHYAM SANKAR, and DR. ASHER
SINENSKY and Counter-Plaintiff
PALANTIR TECHNOLOGIES, INC.**

Of Counsel:

John W. Keker (*admitted pro hac vice*)
Elliot R. Peters (*admitted pro hac vice*)
Jeffrey R. Chanin (*admitted pro hac vice*)
Jon B. Streeter (*admitted pro hac vice*)
Eugene M. Paige (*admitted pro hac vice*)
John E. Trinidad (*admitted pro hac vice*)
Benjamin W. Berkowitz (*admitted pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:       (415) 391-5400
Facsimile:       (415) 397-7188
Email:       jkeker@kvn.com
Email:       epeters@kvn.com
Email:       jchanin@kvn.com
Email:       jbs@kvn.com
Email:       emp@kvn.com
Email:       jtrinidad@kvn.com
Email:       bberkowitz@kvn.com

**Attorneys for Defendants
PALANTIR TECHNOLOGIES, INC.,
SHYAM SANKAR, and DR. ASHER
SINENSKY and Counter-Plaintiff
PALANTIR TECHNOLOGIES, INC.**

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2010, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Robert R. Vieth, Esq.
COOLEY LLP
One Freedom Square | Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000
*Attorney for Plaintiffs i2 Inc. and i2 Limited*

Anand Vijay Ramana, Esq.
McGuireWoods LLP (McLean)
1750 Tysons Blvd, Suite 1800
McLean, VA 22102-4215
(703) 712-5000
Email: aramana@mcguirewoods.com
*Attorney for Nochur Sankar and SRS Enterprises, LLC*

by **COURIER**, by placing a true and correct copy in a sealed envelope addressed as shown below, and dispatching a messenger from Nationwide Legal, Inc., with instructions to hand-carry the above and make delivery to the following during normal business hours, by leaving the package with the person whose name is shown or the person authorized to accept courier deliveries on behalf of the addressee.

Christopher J. Sundermeier
Mark F. Lambert
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Dated:  December 30, 2010

WILMER CUTLER PICKERING HALE
AND DORR LLP


By:  */s/ D. Bradford Hardin, Jr.*
Carl Nichols, VSB No. 43065
D. Bradford Hardin, Jr., VSB No. 76812
Philip R. Seybold, VSB No. 73596
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:        (202) 663-6000
Facsimile:        (202) 663 6363
Email: Carl.Nichols@wilmerhale.com
Email: Bradford.Hardin@wilmerhale.com
Email: Randy.seybold@wilmerhale.com

**Attorneys for Defendants
PALANTIR TECHNOLOGIES, INC.,
SHYAM SANKAR, and DR. ASHER
SINENSKY and Counter-Plaintiff
PALANTIR TECHNOLOGIES, INC.**