# EXHIBIT 10

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


------------------------------:
                              :
i2 INC., et al.,              :
             Plaintiffs,      :
                              :
 -vs-                         :        Case No. 1:10-cv-885
                              :
                              :
PALANTIR TECHNOLOGIES, INC.,  :
et al.,                       :
             Defendants.      :
                              :
------------------------------:




HEARING ON MOTIONS

October 29, 2010

Before:  Mag. Judge John F. Anderson




APPEARANCES:

Christopher J. Sundermeier and Robert R. Vieth,
Counsel for the Plaintiffs

Jon B. Streeter and D. Bradford Hardin, Jr.,
Counsel for the Defendants

1          NOTE:  The case is called to be heard at 9:32 a.m.

2   as follows:

3          THE CLERK:  i2 Incorporated, et al. versus Palantir

4   Technologies, Incorporated, et al., civil action 10-885-cv.

5          MR. VIETH:  Good morning, Your Honor.  Robert Vieth

6   of Cooley.  Your Honor, this morning I would like to introduce

7   the Court to Christopher Sundermeier of our firm.  Mr.

8   Sundermeier is a member of the California Bar.  And with the

9   Court's permission, he will be handling today's argument.

10          THE COURT:  Okay, thank you.  Good morning, Mr.

11   Sundermeier.  Good morning, Mr. Vieth.

12          MR. SUNDERMEIER:  Good morning, Your Honor.

13          MR. HARDIN:  Good morning, Your Honor.  Bradford

14   Hardin and my colleague Jon Streeter, who is also a member of

15   the California Bar, but admitted pro hac vice to the Bar of

16   this court.  He will be arguing the motion this morning on

17   behalf of Palantir Technologies.

18          THE COURT:  Okay, thank you.

19          Okay, Mr. Streeter, just to let you know, I have

20   reviewed all the pleadings that have been filed in the case.

21   What I intend to do is basically rule on the ones that I am

22   prepared to rule on, and then I will ask questions about ones

23   that I seem to have questions about.

24          So, I am not going to have--  I mean, I have read

25   all the papers.  I think the issues are fairly clear on many

3

1   of the, many of the document requests, but there are some that

2   I will need to ask either you, Mr. Streeter, or you, Mr.

3   Sundermeier, questions about.

4          Before I do that, are there any other--  I mean,

5   have you all come to resolution of any of the issues--  I

6   mean, I got the reply yesterday.  So, hasn't anything changed

7   overnight or this morning that you've resolved any of the

8   matters that are before me now?

9          MR. STREETER:  No.  We haven't had an opportunity to

10  update our meet and confer, although I did notice that in the

11  opposition there was a change of position by i2 on a couple of

12  categories.  Although it doesn't appear that those are changes

13  of position that would lead to resolution.

14         THE COURT:  Okay.  Well, on document requests 1, 2,

15  3 and 4, those four requests that relate to the

16  interoperability issues, Mr. Streeter, I will tell you, and

17  this goes for everybody on this case, that document requests

18  that go for all documents and things relating to something are

19  going to be hard to get this Court to enforce.

20         I do find based on the information that was

21  contained in the pleadings that have been provided, that the,

22  I guess, agreement of i2 in this case to produce the documents

23  that are related to the interoperability of the i2 products at

24  issue in this case with the Palantir products and documents

25  that reflect communications from third parties that i2

4

1   products be made interoperable with the Palantir software, is

2   an appropriate response to those four document requests.

3           So, as set out in the opposition as to what was

4   agreed to or what was proposed as their responses to document

5   requests 1, 2, 3 and 4 I think is appropriate.

6           For document requests 21, 22, 23 and 24 having to do

7   with the license agreements and the time period for doing

8   that, I think that the issues got narrowed a little bit in the

9   pleadings, but I think the one issue that I see and I'm

10  prepared to rule on without any argument is the time period of

11  the license agreements.

12          So, I do want i2 to produce the representative forms

13  of its license agreements for its products at issue and for

14  every government customer, but I want it to be for those

15  license agreements that were in effect on March 2006 and that

16  were entered after March 2006, not a time limitation of only

17  entered into after March 2006.  And a copy of the-- Yes.

