UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| i2 INC., et al., Plaintiffs, -vs- PALANTIR TECHNOLOGIES, INC., et al., Defendants. | Case No. 1:10-cv-885 |

HEARING ON MOTIONS

January 14, 2011

Before: Mag. Judge John F. Anderson

APPEARANCES:

Robert R. Vieth, Counsel for the Plaintiffs

David J. Silbert and D. Bradford Hardin, Jr., Counsel for Defendants Palantir, Sankar and Sinensky

NOTE: The case is called to be heard at 11:17 a.m. as follows:

THE CLERK: I2 Incorporated, et al. versus Palantir Technologies, Incorporated, et al., case action 1:10-885-cv.

MR. HARDIN: Good morning, Your Honor. Bradford Hardin on behalf of Palantir Technologies.

It is my pleasure this morning to introduce to the Court David Silbert with Keker & Van Nest. His pro hac vice application is pending. With the Court's permission, he will be arguing the motions this morning.

THE COURT: Thank you. Glad to have you, sir.

Mr. Vieth.

MR. VIETH: Good morning, Your Honor. Robert Vieth of Cooley for the plaintiffs.

THE COURT: Okay. Thank you, Mr. Vieth.

Well, I at least kept you from having to hear an hour's worth of other motions this morning.

Okay. Well, I've got, first I will deal with the four motions to seal. Is there anybody here in the courtroom here to object to the entry of orders to seal motions 176, 181, 191 and 201?

Okay. Well, I have reviewed those materials and I think under the circumstances and the standards for nondispositive matters that relate to those motions, that I will grant those orders granting those pleadings to be filed

under seal and maintained under seal.

Okay. Let's take up the motion to amend, 194. And I think the only thing that I really need to hear from the parties on that is, has to do with-- Well, I guess, you know, first of all, I assume there is no problem on Palantir's side that if I do grant this leave to file the amended answer with an additional counterclaim, that the arguments that went to the declaratory judgment counterclaim aren't mooted by the filing of this amended pleading, is that correct?

MR. SILBERT: That's correct, Your Honor.

THE COURT: Okay. And, you know, Judge O'Grady I think is, he has gotten your additional submissions. He has reviewed those. I can't say that it's imminent that a decision is on its way, at least the written decision, but I did want to clarify that that's not going to have to be rebriefed or reargued in front of him, and he will decide that issue on the papers as they have been presented.

I guess the only other issue that I have got on that, on the amended pleading has to do with whether any of it needs to be filed under seal. And if so, obviously, this would have to qualify for the heightened standard of being, you know, an issue that relates to specific claims and defenses and things like that.

So, it's probably more Mr. Vieth's burden on that one as to whether there is anything in the, I guess the

factual allegations concerning the amended counterclaim that would need to be under seal.

MR. VIETH: Well, Your Honor, let me address that, and I will direct the Court to specific paragraphs that we think do need to remain sealed.

But, Your Honor, procedurally as well, when we did-- I shouldn't say we opposed. When we responded to the motion to amend, we did point out to the Court that we reserved the right for leave to, or reserved the right to move to dismiss or strike certain allegations. And we do believe there are allegations in this counterclaim that bear little relationship, if any, to the copyright counterclaim. And I am talking about the second claim for relief in the counterclaim.

Specifically, Your Honor, at paragraphs 199 to 202, in our opinion, are matters that we think are inserted having very little relationship to the counterclaim for copyright infringement.

And, Your Honor, I will say to you, you did catch us a little bit by surprise for asking for briefing on this, or asking this to be addressed this morning because I thought there might have to be a motion to lift the seal because in the absence of that, the protective order continues to govern.

We would be glad to address this on papers if the Court prefers, but--

THE COURT: Well, what my-- Procedurally what

happens is that I grant leave to file the amended pleading and then the amended pleading has to be filed.

MR. VIETH: Yes, sir.

THE COURT: And, you know, the question then comes as to whether I am going to order that the amended pleading be filed without any redactions or allow it to be filed with redactions to be litigated later, and whether there can be some agreement at least among the parties now as to what portions would need to be redacted, if any. And then we can litigate the issue of whether it meets the standards, I guess is the-- So, I'm hearing from you that your client believes that there are certain paragraphs in the proposed amended pleading that should be filed under seal?

MR. VIETH: Yes, sir.