18          MR. SUNDERMEIER:  May I comment, Your Honor?

19          THE COURT:  Comment?  Well, you can get a

20  clarification.  I am not going to hear any argument on it, but

21  is there anything that is unclear about that ruling?

22          MR. SUNDERMEIER:  No, except that that, because it

23  is a perpetual license, that means every license that the

24  company since 1990 has entered into.

25          THE COURT:  That's different than its form license.

5

1    So, if you have used different forms in the past and those

2    forms are still in existence and are relevant to the time

3    period in March of 2006, then you will have to produce those

4    representative license agreements.

5            I also am going to require you to produce copies of

6    any contracts or agreements with terms that are different from

7    those form agreements, which is I think something you had

8    indicated you would be willing to do.

9            MR. STREETER:  Your Honor, a point of clarification

10   on that.  There could well be contested issues concerning the

11   royalty rates in the licenses, and I would understand every

12   unique royalty rate to be something that is not necessarily

13   part of a form agreement.

14           So, we don't want to see a blank form agreement with

15   no royalty rates.  Every individual royalty rate is unique and

16   ought to be produced.

17           MR. SUNDERMEIER:  Your Honor, we don't charge by

18   royalty rate.

19           THE COURT:  Okay.  So, I don't think that will be an

20   issue.

21           MR. STREETER:  Well, the level of compensation that

22   is charged, whether it is a royalty, it could be a flat fee.

23   Whatever the fee is, the damages experts could well be

24   addressing what is charged for licenses, and we are entitled

25   to know what the--

```
 1            THE COURT:  Well, your argument for wanting these

 2    agreements had to do with interoperability and the rights and

 3    the licensing rights.  That's the argument that you made in

 4    having me try and rule on these document requests for 21, 22,

 5    23 and 24, that it had to do with the rights that were given

 6    in doing that.  It didn't really talk about what had to do

 7    with any damages issues, did you?

 8            MR. STREETER:  Well, the reason we would seek the

 9    terms of licenses, Your Honor, goes not only to the technical

10    issues, but also to the damages issues.  And to the extent

11    that experts are going to be preparing opinions about what

12    licenses are worth, it seems to us that each unique term that

13    has to do with how much they charge is not a matter of a form,

14    it is a unique term and it goes to pricing.

15            MR. SUNDERMEIER:  Your Honor, they have asked for

16    pricing information.  We have agreed to produce pricing

17    information for our prices for the license.  We don't, we

18    don't charge a royalty.  We charge a price for them.  And we

19    have agreed to produce that.

20            Putting it in the context, license means producing

21    every license that might have a different price term going

22    back 20 years, which--

23            THE COURT:  Right.  So, to the extent you are asking

24    for clarification, I'm not requiring them to produce each

25    license agreement that may have a compensation term that may
```

1  be different.  Only the terms relating to the right to use and

2  distribute or whatever.  And I assume you will be producing

3  pricing information in another format relating to those.

4          As to document request number 45, you have agreed to

5  produce, Mr. Sundermeier, the documents that are relating to

6  the discussions with the Los Angeles Police Department that

7  relate to interoperability, is that correct?

8          MR. SUNDERMEIER:  Yes.

9          THE COURT:  I think that's sufficient response to

10  document request number 45.

11          Turning to 36 and 37, the document requests relating

12  to profits and costs, the financial statements and costs of

13  sales and generations, I do think that the discussions that

14  related or that i2's agreement to produce documents showing

15  the revenue, profits and costs related to the development and

16  the sale of the products at issue in this case are sufficient

17  for 36 and 37.

18          I do think that 38, that i2 should produce documents

19  that reflect i2's shares in the market for i2 products at

20  issue.

21          So, I do think that some market share information

22  and documents, and corollary to that is 39, the documents

23  relating to competitions, I think in the market for the

24  products that are alleged in this action.  So, both 38 and 39

25  I think are proper to some extent, but just documents

1   reflecting i2's share of the market for i2 products at issue

2   and documents reflecting the competition in the market for the

3   products alleged in this action, is the appropriate, would be

4   the appropriate responses to 38 and 39.