THE COURT: And you think that you're going to be able to satisfy the Court that if those allegations are not stricken pursuant to any motion that you may file, that you would be able to meet the Fourth Circuit's standards of Ashcroft and the Virginia Department of State Police for the filing of pleadings under seal?

MR. VIETH: Well, I think so, Your Honor. And I do have a case that I would like to cite to Your Honor. It is from the District of Delaware. And by the way, I did let opposing counsel know yesterday, admittedly pretty darn late in the day, of this case as well as others.

But the case I would cite to the Court is Accenture Global Services against Guidewire Software, it can be found at 631 F.Supp. 2d 504. It is from Judge Robinson in the District of Delaware, Your Honor. And factually or procedurally it is quite similar to this case. One of the parties sought to amend its claim based on discovery material that had been designated confidential. The judge, Judge Robinson, felt that there was a serious question at least as to whether it satisfied the standard of, I believe it's Rule 12(s) of scandalous material that really did not pertain directly to the claims or perhaps could be subject to a motion to strike. And Judge Robinson ordered that claim sealed pending further developments, Your Honor.

And I will say Judge Robinson recognized that it was presumptively open because it was attached to or part of a substantive pleading as opposed to pure discovery material in that case.

And I will also point out that the Third Circuit seems to be quite in line with the Fourth Circuit on the standards for sealing. So, I don't think there is any suggestion that it was not raised or overlooked or casually reasoned in that case. And we do think it is very hard to distinguish that case from this case.

And I believe I have given Your Honor the paragraphs, the paragraph numbers that we think are

appropriate to be sealed, and I am happy to address those.

THE COURT: Well, other than paragraphs 199 through 202-- Let me make sure that I have got that--

MR. VIETH: Those numbers are correct, Your Honor.

THE COURT: Okay.

MR. VIETH: Excuse me, did I say-- It is 198. I said 199, I apologize. It does start out at 198.

THE COURT: 198.

MR. VIETH: I apologize, I think I did misspeak on that. Those are the paragraphs that we think should remain sealed in this case.

THE COURT: Just so we're-- I mean, 198 through 202?

MR. VIETH: Yes, sir.

THE COURT: Okay. So, 203 through 206. 203, 204, 205--

MR. VIETH: Actually, Your Honor, I do apologize. As I look at 205, there are portions of 205, the reference to i2 software program that is unreleased, should be redacted as well.

Your Honor, the reference to the-- The matters that I am, that I think are appropriately unsealed are the references to the Palantir document that allegedly was copied, or infringed if you will.

THE COURT: Well, I am going to grant the motion for

leave to file the amended pleading.

What I am going to do is, Mr. Vieth, just outline because, obviously, Mr. Hardin is going to be the one who is going to have to file it, and the order will be that you, you know, have to file electronically the amended pleading that I am giving you leave to file. So, you will have to take the next step and file it.

You know, I want the two of you to outline what it is that you think needs to be redacted from that. You will need to file it in a redacted version, and also file the complete version.

Mr. Vieth, I want you to really take the laboring oar in filing the motion to file that pleading under seal.

MR. VIETH: Yes, sir.

THE COURT: So, just coordinate that. I mean, I don't think it really, given where we are in this case, that it makes more sense for you to take the laboring oar and presenting the arguments as to why you think it should be filed under seal.

And I understand that, Mr. Hardin, you may or may not agree that it should be filed under seal, but I think in order to preserve the issue for the Court it will be required for you to file it under seal. And then we can deal with the issues of whether it remains under seal or not subject to a motion that Mr. Vieth can file.

The timing, when do you anticipate that you would file it? This week? Next week?

MR. HARDIN: Your Honor, we're prepared to file the amended answer and counterclaim subject to the redactions of the paragraphs that Mr. Vieth has outlined here today later today.

THE COURT: Okay. Well, go ahead and do that then. Well, the brief to file it under seal--

MR. VIETH: I have a thought, Your Honor, if I--

THE COURT: Okay, let me hear it.

MR. VIETH: Perhaps procedurally it might make sense to merge that with a motion to strike, although maybe we do run into difficulties as to whether Your Honor or Judge O'Grady is the appropriate one to hear that. But it's just a thought off the top of my head.

THE COURT: Well, yeah, I mean, the motion to strike the pleadings are going to, I am pretty sure will be a Judge O'Grady issued since that probably goes beyond my purview. Whether to keep something under seal or not is something that I would do if-- But if it's going to be removed from the pleadings themselves, I think that's probably a Judge O'Grady issue, not a magistrate judge issue.