5          40, I need some discussion on 40, which is all

6   documents related to any customer of i2 for whom i2 claims it

7   has lost business or revenue due to the conduct.

8          What is objectionable about number 40, Mr.

9   Sundermeier?

10          MR. SUNDERMEIER:  Well, for example, the FBI.  We

11   have been working with the FBI for many, many years going back

12   to, I don't know, mid 1990's.  Every document--  And those

13   documents would pertain to technical issues, they would

14   pertain to--  I mean, it would be a vast amount of information

15   which has nothing to do with this case.

16          We have agreed to produce the license agreements

17   with them.  We have agreed to produce information relating to,

18   you know, costs and pricing from us.  We have agreed to

19   produce any information that relates to the actual loss of

20   that business.

21          But to say, produce everything, every document that

22   relates to each of the customers that we claim that we lost

23   business, encompasses a very broad array of irrelevant stuff.

24          We think we've, we think in the other requests and

25   in this request we have narrowed that so that they are getting

9

1   a broad scope of what they need.  But certainly not every

2   document that relates to the FBI, for example, would be

3   relevant or even reasonably calculated to lead to the

4   discovery of admissible evidence.

5           THE COURT:  Okay.  Mr. Streeter, what's your

6   response to that?

7           MR. STREETER:  First of all, with respect to time

8   frame, Your Honor, and this runs throughout the opposition on

9   a number of the requests, we are not seeking every piece of

10  paper going back to 1990.  They have suggested that the

11  relevant time frame goes back to 2006, that's reasonable and

12  fine.  They're asking for damages, that's what they claim

13  going back to that point in time, and we're not requesting

14  anything more.

15          The customer losses, however, could have a number of

16  causes.  And we're entitled to examine the communications back

17  and forth within the customer relationship to determine what

18  in fact, if there was a loss of business, why did the customer

19  decide to go elsewhere.  It may have had to do with some other

20  competitor of i2, not Palantir.  It may have had to do with

21  the fact that Palantir is not keeping up with the expected

22  features and advantages that the customer desires in today's

23  marketplace.

24          THE COURT:  But you're asking for all documents

25  relating to any customer in which they claim that they have

10

1    lost business.  You're not limiting the request as to any area

2    in which those documents relate to.

3            MR. STREETER:  If there--

4            THE COURT:  Am I right in that fact?  I mean, the

5    way that you've phrased that request, it's any type of a

6    document that relates to any customer of i2.  So, whatever the

7    customer is, whoever it is, any document that relates to that

8    customer is what you're asking for in document request number

9    40?

10           MR. STREETER:  Well, if there is, there is a nexus

11   clearly to lost business here.  And if i2 is going to be

12   determining for itself what the cause of a diminution in

13   business is, that's problematic.

14           We would like to examine the communications, and it

15   may be communications having to do with servicing a customer

16   on a broad array of topics.  We're not asking for

17   administrative documents and--

18           THE COURT:  Yes, you are.

19           MR. STREETER:  Well--

20           THE COURT:  I mean, the way that it's phrased,

21   that's what you're--  All documents.  You haven't limited it

22   in any way whatsoever.

23           MR. STREETER:  Well, we gave examples of the kinds

24   of things that may be of interest.  We want to know about the

25   financial ebbs and flows of the revenues with particular

1    customers.  And the invoicing persons, the work orders that

2    customers are placing with i2 are going to tell us what the

3    trends were with particular customers.

4            So, clearly what we're trying to get at here, Your

5    Honor, is the issue of causation.  And if the limitation that

6    i2 is proposing is placed on this request, then they are

7    simply going to be determining for themselves that they have

8    got lost business with the FBI.  It was, it was the fault of

9    Palantir.  So, we'll cherry-pick and give you a handful of

10   documents relating to that.

11           We're entitled to a more representative sample of

12   what's going on with a particular customer, and we're not

13   asking for everything going back to 1990.  They have suggested

14   2006 as a time frame limitation.  That's perfectly fine.

15           THE COURT:  Well, I can't order them to respond to a

16   document request that asks for all documents relating to any

17   customer of i2, from whom i2 claims it has lost business or

18   revenue.