The only thing I'm concerned about is procedurally filing something and giving Mr. Vieth enough time to put together the motion for, to support the filing under seal.

MR. HARDIN: Your Honor, we're willing to accommodate the reasonable schedule as dictated by the Court.

THE COURT: Well, what--

MR. VIETH: Your Honor, we would like to keep things moving. We can file by next Friday if that's--

THE COURT: Okay.

MR. VIETH: -- okay with the Court.

THE COURT: All right. Why don't you go ahead and, you know, there may be a chance that we can avoid all of this at some point. Which, you know, I would love to be able to do if we are able to do it.

Well, I'll tell you what I'll do-- And I don't-- Mr. Hardin, would you have any objection to me granting the motion but not requiring it to be filed immediately but to file next week?

MR. HARDIN: I think we are amenable to that, Your Honor.

THE COURT: Okay. Well, what I am going to do is I will grant the motion, and then let counsel coordinate the filing of the amended pleading by the end of next week along with your motion to file it under seal. And then you would then, I think once it gets filed, have the opportunity to file a motion to strike or whatever.

But the motion to seal the material would have to be filed along with the amended pleading. Okay.

MR. VIETH: That's acceptable to us, Your Honor. I am assuming Your Honor does not want us then to notice the motion to seal to be heard the following week? Maybe you do. I just want to be, be clear.

THE COURT: Well, I think you could notice it either the following week or the week after-- It's going to need to be noticed for a hearing. How quickly it gets noticed for a hearing, it really doesn't matter to me. It will remain under seal until-- It can't be noticed for eight months --

MR. VIETH: Yes, sir.

THE COURT: -- or later or something like that. But as long as it's noticed for a hearing fairly quickly, then I think we can deal with that issue.

MR. VIETH: Very well.

MR. HARDIN: Thank you, Your Honor.

THE COURT: Okay. All right, we will get to the more substantive motion I guess now. It has to do with requiring supplemental responses to a number of discovery requests.

And I have reviewed all the pleadings, which were substantial, for this motion. And it is a pretty serious motion that I thought required analysis by the Court. And, you know, I tell you that based on what I have reviewed, is that, you know, Mr. Yerman has probably made a showing that more information is appropriate under the circumstances of

this case. That there is at least a viable damages theory out there that would cover sales of products that include, even if not using, the importer capabilities.

That said, I mean, I will give counsel for Palantir an ability to try to convince me otherwise, but that's my leaning coming in here today. How that relates to the particular discovery requests I'll get to once I've made the final decision on that issue of revisiting my earlier decision at least on some of these document requests.

MR. SILBERT: Well, I guess it's that last issue that I would address, Your Honor, because what we believe is although Mr. Yerman has said in his affidavit there were various damages theories that could apply for which one would want to know or at least consider the revenues from sales to all customers that purchased a product that included the feature, even those who never used the feature, that revenue information has been provided and provided in multiple ways and in some significant detail. It's a spreadsheet that was provided to counsel and that we've attached that I know the Court has reviewed that breaks down revenues by month for the Palantir Government product and breaks them down further by the software, by services and various other associated revenue streams.

And so, our position is, while it may be true theoretically that Mr. Yerman would like to know the revenue

information, he has that revenue information. And so, the specifics of the motion, which were the contracts, the actual contracts with the other customers who've never used this functionality that's the subject of the case, is something that we believe Mr. Yerman's declaration doesn't address that.

THE COURT: Why wouldn't it? If I have a contract that provides for services going out ten years, the revenues that you have provided to them and I entered into it, you know, in 2009 and it contained an allegedly infringing part of the system, you know, it's important to me as a damages expert to know that there is this revenue stream that may be coming in as opposed to the revenue that was booked in 2009 and booked in 2010, right?

MR. SILBERT: Theoretically, yes.

THE COURT: So, having the contracts and the terms of the license agreements is needed in order to look at what the entire picture is on the damages end. It may give you a 30,000-foot view of what happened in 2009 and maybe 2010, but there is the ability to continue to accrue damages if you are going to be getting income later on from a product that has an infringing component to it.

MR. SILBERT: I guess I'd say that one couldn't rule out the possibility that that type of analysis might play into a damages consideration here. I don't think as a practical matter it does or would. And I think it would be highly

unlikely that it would because there is going to be a trial in the near future, if there is going to be a trial, that's going to establish the rights of the parties with respect to the features.