19           I mean, that just is so overbroad and would have--

20   Just because they claim that a customer, they have lost

21   business from a customer, doesn't mean that they should be

22   required to produce every single document that relates to that

23   customer even for a time period from 2006 to the present.

24   That just--

25           MR. STREETER:  Your Honor, we're prepared to accept

1  a limitation on this having to do with lost business.  But we

2  don't want to be put in a position where they are determining

3  that this is something that happened as a result of Palantir,

4  and we're going to give you communications relating to why

5  this customer went to Palantir instead of staying with i2.

6       We need more information about the customer

7  relationship, and we are prepared to accept a limitation

8  concerning any lost business or any diminution in business.

9       THE COURT:  Okay.  Well, I do think with the

10 limitation of documents relating to the loss of business or I

11 guess loss of business between any customers is appropriate

12 since you are claiming that you did lose business from these

13 customers, that producing documents from those customers that

14 are related to the loss of the business to those customers is

15 appropriate.

16      So--

17      MR. SUNDERMEIER:  And, Your Honor, we have agreed to

18 that, that's what we said--

19      THE COURT:  I do think that's an appropriate

20 limitation.

21      41, I will limit it, the request of 41 as to price

22 lists, plans and policies as to the products at issue in this

23 case.  I am not going beyond the products at issue.

24      I don't find that the documents in request 42 are

25 appropriate in this case.  So, what may or may not have been

1  given to Silver Lake Partners really doesn't have any

2  significant bearing on the issues that are in this case.  So,

3  I am not going to require a response to--  Well, I will

4  sustain the objection to document request number 42.

5          46--

6          MR. STREETER:  Your Honor, you're only entertaining

7  requests for clarification?

8          THE COURT:  Which one are you talking about--

9          MR. STREETER:  42--

10          THE COURT:  The documents given to Silver Lake

11  Partners?  I have read the arguments on that.  I don't think

12  it's appropriate for me to order them to respond to that

13  request.

14          While some of the information that they did may or

15  may not be relevant, all the documents that they gave I don't

16  think is relevant.  So, as worded, I am not going to require

17  them to provide a response to 42.

18          46.  You know, Mr. Streeter, what is it--  You know,

19  it concerns me when people serve document requests like this.

20  Documents sufficient to show current, former and potential

21  customers.

22          I mean, what do you mean by potential customers?

23  Everybody in the world could be a potential customer, couldn't

24  they?

25          MR. STREETER:  Well, in the marketing activities

1    that i2 carries out, certainly there are target entities that

2    they consider to be potential customers.  And, no, everybody

3    in the world is not a potential customer of i2.  So, I would

4    respond in that fashion to Your Honor's last point.

5              With respect to the reason for this request, any

6    time i2 shares information that it claims it categorically

7    will not provide to its competitors, that is flatly

8    inconsistent with the position they have taken concerning

9    their license restrictions and the nature of the trade secrets

10   involved in this case.

11             And if we were to discovery that on their list of

12   customers or even their potential customers, and there I mean

13   entities that they are actively pursuing for business, that

14   there is a competitor of theirs on that list, we're entitled

15   to know that because it contradicts fundamentally a position

16   that they are taking in this case.

17             They have raised objections on the ground that this

18   is highly sensitive information.  We have a protective order.

19   They are entitled to mark information that they produce in

20   this case as available only to litigating counsel only.  So,

21   that ought not to be a concern.

22             And this does go to something that could be quite

23   basic to whether or not we even in fact have trade secrets at

24   issue in this case.

25             MR. SUNDERMEIER:  Your Honor, the first time this

1   argument was ever raised was in the moving papers.  It has

2   never been raised before that.

3        This isn't a request for have you ever sold to your

4   competitors or if you've ever entered into agreements with

5   competitors, produce those.  We are our producing license

6   agreements in this case.

7        And even if this were appropriately narrowed, and it

8   never was before this hearing, producing every potential--  I

9   mean, our products are sold differently.  We sell our product

10  at a, it is a relatively minimal cost.  And we sell it, you

11  know, in an installation that could be sort of on a single

12  desk top as opposed to Palantir's, which is, you know, as they

13  claim a million-plus installation.