So, future revenues that might be received and might never be received I don't believe would be part of a damages opinion and certainly any damages award which would cover past damages.

But I guess-- I mean, and I think the, it's the revenue information that's the key information. I think it's-- To think of sort theoretically the contract might provide for X, Y, Z which might be relevant is an exercise that could lead to anything being relevant if you think about it that way.

THE COURT: Well, maybe it makes more sense for me now to-- I think I understand what your concerns are and I think I understand what the issues are. Let me go ahead and we'll deal with the document requests first and then we'll deal with the 30(b)(6) deposition at the end.

Mr. Vieth, let me get you up first.

MR. VIETH: Yes, sir.

THE COURT: Second set of document requests number 6.

MR. VIETH: Yes, sir.

THE COURT: The "both before and after" language,

why shouldn't I just limit that to contracts or license agreements for the Palantir Government applications after Palantir developed the features?

MR. VIETH: Well, Your Honor, we don't know if anything has been-- There may be a contract in the before time period that could be open-ended by its terms as to which Palantir could have offered the feature to that customer.

And I don't believe as a practical matter we're talking about too many contracts in the before period, although I don't have a great handle on that. Maybe opposing counsel could address that a little more directly. But I think it's very few. And, therefore, I think it's somewhat relevant at a minimum and not terribly burdensome. So, I do think--

THE COURT: Well, if you get the, if you get that combined with documents sufficient to show all sales or licenses, wouldn't the combination of those two give you everything you're entitled to?

So, that is, if there was a preexisting contract and then there was another sale or license that was a tag-on to that preexisting contract in which they were provided with additional components that had the allegedly infringing material in it, then you would get those documents--

MR. VIETH: Yes, sir, I think that-- As to that topic that we're discussing, the contractual terms, I do think

that would address that, Your Honor.

THE COURT: All right. Well, I'm going to-- Well, let me-- Other than what you've indicated as far as your concerns about the specific terms of the contracts and license agreements, the limitation of, you know, after Palantir developed the features that enabled its Government application to import data from i2 products, I will hear from you as to why that should not be required.

MR. SILBERT: Thank you, Your Honor. And could I raise one additional issue related to that same term? We understand request number 6 to end at the time that Palantir stopped shipping product with the importer functionality.

So, in other words, current products that are being shipped that don't have that functionality, Palantir wouldn't have any obligation to produce contracts related to those products, which are clearly not infringing under any view.

THE COURT: And that was in, once this lawsuit got filed you--

MR. SILBERT: After the lawsuit was filed.

THE COURT: Okay. Mr. Vieth, what about that limitation?

MR. VIETH: Your Honor, first, I do think, and we put this in our papers, that Palantir has done everything it can to try to limit the infringing functionalities at issue to the importer product. And we are not, do not concede that by

any means because we have been after them for what has been termed an exporting functionality. There is an iBaseCrawl functionality. And there may be a feature iteration of that.

The code review and other documentation is ongoing. And it's a little unclear on exactly, you know, the extent to which there was infringing material in these other functionalities.

So, I do want the Court to be aware that we're not limited to the importer functionality here. So, that may address part of what Palantir just advised the Court.

As to future contracts, Your Honor, we do think that if there is a marked difference in terms, including financial terms, that took place after this one particular functionality was removed, that in itself would be relevant. But the mere fact that only one of the functionalities at issue was removed certainly makes it clear that all contracts we think to date are at issue in this case.

I don't mean to suggest, by the way, by my remarks that Palantir admits that there is more than one infringing functionality in there, but I do think they've only removed one. And that's my understanding at least.

THE COURT: Well, the other infringing components or possibly other infringing components, are they relating to the importation of data from i2 products or not?

MR. VIETH: At least one of them is, the iBaseCrawl.

The other one has been termed an exporter. And it's my understanding it sort of moves in the other direction, as you might understand. But it certainly relates to the integration of data between Palantir products and i2 products. And I think, depending upon how you look at it, one could say there is some importation and exportation going on in each of these, each of these functionalities.

MR. SILBERT: Your Honor, I think I can shed some light on this.

THE COURT: Okay.

MR. SILBERT: The iBaseCrawl feature has been discontinued along with the importer feature. So, the Palantir products, Palantir Government products that are shipping currently do not include either of those features.

The exporter feature, to the extent it is used at all, is a plug-in that is not shipped with the code itself. So, somebody would have to get that separately as a separate plug in.

THE COURT: And when did the, when did you stop with the iCrawl, iBaseCrawl?