14       So, our potential base is huge.  And it includes

15  anybody who does any kind of fraud investigation or any kind

16  of intelligence analysis.  And our actual customers, again,

17  are highly sensitive information and it's not relevant unless

18  we're claiming lost profits to it.

19       We are giving them the license agreements.  You

20  know, if the sole issue is have we ever licensed to a

21  competitor or sold to a competitor, then that is something

22  that can just simply be asked.

23       THE COURT:  Well, I am going to require a response

24  to 46, but limited to documents sufficient to show customers

25  of i2 from March 2006 to the present.  So, it will be limited

1    in the time scope.

2           I won't require potential customers because I don't

3    quite understand what that, how one could properly respond to

4    a request like that.

5           But anyone who was a customer from March 2006 to the

6    present should be provided on a list.  And it can be marked

7    attorney's eyes only under the protective order.

8           On 54, all documents relating and things relating to

9    any planning or products undertaken by you to develop updates,

10   features, enhancements to i2 products in order to meet the

11   competition.

12          What's the relevance of that, Mr. Streeter?

13          MR. STREETER:  It goes to causation, Your Honor.

14   Our view, Your Honor, is that this is a dated project, product

15   that i2 sells.  And to the degree that they have got losses

16   that are going to be claimed here, we're entitled to present

17   evidence that the reason is their deteriorating quality in

18   failing to meet the needs for the most current features and

19   the most advanced capabilities of the software in this area.

20          So, that's the reason that we ask for this

21   particular category.

22          THE COURT:  Well, what--  If they're planning to

23   update their product, what does that have--  I'm still, I'm

24   still confused as to what relevance that would have to the

25   issues in this case.

1           MR. STREETER:  If they--

2           THE COURT:  I assume that every software developer

3   is always looking to enhance its products, you know, from one

4   version to the next.  That they don't just make it and let it

5   sit there and don't try and do some type of enhancements as

6   technology and things differ, the needs of customers differ.

7   But--

8           MR. STREETER:  I would respectfully suggest that

9   that's not, that that's far too general an assumption in this

10  field.

11          Our view, again, is that this company has fallen

12  behind in meeting the needed features that are required by

13  customers in today's market.  And the kinds of things that it

14  is doing to catch up are highly relevant to the case we will

15  make in this respect.

16          So, I mean, you're assuming the answer to the

17  question, which is that they are current and that they are

18  always remaining current.  If they are working on features

19  that most competitors in this marketplace installed and began

20  offering customers five and six years ago, that will certainly

21  be relevant to the--

22          THE COURT:  Well, what's relevant is whether they

23  have them or not, whether they are working on them or not.

24  And you know what their features are on their current

25  products.  And they're saying that, you know, the claim is

1   based on what the current products are, not on what may be in

2   the work for future products, right?

3            MR. SUNDERMEIER:  Your Honor, I would point out too

4   that since the time that Palantir began obtaining our

5   products, they got version 6, version 7, version 8, version

6   8.5, so there have been four versions in the last four years.

7   We do constantly update.

8            This would be an enormous undertaking.  And I'm not,

9   again, I'm not sure I see the relevance of it, particularly

10  since if they are asking for information relating to lost, you

11  know, client dissatisfaction with our products, or client need

12  for different features, that's the sort of stuff that falls

13  within other categories we have already agreed to produce.

14           So, we feel like we have already agreed to produce

15  the core of what they want here.  And, you know, there is, if

16  there are specific things again that they want relating to the

17  competition, that's different than every document relating to

18  all our product development.

19           THE COURT:  Well, I have ordered some documents to

20  be produced having to do with competition and what your market

21  share is and what you will need to do for the products at

22  issue, and I think that's sufficient.  I'm not going to

23  require a response to 54.

24           To the extent that there is any relevance, and I'm

25  still at a little bit of a loss to how what they may be

1    working on in the future would be relevant to what they are

2    providing today and what, whether their product that is

3    currently in the marketplace is competitive or not, is pretty

4    tenuous.

5            And I think under the circumstances of the, looking

6    at what, you know, the importance of the issues at stake in

7    the action and the burden of producing that type of

8    information, is certainly far outweighed by any limited

9    relevance that it may have.