MR. SILBERT: That was discontinued before the lawsuit was filed.

THE COURT: Well, I mean, given the fluid nature of and I think the current inability of i2 to feel confident that everything has been removed and not being sold now, that I am

not going to limit it to the time period in which either the iBaseCrawl or the importer feature, the analysis notebook weren't part of it.

I am going to require a response that deletes the "both before and." So, that it would be copies of the contracts and license agreements entered into between Palantir and any customer for the Palantir Government applications after Palantir developed the features. So, that will be from that time period forward.

The third set, document request number 58. I take it the only reason this would not be duplicative of number 6 is if in fact some of those applications were not part of an existing, of a contract that had been entered into after Palantir developed the features that enable its Government applications. It was actually delivered after, but delivered after pursuant to some other arrangement separate from the contract.

Is that why you've asked for 58 in addition to number 6?

MR. VIETH: Yes, sir, Your Honor. We just don't know what documentation has been used. And so, we wanted to be, pick up every instance.

THE COURT: Okay. Any-- I think under the circumstances I'm going to grant the motion and require a response to number 58.

Number 59, Mr. Vieth, why do you need that in addition to what you've already gotten in 6 and 58? What additional information is there in 59?

MR. VIETH: Your Honor, I think if 6 and 58 are clear as to what the customers are, and that may be an issue, perhaps it would take care of it.

But in addition to that, 59, as well as I believe 61, are a little bit broader and would pick up requests for proposal in addition to contracts. And that can be relevant here, Your Honor, because if I can point the Court to one example where the contract--

THE COURT: Well, 59 doesn't go to proposals, does it?

MR. VIETH: Well, documents sufficient to identify, skipping now, purchase terms and for sales and licenses it's--

THE COURT: Contracts for the sale or license of these products. So, that would only deal with the customers, the terms and the contracts for the sale or license of the products.

Customers, it doesn't say potential customers. I agree, 61 deals with, I think, you know, offered or agreed to. So, I think 61 is broader than 59.

MR. VIETH: Okay.

THE COURT: Well, I--

MR. SILBERT: May I-- I'm sorry, Your Honor.

THE COURT: Yes, please.

MR. SILBERT: One issue with 59 which relates to a matter that the Court may be taking up later with respect to the 30(b)(6) deposition. But I believe that 59 largely does overlap with 58, and there may be nothing else to produce. But to the extent that there are certain customers whose identities are classified and we're disclosing the identities, would require disclosure of classified information, that raises a separate bundle of issues.

So, I just want to put that on the table.

THE COURT: Yeah, we'll deal with. But I have got to tell you, my inclination on that is you're going to have to file a protective order. So that I am going to grant the motion-- To the extent that any of the discovery requests that I have granted require you to do what you think would violate your national security concerns, then you're going to have to file a motion for a protective order and outline that specifically as to why you're not entitled, or why you're not obligated to produce the responses that I've ordered.

MR. SILBERT: Okay.

THE COURT: So, I mean, you know, I'm going to deny the motion to compel number 59. I think that really is duplicative of what has been asked for earlier.

And so, on that front, you know, I think having ordered responses to 6 and 58, that it's not necessary to

grant 59.

As to document request number 60, you know, let me hear from Palantir's counsel as to, given my earlier rulings, what, if anything, I should do to modify number 60. I mean, I think it's pretty clear given what I've said that that is probably a proper request.

MR. SILBERT: There may be nothing additional to produce in response to 60. But if there is, I believe the same limitations that the Court applied would apply here.

THE COURT: And I think the same goes for 61. You know, 60 and 61 I think are pretty much asking for the same thing, maybe in a little bit different language. You know, whether it's a customer or whether it isn't a customer, but if it's a third party, it obviously isn't Palantir, but I think under the circumstances that I will grant the motion to compel both document request 60 and 61.

65, let me hear from you, Mr. Vieth, on the scope of this. I don't quite understand the way 65 is written.

MR. VIETH: Well, Your Honor, 65 is designed to pick up documents related to services, which is a component of, Palantir offers services in conjunction with its software as well, which is not unusual, of course. And the integration services we think could be the direct result of infringing activity.

Now, we did I think earlier in an earlier

proceeding, it's my recollection, we may have touched on this or a similar request, but we think as phrased this request is appropriate.

And I believe Mr. Yerman has done, I don't have the paragraph number, but he also in his declaration addressed the compensation for services as something that might be compensable.