10           Going to I guess now the communication issues in 28.

11   And I think the opposition that was filed didn't quite, I

12   couldn't track the number, there were some numbering issues I

13   think in your opposition.  You were--

14           MR. STREETER:  I believe that they referred to

15   request number 1, which was supposed to 28.

16           THE COURT:  28.

17           MR. STREETER:  And number 2 was supposed to be 29.

18           THE COURT:  29.  And 3 was supposed to be 30.

19           MR. STREETER:  Right.

20           MR. SUNDERMEIER:  Oh, my apologies.

21           THE COURT:  And 4 was supposed to be 55.

22           MR. STREETER:  Right.

23           THE COURT:  Okay.  Well, let me hear from Mr.

24   Sundermeier on those.  I mean, I don't really understand what

25   your objections are.  If you're sending copies of this

20

1  complaint out and marketing it as something or describing it

2  in some way, why wouldn't that be relevant to the issues in

3  this case?

4        MR. SUNDERMEIER:  Well, first of all, I think, one,

5  we're not.

6        THE COURT:  Well then--

7        MR. SUNDERMEIER:  But again, if the question is as

8  to whether, is there an agreement to produce, I mean, there

9  was a press release issued in this case.  Our question is

10  really is this an appropriate avenue of discovery.

11        We have advised them that we aren't sending this

12  complaint out and that our communications have been extremely

13  limited.  The issue is what's the relevance of customer

14  communications.

15        They're saying it has to do with the, you know, this

16  suit is somehow brought in bad faith, but they have got no

17  claim which would relate to that.

18        So, from our perspective with the communications we

19  have had with the customers concerning this, is not relevant

20  to the suit.

21        THE COURT:  Well, it depends on what the

22  communications say.  And I can't make a determination as to

23  whether they are or aren't relevant.

24        You could be sending communications to people

25  saying, you know, attached is the complaint, we filed this, we

1  don't really believe in it, but we filed it.  Or we don't

2  intend to pursue it.  Or you could be making statements, you

3  know, that are not in your interests that could be binding on

4  you if they were made by certain individuals.

5         So, I don't see the basis for you not responding to

6  document requests 28, 29 and 30.  I think those, certainly if

7  they relate to your dissemination of information or

8  descriptions or summaries of what your claims are in this

9  matter, could be relevant to the issues in this case.

10         33, Mr. Streeter, what is this one about?  This is

11  all documents related to any instance in which an i2 employee

12  obtained or requested information about a third party under a

13  name other than I guess his or her own name.

14         MR. STREETER:  Right.

15         THE COURT:  This is the two wrongs make a right

16  request, is that what you're trying to do here?

17         MR. STREETER:  Well, first of all, in the opposition

18  my understanding is that they have agreed to give us documents

19  relating to attempts to obtain confidential information under

20  a pseudonym.

21         And the whole COPLINK, LASD situation appears to us

22  to have involved a situation where there were efforts made to

23  obtain confidential information from Palantir on behalf of i2,

24  at least that's what the circumstances suggest.

25         And that is a situation in which i2 was actively

1    trying to combat integration with Palantir.  So, it directly

2    has to do with the pleaded claim that we have about attempts

3    to defeat any form of interoperability with Palantir.  And in

4    that situation there appears to be some evidence that there

5    may have been deception involved.

6          So, yes, we're interested in--  It's not a two

7    wrongs don't make a right situation.  But we do have a

8    specific customer example here where that was done.  And so,

9    we have asked a broader question here about whether there are

10   any other efforts surreptitiously to obtain confidential

11   information about Palantir.

12         MR. SUNDERMEIER:  Your Honor, if I could address

13   that.  The situation Mr. Streeter is referring to where

14   Palantir worked with a company that was recently acquired by

15   i2 called COPLINK occurred before there was any relationship

16   between i2 and COPLINK.

17         So, I'm not sure what the relevance of that has to

18   do.  It is also a product that is not at issue.

19         Nonetheless, we have agreed to produce any documents

20   relating to that situation that they are referring to.  And

21   we've also agreed to produce any documents relating to any

22   surreptitious attempt by us to get information relating to

23   Palantir, and we've told them in our interrogatories there are

24   none.