THE COURT: But it's services for work done-- I'm trying to understand the scope of what it is for the professional services. Is it limited to work that was done with a program that has the ability to import i2 software?

MR. VIETH: Well, as worded it is not so limited. And I do believe this is something we touched on in an earlier proceeding. At least that's my recollection, I could be wrong.

But clearly we think we have a claim that goes to compensation for services related to integration of Palantir's system with i2 software.

Beyond that, we think it is important to be able to segregate out services and compare it to compensation for other services, if there are any services to integrate with others as well. I understand the Court may have a concern about that, but we do think it's appropriate to, if nothing else, in the apportionment part of the damages case, if you will, to be able to compare these things.

So, we think as worded it is appropriate for the production here. And it's documents sufficient to show. It is not designed-- You know, we tried to keep it from being overly burdensome.

THE COURT: And what's the time period for number 65?

MR. VIETH: Well, again, Your Honor, I think, I think the time period should be no different than what we just addressed for the first two requests at issue here, 6 and 58, for the same reasons.

THE COURT: Okay.

MR. SILBERT: I think that the issue that the Court identified is exactly the right one. It's one thing for i2 to ask for documents relating to services to integrate an installation with i2. It's an entirely separate thing for them to ask about, for documents about integrating and installation specifically with formats that are not i2 with other competitors. Which is something that gets into, obviously, sensitive information of customers and of Palantir as well, and something that they really have no need for.

THE COURT: Well, I am going to limit 65 I think to professional services related to the importation for the software programs that have the ability to import data from i2 software. I think that's, that in and of itself will provide a time limitation because it's only from the i2 software

importability issue that that comes into play.

MR. VIETH: Your Honor used the term "import data." Could I suggest "integration of data" so that we don't leave an opening to try to limit this further.

THE COURT: Yeah. Well-- I think "integration of data" is, given the issues that have been presented, that that is probably an appropriate limitation, Mr. Vieth.

MR. SILBERT: May I-- I am sorry, maybe I am getting too detailed here. But the request as I read it asks for documents to show the services performed to integrate. And the limitation that we believe would be appropriate would be to integrate with i2.

So, if a Palantir forward-deployed engineer is at a customer site and doing, there are documents that reflect that person doing work to integrate with another format not i2, that document would not be responsive. If a document shows integration work to integrate with i2, then that document under the Court's ruling would be responsive.

I am not sure if that's what you said or if I am just getting confused.

THE COURT: Well, I am a little concerned because I'm not sure how you're going to be able to differentiate from what the people did on their professional services.

So, I'm--

MR. SILBERT: Well, I mean, the short answer to that

is we absolutely know what they did. And we know to a certainty with which customer's, which customers have used the integration feature to integrate with i2. So, it's not going to be a problem to identify that.

THE COURT: You say that, but I get the sense that you haven't convinced the other side that you know that with certainty.

MR. SILBERT: They certainly express skepticism about that, but their characterizations of the process that was employed and of the knowledge that Palantir has to understand who was using the feature and who has not used the feature, is something that we disagree with very heavily.

And I know this is something that's been discussed at prior hearings, but this is a situation where a customer really cannot use this integration feature without an IT, excuse me, a Palantir engineer there setting it up for the customer.

It's not designed to be used by a customer. It's designed to be used by engineers, and that's the way it is structured. It's not a matter of pulling down, you know, a drop-down menu and saying integrate.

So, you know, that's the-- The answer is we know who has used it and who hasn't, and the vast majority have never used it.

Yeah, I would note that without a limitation like

this, there would be, that I've just been discussing, theoretically Palantir would need to produce documents about engineering and integration services for customers who don't have any i2 product or any i2 data to integrate, which doesn't, which doesn't make sense.

THE COURT: Okay. Well, I will limit 65 to the, you know, documents sufficient to show all professional services or work done by Palantir employees for the integration of i2 software.

I think that the limitations you've talked about is appropriate, that relate to the integration of data from i2 software.

Mr. Vieth, I will hear from you on 68.

MR. VIETH: Your Honor, 68 essentially goes to a customer list. And again, Mr. Yerman supports this request because sometimes the customers are not using the exact same name. And this, if nothing else, I think there are multiple reasons for relevance here, but one that's pretty clear is any lost profits calculation. And to do that, you have got to be able to identify customers and compare them from one side to the other.