25         So, what they are really doing now is broadening

23

1    this and asking a sort of broader question, have you ever done

2    this anywhere else at any other time.

3            THE COURT:  Well--

4            MR. SUNDERMEIER:  And, you know, I don't see the

5    relevance of that.

6            THE COURT:  Well, let me make sure, your agreement

7    is to--  Is your agreement to provide them documents that

8    relate to you're attempts, any attempts, if any, to obtain

9    confidential information through a pseudonym?  Or is it only

10   confidential information relating to Palantir through a

11   pseudonym?

12           MR. SUNDERMEIER:  We agreed to do this with respect

13   to Palantir.  When this came up, their justification was,

14   essentially was two wrongs make a right here.  Their

15   articulation to us was, well, we want to see if you did this

16   because this relates to our, you know, our unjust, our unclean

17   hands and our unfair competition potential claims.

18           We said, look, if there is some concern about

19   whether we have ever done this with respect to Palantir, we

20   will provide you with that information.  And we responded to

21   interrogatories saying, there are no such instances where this

22   occurred.

23           So, that's what we have agreed to do.  Now they have

24   sort of changed their theories here and the request is, have

25   we ever obtained, tried to obtain information surreptitiously

1    from someone else.

2          And again, my concern is not, is really is that an

3    appropriate avenue of discovery?  It's not related to an

4    unclean hands thing.  There is not sufficient connection with

5    this for that to be an appropriate avenue of discovery.  It

6    doesn't relate to their products or competition between our

7    products.

8          And the incident they are concerned about, we have

9    agreed to produce documents.  And I think they are--  Because

10   there is no incident there.  In fact, the records will reveal

11   that we did not get anything confidential from them.  They in

12   fact they still have our confidential information.

13         THE COURT:  Well--

14         MR. STREETER:  Your Honor, there is a broader issue

15   here that I'm, and I'm somewhat reluctant to go into broader

16   argument because Your Honor has read the papers and has

17   indicated an interest only in addressing clarifications to

18   your rulings, but our counterclaim addresses not just A and B,

19   the analyst notebook product line.  It addresses both of the

20   product lines that i2 has, including COPLINK.

21         And it has to do with a business practice that i2

22   follows and that they are pursuing with respect to all of

23   their products having to do with attempts to block customers

24   from transferring data that is saved in the i2 products into

25   competitors' products, something that we believe is required,

1    that is desired by customers and is required by law.  And--

2              THE COURT:  Well, what law do you think requires

3    that as opposed to policy?

4              MR. STREETER:  It's in statute, it's in the statute,

5    it's 6 U.S.C. Section 485, et seq.  This is, there is an

6    extensive statutory scheme that we plead in great detail in

7    our counterclaim that has been implemented by a series of

8    policy guidelines that set standards in this area which takes

9    it out of the normal commercial context where efforts to

10   enforce license restrictions around closed file formats might

11   otherwise be perfectly fine.  Not here.

12             And we're entitled to develop a case and present in

13   support of our counterclaim evidence relating to all of the

14   products, not just the product A and B that i2 wishes to say

15   is in issue because that's what it pleaded in its complaint.

16             So, particularly deceptive or conduct that is

17   undertaken by artifice to try to enforce--  They are literally

18   trying to enforce walls between government agencies and the

19   data transfer between government agencies.  And we think that

20   that raises very, very serious issues.  And that's why we're

21   conducting discovery that gets at what they've done to try to

22   enforce those restrictions.

23             So, you know, and that's implicated here.  It's

24   implicated in requests 1 through 4 which have to do with

25   interoperability more generally.  And i2 is trying to force

1    this case back into the prism of their own complaint, ignoring

2    the fact that we have placed in issue a far broader set of

3    issues having to do with all of its product lines and this

4    particular business practice.

5           THE COURT:  Well, I'll require a response to

6    document request 33, but limited to the time period from 2006,

7    and obtain or requested any confidential or trade secret

8    information from a third party.

9           So, I'm not talking about any information.  That is,

10   if I wrote to somebody and said, please send me your product

11   brochure and used a different name.  It has to be confidential

12   or trade secret type information for the time period from 2006

13   to the present.