And we do not have a customer list from Palantir. They do have ours. And it needs, they need to be matched up. And if we get the contracts, that will offer a glimpse. But I have got to tell you, these contracts are not necessarily

clear on their face as to who the customer is. And that in turn begs additional questions as to is this really a customer, you know, of ours under a different name or a different branch, yet fits a lot of the same people and that sort of thing.

So, we think a list is appropriate. It may not solve all of the problems, but it would go a long way toward being able to match up customers between the two companies.

THE COURT: Why from 2006?

MR. VIETH: We believe the-- Well, 2006 is when the alleged theft occurred, started to occur. The first--

THE COURT: Well, the first --

MR. VIETH: The first--

THE COURT: -- product was 2007, right?

MR. VIETH: That's what we believe.

THE COURT: All right.

MR. VIETH: We believe it was not offered to customers until 2007.

THE COURT: And why all customers?

MR. VIETH: Well, we do believe for most of the time period we're looking at here, all customers received infringing product.

And again, Your Honor, unfortunately, some of what I am just talking about and I believe some of what opposing counsel just represented to the Court may have been limited to

what has been called the importation feature, and that is not the only feature at issue.

So, for the two-year period that we have been referring to, that relates to the importation feature. There is no such limitation on what has been called the export feature. And the iBaseCrawl feature is a little bit more complicated as well. Because while that's been discontinued, we are exploring whether some of the functionality in that, or not just functionality, but infringing aspects of that have been carried into a product that is still being offered.

So, none of this, unfortunately, is terribly clear.

THE COURT: Okay. What about documents to show the customer lists from 2007 forward, I will hear from you on that.

MR. SILBERT: I think that-- Well, there are two concerns that I have with it. First of all, I believe it ought to be limited to customer lists for customers who purchased software, Palantir Government software with the ability to import data from ANB. Which, again, is the subject of the case.

And second, the only other concern is the one I mentioned earlier regarding the identity, the confidentiality of the identity of certain customers.

I guess I would note for whatever it's worth that the term "customer" might be vague to a certain extent. I

mean, the customer sometimes is the Department of Defense.

Now, what was asked in deposition was, well, which specific unit or entity, et cetera, of a particular agency. And that at times in certain instances started getting into information that raised concerns.

THE COURT: I am going to grant the motion to compel a response to document request number 68, but limited from 2007 to the present. Obviously, it can be produced under the attorney's eyes only designation to alleviate the concerns of confidentiality. But I do think that under the circumstances that information from 2007 forward could relate to relevant information in this case.

Okay. As to the 30(b)(6) topics, 15 has been resolved.

I will hear from Palantir about number 40. And I guess-- I will go ahead and deal with the-- You know, in granting these discovery requests and in dealing with this 30(b)(6) topic, when we're talking about the national security concerns, I just want to make sure that we're clear on this. You know, I'm ruling that the information that has been sought is relevant and discoverable.

If you believe that there is a basis to seek a protective order under the Federal Rules of Civil Procedure, it's your burden to come forward and show me and convince me that you're entitled to a protective order.

So, you know, I am not sure that that process was followed appropriately in the depositions that were noticed and instructions not to answer without, you know, adjourning the deposition and seeking a protective order or doing something or contacting chambers or doing something in that regard.

But just so we're clear, if you are going to try and withhold any information in this case based on a concern of national security, it is going to be your burden to move for a protective order and establish that to the Court. Okay.

MR. SILBERT: Understood, Your Honor. If I could just address briefly in this deposition I believe why that wasn't done was there really was no dispute. And i2's counsel said quite clearly, I understand. Obviously, I am not going to ask you to disclose that information. And then the motion was filed. But we certainly understand going forward, and we will bring such a motion.

THE COURT: Okay. And, you know, maybe you can work it out, I don't know, but I'm just saying, I think the burden is really on you to seek a protective order and to go that way.

So, you know, given my earlier rulings and my discussion about the need to get a protective order, I will hear from you on topic number 40 about the identity of the customers and licensees for the products at issue and the

terms of the agreements.

I mean, you're going to be producing the agreements and --

MR. SILBERT: Right.

THE COURT: -- that should to some extent identify the customers and licensees. But why shouldn't, if they have a question about, you know, what does this provision mean, have a designee there to provide that information?

MR. SILBERT: Well, I don't think we object to that, Your Honor. The 30(b)(6) topics 40 and 44 duplicated the document requests that the Court had previously limited.