14          Okay.  Document request number 55.  Mr. Sundermeier,

15   are there any documents that would be responsive to document

16   request number 55?  All documents and things relating to any

17   efforts by you to copy or create something similar to the

18   features, look and feel.

19          MR. SUNDERMEIER:  My--

20          THE COURT:  Well, let me hear what your objection is

21   to that one if you really do have an objection to 55.

22          MR. STREETER:  I am trying to remember, Your Honor,

23   if I, what was the final discussion was there because I

24   believe we did agree to produce certain information that was

25   asked for, information relating to competition between the

1    parties.  We basically agreed to produce the information

2    relating to any competitive intelligence on Palantir.

3            So, I don't think that, I am not sure this one is

4    still even at issue.  But again, I'm not sure--  The fact is

5    that like all companies, we keep track of what other

6    competitors are doing in the marketplace, and look at new

7    developments and features.  That's different than going and

8    taking their technology, but--  And we agreed to produce that

9    kind of competitive intelligence with respect to Palantir.

10           We objected to this request I think primarily

11   because this is going to their two wrongs don't make a right

12   defense or two wrongs do make a right defense.

13           We're not sure what this has to do with the case.

14   There is no issue here as to whether or not, there is no

15   allegations that we stole their technology or that we copied

16   their technology.  They haven't identified any of our

17   features.  In fact, all they do is say our features are

18   essentially antiquated and outdated, outmoded.  And they

19   aren't saying that we have taken any features from them.

20           So, to ask for this kind of specific request seems

21   irrelevant.

22           If there is something there, Your Honor, we had this

23   discussion, if they think there is something we took from them

24   or that we copied in some way, we can address that issue.  But

25   that's not part of this case as far as I am aware.

1          MR. STREETER:  Your Honor, Palantir takes a very

2    different view of this situation.  Palantir does believe that

3    i2 has been systematically attempting to mimic Palantir's

4    product line, and it has done that in a number of ways.

5          Palantir has a very different approach to business.

6    It is an open company.  It is not a company that tries to

7    restrict by license or other means what it's doing.  So, it's

8    not a surprise that other customers are trying to meet its

9    standard.

10          But what this goes to is causation.  If i2 is

11    attempting to chase Palantir because Palantir has better

12    features in any number of different areas, and that is the

13    reason that customers view Palantir as being far superior to

14    i2, that's going to be highly relevant to causation.

15          When i2 attempts to claim that it is because of the

16    importing functionality that was created, that's the reason

17    that customers switched, we will say, no, it's because our

18    analytical capabilities were vastly superior.  Palantir can

19    take and analyze data from any data source from around the

20    world.

21          I2 is limited to its own file formats, and that

22    imposes a very tight restriction on what customers can do.

23    And customers are tending to prefer the way that Palantir sets

24    up it's user interface in any number of ways.  And we ought to

25    be able to show that customers are demanding, wanting a user

1   environment in a--

2          THE COURT:  Okay, I understand your argument.  I

3   will require a response to request for production 55.  I think

4   that arguably has some relevance to the issues having to do

5   with the damages side of this case.  And if in fact there are

6   such documents, they should be produced.

7          Okay.  I think that's taken care of the broad range

8   of documents that have been presented in these motions.

9          Okay.  Thank you, counsel.

10         MR. STREETER:  Thank you, Your Honor.

11         MR. SUNDERMEIER:  Thank you, Your Honor.

12         NOTE:  The hearing concluded at 10:15 a.m.

13   -------------------------------------------------

14
     C E R T I F I C A T E  of  T R A N S C R I P T I O N
15

16         I hereby certify that the foregoing is a true and
     accurate transcript that was typed by me from the recording
17   provided by the court.  Any errors or omissions are due to the
     inability of the undersigned to hear or understand said
18   recording.

19         Further, that I am neither counsel for, related to,
     nor employed by any of the parties to the above-styled action,
20   and that I am not financially or otherwise interested in the
     outcome of the above-styled action.

21

22

23                            /s/ Norman B. Linnell
                              _____
24                            Norman B. Linnell
                              Court Reporter - USDC/EDVA
25