And so, all we did was apply the same limitation to the same information. To the extent the Court has modified its order now, I think simply the same procedure would apply. The witness would be prepared, as he was, on the different set of information that the Court has now ordered produced.

Well, I think given my rulings, reconsidering my earlier limitation and allowing more information to be, or requiring more information to be provided, that it is appropriate for me to grant the motion to require additional deposition as to number 40 and 44 on the 30(b)(6) topics.

MR. SILBERT: And, Your Honor, just, maybe this clear, but to be clear, when you say grant the motion, you mean to the same extent and with the same limitations as you applied to the document requests?

THE COURT: Correct. Right.

MR. SILBERT: Thank you.

THE COURT: Okay. Anything else, Mr. Vieth?

MR. VIETH: A point of clarification, Your Honor. On document request number 61, before we had gotten to it I had mentioned request for proposal. When Your Honor ruled open that, you did not, I'm not sure we were crystal clear on that.

We believe it covers requests for proposal. We think there is a good reason why requests for proposal should be produced.

THE COURT: Well, 61 I think does.

MR. VIETH: I believe it does too, Your Honor. I just wasn't 100 percent-- I was just asking for clarification.

THE COURT: Offered or agreed to do. So, I mean, I think offered, in looking at 61, you know, that-- And that's why I considered that as not being duplicative of the others is because it shows the terms under which they offered or agreed to do certain things.

MR. SILBERT: Your Honor, I am a relative newcomer to this case, but my understanding is that the Court had previously ordered, I believe in response to document request number 81, that requests for proposal that mentioned or required integration with ANB as one of the terms be produced.

So, I don't know to the extent 61 covers requests for proposal, I understand the view that it does, I don't know what it would cover that wasn't already-- Is the idea that it would cover requests for proposal that don't refer to ANB?

THE COURT: Well--

MR. SILBERT: I mean, I guess in that case we think it's--

THE COURT: If it's duplicative, then that will make your job even easier in responding to it or providing any supplemental. But it does, I mean, it does relate to Government applications, iBaseCrawl, and/or software programs that have the ability to import data. So, it's--

MR. SILBERT: I mean, I guess our, to put a finer point on it, our view is the requests for proposal that would be relevant are the ones that the Court previously ordered produced with the limitation that we produce requests for proposal that include a term of importing ANB data.

THE COURT: No, no, no.

MR. SILBERT: Okay.

THE COURT: I've expanded that in this case to-- it doesn't necessarily have-- If the request includes software or the process of importing, whether it mentions it explicitly or not-- That is, if somebody asks for the Palantir Government package and they just ask for the package, and it doesn't have a specific request for importer functionality in

the request, and the response says, we'll provide you with the Government Palantir package, and this was in the time period of 2008 in which it did include that feature, then I think the request for any type of product that includes the infringing component is covered by number 61.

And so-- Okay.

MR. SILBERT: Understood, thank you.

THE COURT: Thank you. Well, I look forward to seeing everybody on Tuesday. Again, I, you know, have indicated that no one should be making flights out for, you know, 5 or 6 o'clock on Tuesday night.

So, you know, book a room, so to speak. And don't plan to get back to San Francisco on the red eye back or something like that that night. Okay.

MR. SILBERT: Yes.

MR. VIETH: May I ask one further clarification, Your Honor?

THE COURT: Sure.

MR. VIETH: And it relates to the timing of the production here and the timing of expert reports which are due in about ten days or so.

We're obviously going to disclose in our expert report everything, you know, every opinion that can be disclosed, but there is obviously going to be a lot that won't be analyzed by Mr. Yerman, and I think the same goes for other

experts as well.

It's the practice in this court, I know we disclose as much as we can, and it's often supplemented later because fact discovery still goes on, but I just wanted to alert the Court that there may be more to follow on.

THE COURT: Well, you know, we understand that. And, obviously, you can't, your expert can't review information that he doesn't have. And, you know, I've ordered some additional information produced here. And to the extent that it is relevant to his opinions, he may have to update his opinions.

MR. VIETH: Absolutely.

THE COURT: And if we need to deal with those after next week, we will deal with them next week or after that.

Okay. Thank you, counsel. Court will be in recess.

MR. VIETH: Thank you, Your Honor.

NOTE: The hearing concluded at 12:12 p.m.

------------------------------------------------

## C E R T I F I C A T E of T R A N S C R I P T I O N

I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court. Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

/s/ Norman B. Linnell

Norman B. Linnell

Court Reporter - USDC/EDVA